UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAH ALAM,

Plaintiff,

v.

FAIRSTEAD MANAGEMENT LLC and JEFFREY GOLDBERG,

Defendants.

Case No.: 1:24-CV-00849-NRB

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**HERRICK, FEINSTEIN LLP**
John H. Chun
Meaghan Roe
2 Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... iii

PRELIMINARY STATEMENT ....... 1

STATEMENT OF FACTS ....... 2

A. Plaintiff's Factual Allegations Concerning His Employment At Fairstead ....... 3

B. Plaintiff's Contract and Wage Claims ....... 5

C. Plaintiff's Claims of Discrimination ....... 5

D. Plaintiff's Whistleblower, Retaliation, and Breach of Maryland Public Policy Claims ....... 6

APPLICABLE LEGAL STANDARDS ON A MOTION TO DISMISS ....... 7

ARGUMENT ....... 8

I. PLAINTIFF'S CONTRACT CLAIM, AND CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DUTY, FAILS ....... 8

A. Count One, for Breach of Contract, Fails Because The Claimed Bonuses Were Discretionary ....... 8

B. Count Two, For Breach of the Covenant of Good Faith and Fair Dealing, Should Be Dismissed As Duplicative of The Contract Claim ....... 10

II. PLAINTIFF'S WAGE CLAIMS FAIL ....... 12

A. Count Four, for Violation of the NYLL, Fails Because Plaintiff Was a Maryland Employee, and Because the Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the Law ....... 12

1. The NYLL Does Not Apply to Plaintiff's Compensation, As He Admittedly Worked in Maryland ....... 12

2. The Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the NYLL ....... 13

B. Count Three, for Violation of the MWPCL, Fails Because the Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the Law ....... 14

III. PLAINTIFF'S DISCRIMINATION CLAIMS FAIL .......... 14

A. Counts Six and Seven, for Discrimination in Violation of the NYSHRL and NYCHRL, Fail for Lack of Jurisdiction .......... 14

B. Counts Five through Nine, for Discrimination in Violation of Title VII, the NYSHRL, the NYCHRL, MFEPA and MCHRA, All Fail to State a Claim .......... 16

1. Legal Standards Under Federal, State, and Local Discrimination Laws .......... 16

2. Plaintiff Fails to Allege Any Adverse Employment Action Related to Discriminatory Intent .......... 18

IV. PLAINTIFF'S WHISTLEBLOWER AND PUBLIC POLICY CLAIMS FAIL .......... 21

A. Count Ten, for Violation of NYLL § 740, Fails Because Plaintiff Does Not Allege He Reported a Believed Violation of a Law, Rule or Regulation .......... 21

B. Count Eleven, for Violation of NYLL § 215, Fails Because Plaintiff Does Not Allege He Reported a Believed Violation of the NYLL .......... 23

C. Count Twelve, for Wrongful Termination in Violation of Maryland Public Policy, Fails Because Plaintiff Has Failed to Allege an Applicable Public Policy .......... 24

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Adams v. Catalyst Research*,
659 F. Supp. 163 (D. Md. 1987) ........................................12

*Apolinar v. R.J. 49 REST., LLC*,
No. 15 Civ. 8655, 2016 WL 2903278 (S.D.N.Y. May 18, 2016) ........................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................7

*Back v. Bank Hapoalim*,
1:23-cv-02040 (ER), 2024 WL 1216659 (S.D.N.Y. Mar. 21, 2024) ........................................19

*Bader v. Wells Fargo Home Mortg.*,
773 F. Supp. 2d 397 (S.D.N.Y. 2011) ........................................10

*Bartman v. L'Officiel USA*,
No. 21-CV-1987 (RA), 2022 WL 4085850 (S.D.N.Y. Sept. 2, 2022) ........................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................7

*Bennett v. Watson Wyatt & Co.*,
136 F. Supp. 2d 236 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002) ........................................18

*Biberaj v. Pritchard Indus.*,
08 CIV. 07993 (PGG), 2009 WL 10738222 (S.D.N.Y. Sept. 28, 2009) ........................................24

*Cagle v. Weill Cornell Med.*,
680 F. Supp. 3d 428 (S.D.N.Y. 2023) ........................................18

*CompuSpa, Inc. v. IBM*,
228 F. Supp. 2d 613 (D. Md. 2002) ........................................10

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ........................................8

*DiFolco v. MSNBC Cable*,
622 F.3d 104 (2d Cir. 2010) ........................................8

*Dyer v. Oracle Corp.*,
PWG-16-521, 2016 WL 7048943 (D. Md. Dec. 5, 2016) ........................................17

*Fetet v. Altice USA*,
21cv1512 & 21cv1532 (DLC), 2021 WL 2941917 (S.D.N.Y. Jul. 12, 2021) ........................................10, 13

*Figueroa v. N.Y. Health & Hosps. Corp.*,
500 F. Supp. 2d 224 (S.D.N.Y. 2007)....................21

*Flanagan v. Girl Scouts of Suffolk Cty.*,
21CV7153KAMARL, 2023 WL 6307362 (E.D.N.Y. Sept. 28, 2023)....................24

*Fried v. LVI Servs.*,
500 F. App'x 39 (2d Cir. 2012)....................15, 16

*Heravi v. Gaming Network Sols.*,
PWG-15-1178, 2016 WL 3753156 (D. Md. July 13, 2016)....................12

*Hubbell-Petang v. Hotel Rsrv. Serv.*,
20 Civ. 10988 (GBD), 2022 WL 602900 (S.D.N.Y. Mar. 1, 2022)....................15

*Inn World Report v. MB Fin. Bank*,
No. 21 Civ. 2911, 2022 WL 17841529 (2d Cir. Dec. 20, 2022)....................20

*Kirkweg v. N.Y. City Dep't of Educ.*,
No. 12-CV-2635 (WHP), 2013 WL 1651710 (S.D.N.Y. Apr. 4, 2013)....................21

*Koss v. Wackenhut Corp.*,
704 F. Supp. 2d 362 (S.D.N.Y.2010)....................13

*Krehbiel v. BrightKey, Inc.*,
CV RDB-21-2927, 2022 WL 657563 (D. Md. Mar. 4, 2022),
*aff'd*, 22-1385, 2023 WL 7984747 (4th Cir. Nov. 17, 2023)....................17

*Lanasa v. AstraZeneca Pharm.*,
CV DLB-22-1399, 2023 WL 2527209 (D. Md. Mar. 15, 2023)....................14

*Lehner v. ProSource Consulting*,
CV GLR-18-858, 2018 WL 6395539 (D. Md. Dec. 6, 2018)....................12

*Meilus v. Rest. Opportunities Ctr. United*,
21-CV-02554 (CM), 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021)....................16

*MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,
No. 20 Civ. 4776 (ER), 2022 WL 118387 (S.D.N.Y. Jan. 11, 2022),
*aff'd*, 66 F.4th 77 (2d Cir. 2023)....................7

*Munno v. Town of Orangetown*,
391 F. Supp. 2d 263 (S.D.N.Y. 2005)....................8

*Nofal v. IMCMV Times Sq.*,
22 CIV. 3104 (DEH), 2024 WL 1138928 (S.D.N.Y. Mar. 15, 2024)....................17, 20

*O'Grady v. BlueCrest Capital Mgt.*,
111 F. Supp. 3d 494 (S.D.N.Y. 2015), *aff'd*, 646 F. App'x 2 (2d Cir. 2016)......................9, 13

*O'Neill v. Mermaid Touring*,
968 F. Supp. 2d 572 (S.D.N.Y. 2013).........................................................................13

*Plymack v. Copley Pharm.*,
No. 93 Civ. 2655 (KMW), 1995 WL 606272 (S.D.N.Y. Oct. 12, 1995) ................................12

*Polcom USA v. Affiliated FM Ins.*,
551 F. Supp. 3d 290 (S.D.N.Y. 2021).........................................................................11

*Pompey-Primus v. Success Academy Charters Schs.*,
21 Civ. 3981 (KPF), 2022 WL504541 (S.D.N.Y. Feb. 17, 2022) ..........................................17

*Potash v. Florida Union Free Sch. Dist.*,
972 F. Supp. 2d 557 (S.D.N.Y. 2013).........................................................................18

*Ridgell v. Hartford Fire Ins.*,
Civ. No. DLB-23-1236, 2024 WL 555137 (D. Md. Feb. 12, 2024).......................................14

*Shankar v. Ankura Consulting Grp.*,
No. 20 Civ. 07463 (ALC), 2021 WL 3542803 (S.D.N.Y. Aug. 11, 2021).............................20

*Sharde Harvey, DDS, PLLC, v. Sentinel Insurance Company*,
No. 20 Civ. 3350, 2021 WL 1034259 (S.D.N.Y. Mar. 18, 2021) ...........................................7

*Shiber v. Centerview Partners LLC*,
21 CIV. 3649 (ER), 2022 WL 1173433 (S.D.N.Y. Apr. 20, 2022)....................................8, 15

*Siddiqi v. N.Y.C. Health & Hosps. Corp.*,
572 F. Supp. 2d 353 (S.D.N.Y. 2008).........................................................................18

*Smith v. AECOM Tishman*,
21 Civ. 2915 (PGG) (SDA), 2023 WL 2734430 (S.D.N.Y. 2023)..........................................15

*Sosa v. Medstaff, Inc.*,
12 CIV. 8926 NRB, 2013 WL 6569913 (S.D.N.Y. Dec. 13, 2013) .......................................20

*Tall v. MV Transp.*,
RWT 12-417, 2012 WL 4480720 (D. Md. Sept. 27, 2012),
*aff'd*, 512 F. App'x 355 (4th Cir. 2013).......................................................................24

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003).....................................................................................17

*Terry v. Legato Sys.*,
241 F. Supp. 2d 566 (D. Md. 2003) ............................................................................25

*Thacker v. HSBC Bank*,
1:22-CV-7120-GHW, 2023 WL 3061336 (S.D.N.Y. Apr. 24, 2023) ....................................22

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)....................................................................................17

*Vora v. N.Y. City Dept. of Educ.*,
22CIV10891PGGSDA, 2024 WL 1116312 (S.D.N.Y. Mar. 14, 2024) ............................17, 18

*Ware v. L-3 Vertex Aerospace*,
833 F. App'x 357 (2d Cir. 2020) ..........................................................................15

*Warman v. Am. Nat'l Standards Inst.*,
15-CV-5486 (RA), 2016 WL 3676681 (S.D.N.Y. July 6, 2016).....................................12, 13

*Williams v. Preeminent Prospective Serv.*,
14-CV-5333, 2017 WL 1592556 (E.D.N.Y. April 27, 2017)..............................................23

*Wolff v. Rare Medium, Inc.*,
210 F. Supp. 2d 490 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003)..................11, 12

*Zhang v. Centene Mgmt.*,
21 CV 5313 (DG), 2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023).....................................22, 23

**State Cases**

*Bilitch v. N.Y.C. Health & Hosp. Corp.*,
194 A.D.3d 999 (2d Dep't 2021)...........................................................................17

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (2010)..................................................................................14, 15

*Kingston v. IBM*,
187 A.D.3d 578 (1st Dep't 2020) .........................................................................15

*Pakniat v. Moor*,
192 A.D.3d 596 (1st Dep't 2021) .........................................................................15

*Parks v. Alpharma, Inc.*,
25 A.3d 200 (Md. Ct. App. 2011)..........................................................................25

*Porterfield v. Mascari II, Inc.*,
788 A.2d 242 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003)............................25

*Rodriguez v. KGA Inc.*,
No. 160931/15, 2016 WL 3632478 (N.Y. Sup. N.Y. Cty. Jul. 5, 2016),
*aff'd*, 155 A.D.3d 452 (1st Dep't 2017)...................................................................13

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446 (Mar. 14, 2024) ....................14, 15

*Tierney v. Capricorn Investors*,
189 A.D.2d 629 (1st Dep't 1993) ....................13

*Wholey v. Sears Roebuck*,
803 A.2d 482 (Md. Ct. App. 2002)....................25

**Statutes and Rules**

Civil Rights Act of 1964 Title VII.................... *passim*

Fed. R. Civ. P. 12(b)(1)....................1, 8, 14

Fed. R. Civ. P. 12(b)(6)....................1, 7

Maryland Fair Employment Practices Act....................5

Maryland Wage Payment and Collection Law § 3-501....................5

Maryland Wage Payment and Collection Law § 3-502....................5

Montgomery County Human Rights Act....................5

New York City Human Rights Law....................5

New York State Human Rights Law ....................5

New York Labor Law § 190 ....................5

New York Labor Law § 193 ....................5

New York Labor Law § 215 ....................6, 22, 23, 24

New York Labor Law § 740 ....................6, 21, 22, 23

Defendants Fairstead Management LLC ("Fairstead") and Jeffrey Goldberg ("Goldberg," and together with Fairstead, "Defendants") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss with prejudice the First Amended Complaint filed on June 7, 2024 (the "Complaint")[1] by plaintiff Shah Alam ("Alam" or "Plaintiff").

## PRELIMINARY STATEMENT

Plaintiff is a former "at-will" senior employee of Fairstead who worked in Maryland. During his less than three-year tenure with Fairstead, Plaintiff was paid a lucrative salary of $400,000 per year and earned in total over $1.7 million in compensation (inclusive of bonuses). Unfortunately, due to numerous performance issues, Fairstead was required to let Plaintiff go in May 2023 but allowed him to stay on payroll for a short period of time thereafter while he allegedly looked for a new job. Having extended this goodwill to Plaintiff despite his termination, Fairstead was stunned to later learn that Plaintiff exploited his employment with the company to usurp an important corporate opportunity—namely the acquisition of a competitor property management company called Edgewood.

Even after Fairstead learned of this grave breach of loyalty, Plaintiff refused to go away. Instead, he doubled-down on his flagrant misconduct and made extortionate severance demands, including that Fairstead should somehow extend millions of dollars in lucrative contracts to Edgewood—the very corporate opportunity that Plaintiff misappropriated.

When Fairstead refused, Plaintiff started this lawsuit, which includes baseless claims to discretionary bonuses to which Plaintiff has no right under his employment contract (Counts 1-4). And any attempt to recover the bonuses under an implied covenant of good faith and fair

[1] A copy of the Complaint is attached as Exhibit 1 to the Declaration of Meaghan Roe (the "Roe Decl.").

dealing theory should also be dismissed as duplicative and barred by the contract's terms. Further, as Plaintiff was a Maryland employee, he is not entitled to relief under New York's wage laws and, in any event, the discretionary bonuses sought are not "wages" under either New York or Maryland's labor laws.

Plaintiff's discrimination claims (Counts 5-9) are similarly infirm. Indeed, as a Maryland resident, Plaintiff cannot allege the necessary in-state "impact" to invoke New York State and City discrimination laws. And even if he could (which he cannot), Plaintiff concedes that his termination was *not* due to discrimination but in alleged retaliation for his "whistleblowing." Moreover, as to any alleged discrimination, Plaintiff's allegations are too vague and conclusory to be cognizable and they fail to tie any protected characteristics to adverse employment action. Furthermore, by Plaintiff's own admission, the same individual who allegedly discriminated against him—Defendant Goldberg—is the same person who hired him (and who later replaced Plaintiff with a Muslim employee). Defendants are thus entitled to the "same-actor inference" and Plaintiff's discrimination claims should be dismissed.

Finally, Plaintiff's whistleblowing/retaliation claims (Counts 10-12) should also be dismissed because they are too conclusory and fail to sufficiently allege any protected activity. Indeed, in respect of Plaintiff's claim of wrongful termination in violation of Maryland public policy, Plaintiff has not alleged, nor does there exist, any Maryland public policy barring his termination. Thus, for the reasons herein, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## **STATEMENT OF FACTS**

Plaintiff commenced this action on February 6, 2024. Roe Decl. Ex. 2. Following a pre-motion conference on Defendants' proposed motion to dismiss, Plaintiff filed his amended

Complaint on June 7, 2024. Roe Decl. Ex. 1. Defendants dispute the allegations therein and specifically deny all allegations of discrimination and retaliation, but accept the pleaded facts as true solely to the extent necessary for this motion. *See infra* 7-8.

### A. Plaintiff's Factual Allegations Concerning His Employment At Fairstead

Plaintiff alleges he is "a native of Pakistan" and "is Muslim." Complaint ¶32. Plaintiff was hired by Goldberg in August 2020 to be President of Fairstead's in-house property management company, and the terms of Plaintiff's employment are governed by an August 5, 2020 employment agreement (the "Agreement"). *Id.* ¶¶3-4. A copy of the Agreement is attached as Exhibit 1 to the Declaration of Jeffrey Goldberg (the "Goldberg Decl."). Plaintiff's first day of work was in September 2020. Complaint ¶36; Goldberg Decl. Ex. 1 at § 1.B. Plaintiff alleges in 2021 and 2022, he received "annual bonuses of $400,000 from Fairstead." Complaint ¶¶15, 64. Plaintiff alleges that under the terms of the Agreement, if he was terminated "without cause," "he was still eligible for a pro rata share of his annual bonus." *Id.* ¶5.

Plaintiff resides in Mount Airy, Maryland, and alleges that while working at Fairstead, "Alam generally worked from Maryland," first from his home, and "eventually out of a Fairstead office in Bethesda, Maryland." *Id.* ¶¶21, 37. A sample paystub demonstrating that Plaintiff was indeed treated as a Maryland employee, subject to Maryland taxes, is attached as Exhibit 2 to the Goldberg Decl. Plaintiff also alleges that he occasionally travelled to Fairstead's offices in New York City. *Id.* ¶¶21, 38.

Plaintiff alleges that while working at Fairstead, Goldberg (who hired Plaintiff) made discriminatory comments, including telling "employees with dark skin, 'I thought you all were from the same country,'" stating "Alam and a Middle Eastern co-worker were 'from the same place' based on the color of their skin," and that Alam "had the 'same culture' as one of Alam's IT employees, who is from India." *Id.* ¶¶8, 48-50, 53-54. Plaintiff also alleges that Goldberg

called Plaintiff while he was at his mosque in prayer and/or on religious holidays. *Id.* ¶¶8, 51. Plaintiff does not allege that he made any requests for reasonable accommodation, or if any such requests were made, that they were denied. Rather, Plaintiff confirms that he was allowed to "[take] time away from work to celebrate Muslim holidays." *Id.* ¶¶8, 51. The Complaint contains no non-conclusory allegations concerning the treatment of other, non-Pakistani or non-Muslim employees (or any other employees) with respect to employment. (Defendants deny that any alleged comments, or any other discriminatory actions, were made.)

Plaintiff alleges that "[i]n early 2023," he met with "Fairstead owner and primary investor Stuart Feldman," and reported that "(i) Goldberg had fired people without paying them what they were owed, (ii) Fairstead had made misrepresentations to the U.S. Department of Housing and Urban Development that it would invest in certain properties that it then never invested in, and (iii) Fairstead's HR and accounting departments were not complying with certain legal and regulatory requirements." *Id.* ¶¶11, 59-61.[2] Afterwards, on May 11, 2023, Goldberg allegedly advised Plaintiff that he "knew Alam had reported various legal and regulatory violations to Feldman," and because of same, "Alam and Fairstead were going to 'go their separate ways.'" *Id.* ¶¶12-13, 63. Goldberg allegedly fired Alam "to retaliate for Alam's warnings to Fairstead management that the company – and Goldberg – were violating legal and regulatory requirements." *Id.* ¶14.

Alam's last day with Fairstead was July 7, 2023. *Id.* ¶¶17, 69. Plaintiff alleges "Fairstead did not pay Alam the fully-earned bonus for 2022 and pro rata bonus for 2023 he is entitled to." *Id.* ¶18. Yet Plaintiff concedes that "[i]n April 2024 – after this action was filed – Fairstead

---

[2] Elsewhere in his Complaint, Plaintiff refers to allegedly-applicable requirements to certify compliance with "HUD requirements and contractual obligations; maintain the project's accounts, books and records according to regulatory requirements and generally accepted accounting principles; and not discriminate against employees or contractors…." Complaint ¶42.

deposited $61,400 in Plaintiff's bank account via direct deposit." *Id.* ¶71. The payment that Plaintiff refers to was an electronic deposit of $100,000.00 by Fairstead on April 12, 2024, subject to customary withholdings, representing the alleged 2022 annual guaranteed bonus payment that Plaintiff had claimed by his original complaint. A copy of the paystub for such payment is attached as Exhibit 3 to the Goldberg Decl.

### B. Plaintiff's Contract and Wage Claims

By Count One, Plaintiff alleges Fairstead breached the Agreement by failing to pay "the annual bonuses he is entitled to for 2022 or 2023." Complaint ¶¶72-84. Plaintiff alleges he was paid $400,000 in annual bonuses in 2020 and 2021, but does not quantify the bonuses he believes he is entitled to, other than to allege he is entitled to "similar compensation." *Id.* ¶¶78-79. By Count Two, Plaintiff also asserts a breach of the covenant of good faith and fair dealing claim against Fairstead, alleging Fairstead breached this covenant "in the Agreement when it terminated Plaintiff to avoid paying him compensation to which he is entitled." *Id.* ¶¶85-94.

By Count Three, Plaintiff alleges a violation of the Maryland Wage Payment and Collection Law ("MWPCL") §§ 3-501 and 3-502, due to Fairstead's alleged failure "to pay Alam the annual bonuses he fully earned for 2022 and 2023." *Id.* ¶¶95-101. By Count Four, Plaintiff alleges a violation of the New York Labor Law ("NYLL") §§ 190 and/or 193, due to Fairstead's "withholding from Plaintiff bonus payments from 2022 and 2023." *Id.* ¶¶102-09.

### C. Plaintiff's Claims of Discrimination

By Counts Five through Nine, Plaintiff asserts discrimination claims due to his religion and/or national origin under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the Maryland Fair Employment Practices Act ("MFEPA"), and the Montgomery County Human Rights Act ("MCHRA"). Complaint ¶¶110-46. Each of these claims are based on

the same allegations of discrimination, that Defendants (i) "undermin[ed] Plaintiff's supervision and management of his team," (ii) did "[n]ot mak[e] reasonable accommodations for Plaintiff's religious observances," (iii) did "[n]ot pay[] Plaintiff bonus compensation to which he was entitled," and (iv) "[t]erminat[ed] Plaintiff." *E.g.*, *id.* ¶111.

### D. Plaintiff's Whistleblower, Retaliation, and Breach of Maryland Public Policy Claims

By Count Ten, Plaintiff alleges a whistleblower claim under NYLL § 740. Complaint ¶¶147-52. Plaintiff alleges he "disclosed to…Feldman activities, policies and/or practices of Defendants that he reasonably believed was in violation of a law, rule or regulation" and "also objected to such activities, policies and/or practices," and was retaliated against. *Id.* ¶¶148-50. Similarly, by Count Eleven, Plaintiff alleges a whistleblower claim under NYLL § 215. *Id.* ¶¶153-57. Plaintiff alleges he "reported to…Feldman that Defendant Goldberg had fired Fairstead employees without paying them wages they were entitled to, a violation of relevant employment laws including the New York Labor Law," and was retaliated against. *Id.* ¶¶154-55.

Finally, by Count Twelve, Plaintiff alleges he was wrongfully terminated in violation of Maryland public policy. *Id.* ¶¶158-64. Plaintiff claims his termination "violated a clear mandate of public policy because Plaintiff was terminated for reporting that: (i) Defendant Goldberg had fired Fairstead employees without paying them wages they were entitled to, a violation of the New York Labor Law, (ii) Defendant Fairstead had made misrepresentations to HUD about certain properties that Shah managed; and (iii) Fairstead's HR and accounting departments were not complying with legal and regulatory requirements for affordable housing property owners and managers." *Id.* ¶160. Plaintiff does not identify the specific public policy allegedly violated.

**APPLICABLE LEGAL STANDARDS ON A MOTION TO DISMISS**

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a party must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citations omitted). This requires a party to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A party cannot merely state conclusions that are consistent with a viable claim for relief, but instead must provide sufficient facts to cross the boundary "between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To the extent the Complaint merely articulates "labels and conclusions, and a formulaic recitation of the elements of a cause of action," it must be dismissed. *Id.* at 555.

Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79 (noting legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, and pleadings that "are no more than conclusions...are not entitled to the assumption of truth."). Further, "the Court is not obliged to reconcile and accept as true 'pleadings that are contradicted by other matters asserted or relied upon or incorporated by reference....'" *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, No. 20 Civ. 4776 (ER), 2022 WL 118387, at *5 (S.D.N.Y. Jan. 11, 2022) (citation omitted), *aff'd*, 66 F.4th 77 (2d Cir. 2023).

Further, although "a court generally is confined to the facts alleged in the complaint," *Sharde Harvey, DDS, PLLC, v. Sentinel Insurance Company*, No. 20 Civ. 3350, 2021 WL 1034259, at *3 (S.D.N.Y. Mar. 18, 2021), on a motion to dismiss, a court may consider documents incorporated by reference into the complaint. *Apolinar v. R.J. 49 REST., LLC*, No. 15

Civ. 8655, 2016 WL 2903278, at *2 (S.D.N.Y. May 18, 2016). Even where a document is not incorporated by reference, the Court may nevertheless consider it where the complaint relies heavily upon its terms and effect and a plaintiff had notice of its contents. *See DiFolco v. MSNBC Cable*, 622 F.3d 104, 111 (2d Cir. 2010); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (finding documents attached to motion to dismiss "are 'integral' to the Complaint, as plaintiff had actual notice of both and has relied heavily upon both in framing the Complaint.").

Fed. R. Civ. P. 12(b)(1) further "requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case." *Shiber v. Centerview Partners LLC*, 21 CIV. 3649 (ER), 2022 WL 1173433, at *3 (S.D.N.Y. Apr. 20, 2022). "The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." *Id.* The Court may refer to evidence outside of the Complaint to make this determination, and "the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff." *Id.*

## ARGUMENT

### I. PLAINTIFF'S CONTRACT CLAIM, AND CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DUTY, FAILS.

#### A. Count One, for Breach of Contract, Fails Because The Claimed Bonuses Were Discretionary.

Section 1 of the Agreement contains the compensation provisions agreed upon by the parties. Goldberg Decl. Ex. 1. In addition to Subsection 1.C, which provides for a base salary of $400,000 (the payment of which is undisputed in the Complaint), Subsection 1.D provides for two bonus programs that Plaintiff would be eligible for as part of his employment with Fairstead.

First, Subsection 1.D concerns an "Annual Guaranteed Bonus" and provides that:

> While you are employed with the Firm, you will receive a minimum annual guaranteed bonus payment of $100,000 ("Annual Guaranteed Bonus"). Such Annual Guaranteed Bonus will be paid to you in full in one lump sum payment no later than March 31st of the following calendar year. If you are terminated without Cause during the calendar year, you are eligible for a pro-rata share of the Annual Guaranteed Bonus as further described in Section 3.

Goldberg Decl. at Ex. 1. Second, Subsection 1.D concerns an "Annual Discretionary Bonus":

> You are also eligible to be considered for an annual discretionary bonus targeted at $200,000 (or 50% of base compensation) if targets are met ("Annual Discretionary Bonus"). This bonus shall be prorated for the period of time of employment in year one of employment, and you will be eligible for the full amount in subsequent years. In order to receive an Annual Discretionary Bonus, you must be in "Active Working Status" as the time of the bonus payment. For purposes of this Agreement, Active Working Status means that you have not resigned (or given notice of your intention to resign) and have not been terminated for any reason (or been given notice of your termination). The fact that you are in Active Working Status on the date discretionary bonuses are paid does not mean that you are entitled to a bonus and your bonus may be zero except as otherwise provided herein. Further, pro-rated bonuses will not be given to employees who resign or are terminated during the year.

*Id.* Plaintiff alleges he is entitled to—but that Fairstead failed to pay—these bonuses for 2022 and 2023. However, that is incorrect and the terms of the Agreement plainly bar such claims.

Specifically, as for the "Annual Guaranteed Bonus," as Plaintiff admits, he was paid these sums for years in which he was employed the entire year, including for 2022. *See supra* 4-5 (citing Complaint ¶71 and Goldberg Decl., Ex. 3). Because Plaintiff was indisputably terminated from employment in 2023, he had no right to any Annual Guaranteed Bonus for that year. He was at best "eligible" for a pro-rata share of this bonus for 2023 at Fairstead's discretion (which Fairstead was not obligated to pay). See Goldberg Decl., Ex. 1, §1.D. Thus there was no breach of the Agreement. *O'Grady v. BlueCrest Capital Mgt.*, 111 F. Supp. 3d 494, 503 (S.D.N.Y.

2015) ("Where an unambiguous contract provides that bonuses are discretionary, a breach of contract claim fails;" granting motion to dismiss contract claim for discretionary bonus), *aff'd,* 646 F. App'x 2 (2d Cir. 2016); *Bader v. Wells Fargo Home Mortg.*, 773 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2011) ("It is well established under New York law that '[a]n employee's entitlement to a bonus is governed by the terms of the employer's bonus plan.' Thus entitlement to a bonus only exists where the terms of the relevant contract require it.") (citations omitted); *Fetet v. Altice USA*, 21cv1512 & 21cv1532 (DLC), 2021 WL 2941917, at *6 (S.D.N.Y. Jul. 12, 2021) (dismissing NYLL and contract claims for discretionary bonuses).

With respect to any claimed "Annual Discretionary Bonus" under the Agreement, this bonus was again *clearly* at Fairstead's option, and Plaintiff cannot maintain a breach of contract claim for nonpayment. Plaintiff was only "eligible to be considered for" such bonus, only "if targets are met," and only if Plaintiff was in "Active Working Status" as of the date of payment (which he was not). Even then, Plaintiff was advised that "[t]he fact that you are in Active Working Status on the date discretionary bonuses are paid does not mean that you are entitled to a bonus and your bonus may be zero except as otherwise provided herein." Even more, the Agreement provided that "pro-rated bonuses will not be given to employees who resign or are terminated during the year." Goldberg Decl. at Ex. 1, § 1.D. Count One should be dismissed.

### B. Count Two, For Breach of the Covenant of Good Faith and Fair Dealing, Should Be Dismissed As Duplicative of The Contract Claim.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should also be dismissed as duplicative of his non-viable contract claim. As the Agreement contains a New York choice of law provision, this Court should apply New York law to this claim. *See CompuSpa, Inc. v. IBM*, 228 F. Supp. 2d 613 (D. Md. 2002) (applying NY choice of law clause to good faith and fair dealing claim, and dismissing claim as duplicative of contract claim).

*First,* New York "does not recognize a separate cause of action for breach of the covenant of good faith and fair dealing." *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 497 (S.D.N.Y. 2002) (dismissing good faith and fair dealing claim), *aff'd*, 65 F. App'x 736 (2d Cir. 2003). Indeed, "[i]mplicit in every contract is a promise of good faith and fair dealing," and "[i]n order to avoid redundancy, claims of breach of the implied covenant must be premised on a distinct set of facts from those underlying a claim for breach of contract." *Polcom USA v. Affiliated FM Ins.*, 551 F. Supp. 3d 290, 297 (S.D.N.Y. 2021) (Buchwald, J.) (dismissing good faith and fair dealing claim as duplicative of breach of contract claim). Where, as here, "the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract," an implied covenant claim should be dismissed. *Id.*; *see also Wolff*, 210 F. Supp. 2d at 497. Plaintiff's allegations demonstrate that his good faith and fair dealing claim is premised on the same facts as his contract claim. Count One claims Fairstead breached the Agreement by failing to pay certain bonuses. Complaint ¶¶76-80. And by Count Two, Plaintiff claims Fairstead "breached the implied covenant of good faith and fair dealing that existed in the Agreement when it terminated Plaintiff to avoid paying his compensation to which he is entitled," *i.e.*, the claimed bonuses. *Id.* ¶90.

*Second,* to the extent Plaintiff alleges his termination, purportedly done to avoid paying the claimed bonuses, is a distinct harm from simply breaching the contract by failing to pay the same claimed bonuses (it is not), the Agreement provides that Plaintiff's employment was "at-will," and that Plaintiff "or the Firm may terminate your employment at any time for any reason, or for no reason at all." *See* Goldberg Decl., Exhibit 1 at § 2. Courts do not permit the implied covenant of good faith and fair dealing "to conflict with the other terms of the parties' contractual

relationship," nor "create obligations that go beyond those intended and stated in the language of the contract." *Wolff*, 210 F. Supp. 2d at 497. Accordingly, Count Two should be dismissed.[3]

## II. PLAINTIFF'S WAGE CLAIMS FAIL

As alleged in the Complaint, Plaintiff resides in and worked in Maryland, with occasional "travel" to New York. Complaint ¶¶20-21; *see also id.* ¶¶37-38 ("Alam generally worked from Maryland during his time at Fairstead, eventually out of a Fairstead office in Bethesda, Maryland."). While New York law applies to the breach of contract and implied covenant claims pursuant to the choice of law provision in the Agreement, Maryland law applies to the remainder of Plaintiff's claims, based on his admitted residence and employment in Maryland, rather than New York. *See Plymack v. Copley Pharm.*, No. 93 Civ. 2655 (KMW), 1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995) ("choice of law provision...does not bind the parties with respect to non-contractual causes of action"); *see also Warman v. Am. Nat'l Standards Inst.*, 15-CV-5486 (RA), 2016 WL 3676681, at *3 (S.D.N.Y. July 6, 2016) (holding New York choice of law provision does not apply to "statutory claims," including statutory wage claims).

### A. Count Four, for Violation of the NYLL, Fails Because Plaintiff Was a Maryland Employee, and Because the Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the Law.

#### 1. *The NYLL Does Not Apply to Plaintiff's Compensation, As He Admittedly Worked in Maryland.*

The NYLL does not apply to labor performed outside of New York, thus its requirements do not apply to Plaintiff's compensation for work admittedly performed in Maryland. *See*

[3] Even if this Court were to apply Maryland law, dismissal would still be appropriate because "Maryland does not recognize a cause of action based on an implied covenant of good faith and fair dealing in an at-will employment contract." *See, e.g., Adams v. Catalyst Research*, 659 F. Supp. 163, 164 (D. Md. 1987); *Heravi v. Gaming Network Sols.*, PWG-15-1178, 2016 WL 3753156, at *6 (D. Md. July 13, 2016) ("Maryland courts have not explicitly recognized a separate cause of action for breach of this duty.") (citation omitted); *Lehner v. ProSource Consulting*, CV GLR-18-858, 2018 WL 6395539, at *6 (D. Md. Dec. 6, 2018) (explaining Maryland "has refused to" imply a covenant of good faith and fair dealing into employment contracts, "specifically with regard to termination, and as a 'general requirement.'") (citation omitted).

*Rodriguez v. KGA Inc.*, No. 160931/15, 2016 WL 3632478, at *2 (N.Y. Sup. N.Y. Cty. Jul. 5, 2016) (dismissing claims for minimum wage violations and unpaid overtime under NYLL, where plaintiffs performed work performed outside of New York State), *aff'd*, 155 A.D.3d 452 (1st Dep't 2017); *Warman*, 2016 WL 3676681, at *2 (granting motion to dismiss NYLL claims, explaining "[a]s NYLL is silent on its extraterritorial application, courts in this district have held that it does not apply extraterritorially."); *O'Neill v. Mermaid Touring*, 968 F. Supp. 2d 572 (S.D.N.Y. 2013) (granting summary judgment barring NYLL overtime claims for work performed outside of New York); *see also* Goldberg Decl. Ex. 2.

2. *The Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the NYLL.*

As discussed above, the bonuses that Plaintiff now seeks are discretionary bonuses (*see supra* 9-10), and are thus not "wages" recoverable under the NYLL. The term "wages" under the NYLL "does not include bonus, profit-sharing, and other forms of incentive compensation unless the incentive compensation is already 'earned' by the employee." *O'Grady*, 111 F. Supp. 3d at 505 (citing *Koss v. Wackenhut Corp.*, 704 F. Supp. 2d 362, 369 (S.D.N.Y.2010)). "A bonus is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer." *Id.*; *Fetet*, 2021 WL 2941917, at *6. As evidenced above, the bonuses Plaintiff seeks were subject to Fairstead's discretion, and Plaintiff's active employment at the date of payment. Thus, the claims bonuses were not earned as of Plaintiff's termination in July 2023.

Moreover, "[a] plaintiff cannot assert a statutory claim for wages under [section 193 of] the Labor Law if he has no enforceable contractual right to those wages." *O'Grady*, 111 F. Supp. 3d at 505 (citing *Tierney v. Capricorn Investors*, 189 A.D.2d 629, 632 (1st Dep't 1993)); *see also Bartman v. L'Officiel USA*, No. 21-CV-1987 (RA), 2022 WL 4085850, at *4 (S.D.N.Y.

Sept. 2, 2022). For the reasons above, Plaintiff does not have a contractual right to the bonuses he seeks via the Complaint. Accordingly, Count Four should be dismissed.

### B. Count Three, for Violation of the MWPCL, Fails Because the Claimed Bonuses Were Discretionary, and Thus Not "Wages" Under the Law.

While the MWPCL may be applicable to Plaintiff's employment and wages, Maryland similarly excludes discretionary bonuses from its definition of "wages." As explained in *Lanasa v. AstraZeneca Pharm.*, in which the Court dismissed a claim seeking payment of a bonus, "[e]ven though the MWPCL definition of wage includes bonuses, not every bonus is considered a wage….Relevant here, if a bonus is discretionary—with respect to whether it will be granted or in what amount—it is not considered a wage." CV DLB-22-1399, 2023 WL 2527209, at *4 (D. Md. Mar. 15, 2023) (citations omitted); *see also Ridgell v. Hartford Fire Ins.*, Civ. No. DLB-23-1236, 2024 WL 555137 (D. Md. Feb. 12, 2024) (granting motion to dismiss claim for unpaid discretionary bonus brought under MWPCL). Accordingly, for the reasons above (*see supra* 13), the sums sought by Plaintiff are discretionary bonuses, and Count Three should be dismissed.

## III. PLAINTIFF'S DISCRIMINATION CLAIMS FAIL

### A. Counts Six and Seven, for Discrimination in Violation of the NYSHRL and NYCHRL, Fail for Lack of Jurisdiction.

Plaintiff's discrimination claims under the NYSHRL and NYCHRL should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because, as Plaintiff admits, he lived, and worked for Fairstead, in Maryland—***not*** New York. *See supra* 3. Because Plaintiff did not live or work in New York, and the alleged impact occurred outside of New York, dismissal is warranted.

As a nonresident plaintiff, Plaintiff fails to establish an alleged "impact" of discrimination in New York, either by alleging regular work in New York, or "that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries." *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (Mar. 14, 2024) (citing *Hoffman v.*

*Parade Publ'ns*, 15 N.Y.3d 285, 286 (2010)); *Pakniat v. Moor*, 192 A.D.3d 596, 596-97 (1st Dep't 2021) (dismissing NYSHRL and NYCHRL claims where plaintiff lived and worked outside New York).[4] The Southern District has held that "a plaintiff who lives and works outside of New York, but whose employment is terminated by a New York employer, does not feel the impact of that termination in New York," and is therefore not covered by these statutes. *See, e.g.*, *Hubbell-Petang v. Hotel Rsrv. Serv.*, 20 Civ. 10988 (GBD), 2022 WL 602900, at *6 (S.D.N.Y. Mar. 1, 2022) (dismissing complaint because "[t]he impact test is meant to narrow the class of people afforded protections…to those who work in New York"); *Ware v. L-3 Vertex Aerospace*, 833 F. App'x 357 (2d Cir. 2020) (affirming order granting summary judgment).

Plaintiff's alleged occasional travel to New York on business does not solve his jurisdictional problem, because "a non-resident plaintiff's occasional meetings in or travel to the city are tangential and [likewise] do not satisfy the impact requirement." *Shiber*, 2022 WL 1173433, at *3 (granting motion to dismiss NYSHRL and NYCHRL claims); *see also Fried v. LVI Servs.*, 500 F. App'x 39, 42 (2d Cir. 2012) (affirming summary judgment order dismissing a NYCHRL claim where plaintiff lived and worked in Connecticut but attended meetings and communicated frequently with colleagues in New York City).

Moreover, Plaintiff fails to allege that any discriminatory acts occurred in New York. *See Smith v. AECOM Tishman*, 21 Civ. 2915 (PGG) (SDA), 2023 WL 2734430 (S.D.N.Y. 2023) (dismissing NYSHRL and NYCHRL claims); *see also Kingston v. IBM*, 187 A.D.3d 578 (1st Dep't 2020) (dismissing NYSHRL and NYCHRL claims brought by employee who lived and worked in Texas, and travelled to New York office a few times a year). While Plaintiff alleges he

---

[4] As explained in *Syeed*, "a failure to hire or promote case is distinct from a discriminatory termination case" (such as that in *Hoffman*) because a plaintiff "sought to become an inhabitant or person within those geographical boundaries." 41 N.Y.3d at 453. Here, Plaintiff does not allege any facts that would satisfy the impact test in a manner discussed by the New York Court of Appeals in *Syeed*.

was terminated in New York, this was admittedly not the discriminatory act, *see supra* 4. Moreover, the locale of the termination meeting is not sufficient to fulfill the impact test and confer jurisdiction. *See Fried*, 500 F. App'x at 42 (noting fact that "decision to reassign his work duties was made in New York" was insufficient to satisfy the impact requirement, as law was intended to protect "those who work in [New York] city."); *Meilus v. Rest. Opportunities Ctr. United*, 21-CV-02554 (CM), 2021 WL 4868557, at *11 (S.D.N.Y. Oct. 15, 2021) (dismissing NYSHRL claims, explaining "Though the SAC contains allegations which mention Plaintiff['s] travels to New York and attendance at events in New York – travels and events at which some of the allegedly discriminatory acts occurred – the impact on [plaintiff] was ultimately at her duty station, which is not in New York. Certainly, the impact of her termination – whether based on gender or age discrimination or on retaliation – was felt in Washington D.C., not in New York."). Thus, Counts Six and Seven should be dismissed for this reason alone.

### B. Counts Five through Nine, for Discrimination in Violation of Title VII, the NYSHRL, the NYCHRL, MFEPA and MCHRA, All Fail to State a Claim.

With respect to each of these claims, Plaintiff alleges he was discriminated against due to his religion and/or national origin, as Defendants (i) "undermin[ed] Plaintiff's supervision and management of his team," (ii) did "[n]ot mak[e] reasonable accommodations for Plaintiff's religious observances," (iii) did "[n]ot pay[] Plaintiff bonus compensation to which he was entitled," and (iv) "[t]erminat[ed] Plaintiff." Complaint ¶111.

#### 1. *Legal Standards Under Federal, State, and Local Discrimination Laws.*

To establish a prima facie case of discrimination under Title VII, the MFEPA, or the MCHRA, a plaintiff "must plead facts showing (1) that []he belonged to a protected class; (2) that []he was qualified for the position []he held; (3) that []he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to

an inference of discriminatory intent." *Vora v. N.Y. City Dept. of Educ.*, 22CIV10891PGGSDA, 2024 WL 1116312, at *6 (S.D.N.Y. Mar. 14, 2024) (dismissing discrimination claims, noting same elements apply to NYSHRL and NYCHRL claims); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015); *Dyer v. Oracle Corp.*, PWG-16-521, 2016 WL 7048943, at *2 (D. Md. Dec. 5, 2016); *Krehbiel v. BrightKey, Inc.*, CV RDB-21-2927, 2022 WL 657563, at *3 (D. Md. Mar. 4, 2022), *aff'd*, 22-1385, 2023 WL 7984747 (4th Cir. Nov. 17, 2023) (dismissing Title VII and MFEPA claims). Under Title VII, "[a]n 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Pompey-Primus v. Success Academy Charters Schs.*, 21 Civ. 3981 (KPF), 2022 WL504541, at *4 (S.D.N.Y. Feb. 17, 2022) (noting "[e]xamples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices…unique to a particular situation.'" (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003))).

The NYSHRL and NYCHRL similarly prohibit discrimination based on an individual's religion or national origin. Following the most recent amendments to the NYSHRL, "the standard for [NYSHRL] claims [is] closer to the standard of the NYCHRL." *Nofal v. IMCMV Times Sq.*, 22 CIV. 3104 (DEH), 2024 WL 1138928, at *4 (S.D.N.Y. Mar. 15, 2024). "In order to prevail on a claim of discrimination under the NYCHRL, a plaintiff must prove that unlawful discrimination was one of the motivating factors of the complained-of conduct." *Id.* (citing *Bilitch v. N.Y.C. Health & Hosp. Corp.*, 194 A.D.3d 999, 1002 (2d Dep't 2021)). However, the rule remains, that like Title VII, the NYSHRL and NYCHRL are "not a general civility code,"

and plaintiffs are still required to establish "a discriminatory motive" for any complained-of conduct. *Id.; see also Vora*, 2024 WL 1116312, at *8.

### 2. *Plaintiff Fails to Allege Any Adverse Employment Action Related to Discriminatory Intent.*

*First*, Plaintiff's conclusory allegation that the supervision and management of his team was "undermined" does not constitute adverse employment action. Such allegations are not only impermissibly vague, they fail to reflect prohibited discriminatory actions. *See Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 247-48 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002) (holding no adverse employment action when "[p]laintiff [did] not complain of any change in job responsibilities, he merely complain[ed] that his services were not utilized to their fullest capacity."); *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not 'radical[ly] change' the nature of work are not typically adverse employment actions."). In other words, absent allegations of a "radical" change in assignments or responsibilities, vague, conclusory, and generic claims of "undermining" are insufficient to state a claim.

*Second*, Plaintiff fails to plead facts to support his claim of failure to accommodate religious observances. To state a claim for failure to accommodate, Plaintiff must allege that "(1) []he had a bona fide religious belief conflicting with an employment requirement, (2) []he informed h[is] employer of this belief, and (3) was disciplined for failing to comply with the employment requirement." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023) (dismissing Title VII claims); *see also Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 369 (S.D.N.Y. 2008). Plaintiff does not allege that he ever requested a reasonable accommodation, nor that any request for time off for religious purposes was denied. While Plaintiff alleges that Goldberg called him while he was at mosque, Plaintiff does not allege facts

suggesting that Goldberg was even aware Plaintiff was attending service, that Plaintiff picked up, that Plaintiff's observance was disturbed (or that he noticed the call during, rather than after, service), or that Plaintiff was disciplined for attending services or for failing to pick up a call.

*Third*, for the reasons above, a bonus is not due to Plaintiff. *See supra* 9-10, 13. But even if a bonus were due, Plaintiff fails to plead any facts to tie his religion or national origin to Fairstead's alleged non-payment of a bonus. Plaintiff generically states that he was not paid a bonus (and subject to the other alleged adverse actions), "unlike similarly situated white, non-Muslim employees who are not from Pakistan." Complaint ¶111. However, a plaintiff seeking to reference disparate treatment "must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Back v. Bank Hapoalim*, 1:23-cv-02040 (ER), 2024 WL 1216659, at * 7 (S.D.N.Y. Mar. 21, 2024) (dismissing discrimination claims). Plaintiff fails to do so here, as he fails to identify any other employees with whom he seeks to compare himself (*e.g.*, terminated employees who received discretionary bonuses). There are simply no facts for Defendants nor the Court to evaluate whether any such claimed individuals are similarly situated, whether the alleged conduct of non-payment of a bonus was comparable (or whether Plaintiff is just pleading conclusory statements).

*Fourth*, by his Complaint, Plaintiff admits that his termination was *not* a result of discrimination. Just the opposite, Plaintiff alleges he was terminated *not* because of his race or national origin, but for his alleged reports to Feldman. Complaint ¶¶12-13, 63 (alleging on May 11, 2023, Goldberg advised Plaintiff he would be terminated, and "Goldberg said he knew Alam had reported various legal and regulatory violations to Feldman," and because of same, "Alam and Fairstead were going to 'go their separate ways.'") and ¶14 (alleging "Goldberg fired Alam to retaliate for Alam's warnings to Fairstead management that the company – and Goldberg –

were violating legal and regulatory requirements.”). A factual concession in a pleading is a judicial admission to which a plaintiff is bound. *Inn World Report v. MB Fin. Bank*, No. 21 Civ. 2911, 2022 WL 17841529, at *3 n.3 (2d Cir. Dec. 20, 2022). Thus, because Plaintiff has alleged that he was terminated because of his so-called “whistleblowing,” and fails to provide any factual, rather than conclusory, allegation that his termination was related to his religion or national origin, Plaintiff’s claim of discrimination should be dismissed. *See Sosa v. Medstaff, Inc.*, 12 CIV. 8926 NRB, 2013 WL 6569913, at *5 (S.D.N.Y. Dec. 13, 2013) (dismissing Title VII claims) (Buchwald, J.) (noting “[t]here is nothing in the complaint to suggest that [plaintiff’s] termination and suspension were based on race. In fact, [plaintiff] states himself that ‘Defendants terminated [his] employment *solely in retaliation* for complaining of discrimination and retaliation.’ Assuming the assertions in the complaint are true, [plaintiff] was terminated because he complained, and for that reason *alone*.” (citation omitted; emphasis in original)).

And while Plaintiff makes allegations regarding discriminatory remarks made by Goldberg, as well as a lack of respect for a religious observance, Plaintiff pleads no facts tying these allegations to adverse action, nor any temporal proximity to suggest any connection between religious/national origin animus and Defendants’ acts. Indeed, the Complaint makes no causal connection between Plaintiff’s religion or national origin and any adverse action—because there is none. *Nofal*, 2024 WL 1138928, at *3 (“The Second Circuit has held that ‘stray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.’” (citing cases)); *Shankar v. Ankura Consulting Grp.*, No. 20 Civ. 07463 (ALC), 2021 WL 3542803, *5 (S.D.N.Y. Aug. 11, 2021) (dismissing NYSHRL and NYCHRL claims that lacked allegations connecting plaintiff’s race to her termination).

Finally, Defendants note that Plaintiff alleges that Goldberg is both the individual who hired Plaintiff, and who then discriminated against him. Here, the "same-actor inference" strongly weighs against an inference of discrimination: "it is suspect to claim that the same manager who hired a person in the protected class would suddenly develop an aversion to members of that class," and Plaintiff pleads *no facts* to explain this alleged disconnect. *Figueroa v. N.Y. Health & Hosps. Corp.*, 500 F. Supp. 2d 224, 236 (S.D.N.Y. 2007) (Buchwald, J.) (granting summary judgment dismissing Title VII, NYSHRL and NYCHRL claims).

In sum, a plaintiff cannot, as Plaintiff seeks to do here, simply rely on the following "faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore, it must have happened because I am (fill in the blank with the applicable protected categor[ies])." *Kirkweg v. N.Y. City Dep't of Educ.*, No. 12-CV-2635 (WHP), 2013 WL 1651710, at *4 (S.D.N.Y. Apr. 4, 2013). Thus, Counts Five through Nine should be dismissed for failure to state a claim.

## IV. PLAINTIFF'S WHISTLEBLOWER AND PUBLIC POLICY CLAIMS FAIL

### A. Count Ten, for Violation of NYLL § 740, Fails Because Plaintiff Does Not Allege He Reported a Believed Violation of a Law, Rule or Regulation.

As an initial matter, as noted above, the NYLL is silent on its extraterritorial application, thus courts have not extended its reach beyond New York State. *See supra* 12-13, 14-16. Because Plaintiff was a Maryland employee, this NYLL claim should likewise be dismissed, as Plaintiff's remedies (if any) are those under Maryland law.

NYLL § 740 provides, in relevant part, as follows: "[a]n employer shall not take any retaliatory action against an employee…because such employee…discloses…to a supervisor…an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a

substantial and specific danger to the public health or safety," or "objects to, or refuses to participate in any such activity, policy or practice." NYLL § 740(2)(a) & (c). A "[l]aw, rule or regulation" includes "(i) any duly enacted federal, state or local statute or ordinance or executive order; (ii) any rule or regulation promulgated pursuant to such statute or ordinance or executive order; or (iii) any judicial or administrative decision, ruling or order." NYLL § 740(1)(c).

Thus, Plaintiff must plead (1) retaliatory action, (2) a protected activity under the statute, and (3) a causal link between the protected activity and retaliatory action. *Zhang v. Centene Mgmt.*, 21 CV 5313 (DG) (CLP), 2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023) (recommending dismissal of NYLL § 740 and NYLL § 215 claims). While an employee "'need not specify the actual law, rule or regulation violated'" when making a complaint to a supervisor, '[he] must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct.'" *Thacker v. HSBC Bank*, 1:22-CV-7120-GHW, 2023 WL 3061336, at *8 (S.D.N.Y. Apr. 24, 2023) (dismissing NYLL § 740 claim) (citation omitted); *Zhang*, 2023 WL 2969309, at *17.

Here, although Plaintiff pleads retaliatory action (his termination), he fails to sufficiently allege protected activity. Plaintiff plainly does not allege any dangers to "public health or safety." All that Plaintiff alleges is that he told Feldman that (i) "Fairstead's Human Resources and accounting departments were not complying with legal and regulatory requirements"; (ii) "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed"; and (iii) "Fairstead had misrepresented to HUD that it would invest in certain properties that Shah managed but had not done so." Complaint ¶¶59-61. But such generic allegations are insufficient to plead a "reasonable belief" that laws were violated. *First*, the Complaint provides no specifics as to the alleged "legal and regulatory requirements" that

"Human Resources and accounting" failed to comply with, nor the alleged violative actions. *Second*, the Complaint fails to provide any details as to which "labor laws" were violated, and even in the absence of a specific law, the type of pay Plaintiff allegedly believed was owed to employees (such failure is especially glaring given Plaintiff's failure to allege such claims as to his own pay). *And third*, as to HUD, the Complaint fails to allege any specifics as to the claimed misrepresentations or properties at issue. There are no facts in the Complaint to give Defendants "notice of the alleged complained-of conduct." Thus Count Ten should be dismissed.[5]

**B. Count Eleven, for Violation of NYLL § 215, Fails Because Plaintiff Does Not Allege He Reported a Believed Violation of the NYLL.**

Again, because Plaintiff was a Maryland employee, this NYLL claim should also be dismissed, as Plaintiff's remedies (if any) are those under Maryland law. *See supra* 12-13, 14-16. Substantively, NYLL § 215(1)(a) provides in relevant part that: "No employer or his or her agent…shall discharge…or retaliate against any employee (i) because such employee has made a complaint to his or her employer…that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner." NYLL § 215(1)(a). As with a NYLL § 740, claim, Plaintiff must plead "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Zhang*, 2023 WL 2969309, at *11.

While an employee need not have notified an employer of the exact section of the NYLL allegedly violated, the complaint must have been a colorable violation of the NYLL (rather than another law). *Williams v. Preeminent Prospective Serv.*, 14-CV-5333, 2017 WL 1592556, at *6

[5] Further, while Plaintiff states in a conclusory manner that he "objected" to the referenced activities, there is no allegation that the company sought his participation, or that his duties involved participation, in such activities.

(E.D.N.Y. April 27, 2017). Further, in the actual Complaint filed in court, Plaintiff must identify what NYLL provision he believed was violated. *See Flanagan v. Girl Scouts of Suffolk Cty.*, 21CV7153KAMARL, 2023 WL 6307362, at *3 (E.D.N.Y. Sept. 28, 2023) (dismissing NYLL § 215 claim, explaining "the underlying complaint may describe a defendant's conduct without explicitly identifying what NYLL provision was violated. This does not mean, however, that throughout litigation, a plaintiff's § 215 claim can survive without a connection to some separate, identifiable NYLL provision.").

But here, Plaintiff fails to identify *any* provision of the NYLL governing the conduct of which he allegedly complained. The Complaint fails to provide any factual allegations as to *which* "labor laws" were violated, or *which* employees were not paid, or the pay that was owed to employees. It is impossible to determine whether Plaintiff's "report" related to employees covered by the NYLL, or whether the "pay" allegedly due to them was covered by the NYLL. *See Biberaj v. Pritchard Indus.*, 08 CIV. 07993 (PGG), 2009 WL 10738222, at *12 (S.D.N.Y. Sept. 28, 2009) (dismissing NYLL § 215 claim, holding "Plaintiff's Labor Law retaliation claim is also deficient in that she does not allege which provisions of the Labor Law were violated by [defendant's] conduct."). For these reasons, Count Eleven should also be dismissed.

### C. Count Twelve, for Wrongful Termination in Violation of Maryland Public Policy, Fails Because Plaintiff Has Failed to Allege an Applicable Public Policy.

A plaintiff may only bring a wrongful termination claim under Maryland law if their termination "violated 'a clear mandate of public policy,' and the relevant public policy is identified by the plaintiff." *Tall v. MV Transp.*, RWT 12-417, 2012 WL 4480720, at *3 (D. Md. Sept. 27, 2012) (citation omitted), *aff'd*, 512 F. App'x 355 (4th Cir. 2013). An employee is required to "plead with particularity the source of the public policy and the alleged violation."

*Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003). Absent identification of such public policy, this claim should be dismissed.

Here, Plaintiff fails to identify any public policy allegedly violated. Even providing the most generous interpretation to Plaintiff's claims (which the Court need not do, as the allegations are conclusory), and accepting Plaintiff's allegations that he was terminated for internally reporting legal violations, this does not constitute a violation of a Maryland public policy.

*First*, Maryland does not have a general cause of action for whistleblowing. *Terry v. Legato Sys.*, 241 F. Supp. 2d 566, 570 (D. Md. 2003) (dismissing wrongful discharge claim where plaintiff failed to "plead with particularity the source of the public policy" allegedly violated, and stating "Maryland does not provide a general 'whistle-blower' cause of action for an at-will employee who reports a violation of federal or state law."); *see also Parks v. Alpharma, Inc.*, 25 A.3d 200, 216 (Md. Ct. App. 2011) (affirming dismissal of claim where public policy that plaintiff alleged employer violated, allegedly embodied in the Maryland Consumer Protection Act, "was not sufficiently clear to provide the basis for her wrongful discharge claim.").

*Second*, a termination for internally reporting illegal activity to supervisors does not qualify as a wrongful termination in violation of Maryland public policy. *Wholey v. Sears Roebuck*, 803 A.2d 482, 496 (Md. Ct. App. 2002). Thus, Count Twelve should also be dismissed.

## CONCLUSION

For the reasons herein, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety and with prejudice, together with such further relief to Defendants as may be just and proper.

Dated: June 28, 2024
New York, New York

**HERRICK, FEINSTEIN LLP**

By: ____________________
John H. Chun
Meaghan Roe
2 Park Avenue
New York, New York 10016
(212) 592-1400
*Attorneys for Defendants*