HERRICK

**Meaghan Roe**
**Associate**
Phone: 212.592.1632
Fax: 212.545.2322
mroe@herrick.com

June 28, 2024

VIA ECF

Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Shah Alam v. Fairstead Management LLC et al.*, 1:24-cv-00849-NRB

Dear Judge Buchwald:

This firm represents Defendants Fairstead Management LLC and its Manager, Jeffrey Goldberg, in this matter. We respectfully submit this cover letter pursuant to your Individual Practices to outline the substantive arguments advanced in Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants request oral argument with respect to their motion to dismiss.

As detailed in Defendants' motion, Plaintiff is a former "at-will," senior employee of Fairstead who was extremely well-compensated and admittedly lived and worked in Maryland while employed at Fairstead. Plaintiff, who alleges he is a native of Pakistan and is Muslim, was hired in August 2022. Defendants terminated Plaintiff in May 2023 due to performance issues, but permitted him to remain on payroll through July 2023. Defendants later learned that Plaintiff exploited his employment with Fairstead to usurp a corporate opportunity—namely the acquisition of a competitor property management company. Despite this, Plaintiff refused to go away but instead doubled-down on his breaches of duties, including making extortionate severance demands. When Fairstead refused, Plaintiff filed this action, alleging baseless claims for the payment of discretionary bonuses that he is not owed under his employment agreement. Plaintiff also invents discrimination claims that he never raised during his employment (or at any time before filing suit), as well as whistleblower and wrongful termination claims. Respectfully, all of these claims should be dismissed.

***Counts 1-4 (Breach of Contract/Good Faith and Fair Dealing/Statutory Wage Claims)***. By Count One, Plaintiff alleges Fairstead breached the parties' employment agreement by failing to pay certain bonuses for the years 2022 and 2023. Regarding the "Annual Guaranteed Bonus," as Plaintiff admits, he was paid these sums for years in which he was employed the entire year, including for 2022. But because Plaintiff was terminated in 2023, he had no right to any Annual Guaranteed Bonus for that year. Under the terms of the agreement, he was at best "eligible" for a

HERRICK



pro-rata share of this bonus for 2023 at Fairstead's discretion, which Fairstead was not obligated to pay, and thus there was no breach of the Agreement. With respect to any claimed "Annual Discretionary Bonus," by the terms of the agreement, this bonus was also clearly at Fairstead's option, and Plaintiff cannot maintain a breach of contract claim for nonpayment.

By Count Two, Plaintiff alleges Fairstead breached the implied covenant of good faith and fair dealing "when it terminated Plaintiff to avoid paying him compensation to which he is entitled." This claim must be dismissed because New York does not recognize a separate cause of action for breach of the implied covenant. Moreover, the breached of implied covenant claim duplicates the contract claim. This claim should also be dismissed because Plaintiff's employment agreement expressly provides that his employment was "at-will"—the implied covenant cannot conflict with or create obligations beyond that in the agreement. The result is the same under Maryland law.

By Counts Three and Four, Plaintiff alleges violations of the Maryland Wage Payment and Collection Law and New York Labor Law due to Fairstead's alleged failure to pay these bonuses. First, the New York Labor Law does not apply to labor performed outside of New York, thus its requirements do not apply to Plaintiff's compensation for work admittedly performed in Maryland. But in any event, these discretionary bonuses do not fall within the definition of "wages" under either Maryland or New York wage laws, and thus cannot support a claim under either law.

***Counts 5-9 (Discrimination Claims)***. By Counts Five through Nine, Plaintiff asserts discrimination claims due to his religion and/or national origin under Title VII, the New York State Human Rights Law, the New York City Human Rights Law, the Maryland Fair Employment Practices Act, and the Montgomery County Human Rights Act. Each of these claims are based on the same allegations, that Defendants (i) "undermin[ed] Plaintiff's supervision and management of his team," (ii) did "[n]ot mak[e] reasonable accommodations for Plaintiff's religious observances," (iii) did "[n]ot pay[] Plaintiff bonus compensation to which he was entitled," and (iv) "[t]erminat[ed] Plaintiff."

Plaintiff's New York discrimination claims must be dismissed because Plaintiff admittedly lived and worked in Maryland, and as a nonresident plaintiff, Plaintiff cannot establish the necessary in-state "impact" of discrimination in New York. While Plaintiff alleges he was terminated in New York, the Complaint alleges this was in retaliation for Plaintiff's alleged "whistleblowing," rather than discrimination, and in any event, the locale of the termination meeting is not sufficient to confer jurisdiction.

Further, Plaintiff's allegations fail to state a claim under any of the asserted discrimination laws. First, Plaintiff's conclusory allegation that the supervision and management of his team was "undermined" is impermissibly vague and does not constitute a prohibited discriminatory action. Second, Plaintiff fails to plead facts to support his claim of failure to accommodate religious

HERRICK



observances: he does not allege that he ever requested a reasonable accommodation, that any request for time off for religious purposes was denied, that alleged calls during religious service impacted his practice, or that Plaintiff was disciplined for attending services or for failing to pick up a call. Third, as noted, a bonus is not due to Plaintiff. But even if a bonus were due, Plaintiff fails to plead any facts to tie his religion or national origin to Fairstead's alleged non-payment of a bonus, and fails to plead any facts to suggest disparate treatment. Fourth, Plaintiff admits by the Complaint itself that his termination was not a result of discrimination, and this is a judicial admission to which a plaintiff is bound. Plaintiff further fails to tie any alleged discriminatory remarks to adverse action, including any temporal proximity between the two. Lastly, the Complaint runs afoul of the "same-actor inference," as Plaintiff alleges that Goldberg is both the individual who hired Plaintiff, and who then discriminated against him.

***Counts 10-12 (Whistleblowing/Retaliation/Wrongful Termination)***. By Count Ten, Plaintiff alleges a whistleblower claim under New York Labor Law § 740, based on an alleged disclosure that (i) "Fairstead's Human Resources and accounting departments were not complying with legal and regulatory requirements"; (ii) "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed"; and (iii) "Fairstead had misrepresented to HUD that it would invest in certain properties that Shah managed but had not done so." Plaintiff alleges retaliation in the form of his termination. Similarly, by Count Eleven, Plaintiff alleges his termination was improper retaliation under New York Labor Law § 215, based on an alleged disclosure that "Goldberg had fired Fairstead employees without paying them wages they were entitled to." As with Plaintiff's wage claim, these New York Labor Law claims should be dismissed, as Plaintiff was a Maryland employee. Moreover, although Plaintiff pleads retaliatory action (his termination), he fails to allege protected activity in a non-conclusory manner such that Defendants would have "notice of the alleged complained-of conduct." Similarly, Plaintiff fails to identify any provision of the New York Labor Law that was allegedly violated.

Finally, by Count Twelve, Plaintiff alleges he was wrongfully terminated in violation of Maryland public policy. However, Plaintiff fails to plead with particularity any public policy allegedly violated, and internally reporting legal violations does not constitute a violation of a Maryland public policy.

Respectfully submitted,

Meaghan Roe

cc: All counsel of record (*via ECF*)