UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAH ALAM,

Plaintiff,

— against —

FAIRSTEAD MANAGEMENT LLC and JEFFREY GOLDBERG,

Defendants.

Case No. 1:24-CV-00849-NRB

**MEMORANDUM OF LAW IN OPPOSITION TO**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

MANDEL BHANDARI LLP
Rishi Bhandari
Donald Conklin
80 Pine Street, 33rd Floor
New York, NY 10005
T: (212) 269-5600
F: (646) 964-6667
rb@mandelbhandari.com

*Attorneys for Plaintiff Shah Alam*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

STATEMENT OF FACTS ....................3

LEGAL STANDARD ....................6

ARGUMENT ....................8

I. FAIRSTEAD BREACHED THE EMPLOYMENT AGREEMENT ....................8

A. Fairstead Breached Its Obligation to Pay Alam His Guaranteed 2022 Bonus ....... 8

B. Fairstead Breached Its Obligation to Pay Alam His Guaranteed 2023 Bonus ....... 9

C. Fairstead Breached Its Obligation to Pay Alam Discretionary Bonuses .............. 10

II. FAIRSTEAD BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING ....................11

III. DEFENDANTS ARE LIABLE FOR UNPAID WAGE CLAIMS ....................12

A. Fairstead Violated NYLL § 193 .................... 12

B. Fairstead Violated MWPCL .................... 13

C. Alam Is Entitled to Liquidated Damages and Treble Damages .................... 14

IV. THE COMPLAINT PROPERLY ALLEGES DISCRIMINATION CLAIMS UNDER STATE AND FEDERAL LAW ....................15

A. The Discrimination Had An Impact in New York City .................... 15

B. The Discrimination Claims Are Properly Pleaded .................... 17

C. The Same-Actor Inference Is No Basis to Dismiss These Claims .................... 20

V. THE COMPLAINT PROPERLY ALLEGES WHISTLEBLOWER RETALIATION ....................20

VI. THE COMPLAINT PROPERLY PLEADS TERMINATION IN VIOLATION OF MARYLAND PUBLIC POLICY ....................24

VII. THE COURT SHOULD GRANT LEAVE TO AMEND ....................25

CONCLUSION ....................25

# TABLE OF AUTHORITIES

## Cases

*Adler v. Am. Standard Corp.*,
432 A.2d 464 (Md. 1981) .......... 24

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005) .......... 25

*Banks v. General Motors, LLC*,
81 F.4th 242 (2d Cir. 2023) .......... 19

*Bartman v. L'Officiel USA*,
No. 21-1987, 2022 WL 4085850 (S.D.N.Y. Sept. 2, 2022) .......... 13

*Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012) .......... 10

*Benedith v. Malverne Union Free Sch. Dist.*,
38 F. Supp. 3d 286 (E.D.N.Y. 2014) .......... 20

*Biberaj v. Pritchard Indus.*,
No. 08-07993, 2009 WL 10738222 (S.D.N.Y. Sept. 28, 2009) .......... 24

*Blanch v. Chubb & Sons, Inc.*,
No. CCB-12-1965, 2017 WL 4167383 (D. Md. Sept. 20, 2017) .......... 13

*Buon v. Spindler*,
65 F.4th 64 (2d Cir. 2023) .......... passim

*Callahan v. HSBC Sec. (USA) Inc.*,
No. 22-8621, 2024 WL 1157075 (S.D.N.Y. Mar. 18, 2024) .......... 10, 22

*Chen-Oster v. Goldman, Sachs & Co.*,
251 F. Supp. 3d 579 (S.D.N.Y. 2017) .......... 15

*Colbert v. FSA Store, Inc.*,
No. 19-cv-9828, 2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020) .......... 19, 20

*Cortlandt St. Recovery Corp. v. Hellas Telecomm'ns I, S.à.r.l.*,
790 F.3d 411 (2d Cir. 2015) .......... 7

*Dalton v Educ. Testing Serv.*,
87 N.Y.2d 384 (1995) .......... 11

*Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*,
79 F. Supp. 2d 374 (S.D.N.Y. 2000) .......... 7

*Finkle v. Howard Cnty*,
12 F. Supp. 3d 780 (D. Md. 2014) ........ 18

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002) ........ 7

*Flanagan v. Girl Scouts of Suffolk Cty.*,
No. 21-7153, 2023 WL 6594885 (E.D.N.Y. Aug. 25, 2023) ........ 24

*Fried v. LVI Servs.*,
500 Fed. Appx. 39 (2d Cir. 2012) ........ 16

*Grullon v. City of New Haven*,
720 F.3d 133 (2d Cir. 2013) ........ 25

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (2010) ........ 15

*Howe v. Town of Hampstead*,
No. 04-0656, 2006 WL 3095819 (E.D.N.Y. Oct. 30, 2006) ........ 19

*Johnson v. Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023) ........ 16

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986) ........ 7

*Kessler v. Equity Mgmt., Inc.*,
572 A.2d 1144 (Md. Ct. Spec. App. 1990) ........ 24

*Kingston v. IBM*,
187 A.D.3d 578 (1st Dept. 2020) ........ 17

*Kolesnikow v. Hudson Valley Hosp. Ctr.*,
622 F.Supp.2d 98 (S.D.N.Y. 2009) ........ 23

*Kraiem v. JonesTrading Institutional Servs. LLC*,
492 F. Supp. 3d 184 (S.D.N.Y. 2020) ........ 17

*Kraus USA, Inc. v. Magarik*,
No. 17-6541, 2020 WL 2415670 (S.D.N.Y. May 12, 2020) ........ 20

*Lebowitz v. New York City Dep't of Educ.*,
407 F. Supp. 3d 158 (E.D.N.Y. 2017) ........ 18

*Levy v. Legal Aid Soc.*,
408 F. Supp. 3d 209 (E.D.N.Y. 2019) ........ 19

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015) .......... 18

*M'Baye v. World Boxing Ass'n*,
No. 05-cv-9581; 2009 WL 2245105 (S.D.N.Y. July 28, 2009) .......... 11

*Magee v. DanSources Tech. Services, Inc.*,
769 A.2d 231 (Md. Ct. Spec. App. 2001) .......... 24

*Meilus v. Rest. Opportunities Ctr. United*,
No. 21-02554, 2021 WL 4868557 (S.D.N.Y. Oct. 15, 2021) .......... 16

*O'Grady v. BlueCrest Cap. Mgmt.*,
111 F. Supp. 3d 494 (S.D.N.Y. 2015) .......... 13

*O'Neill v. Mermaid Touring*,
968 F. Supp. 2d 572 (S.D.N.Y. 2013) .......... 12

*Palmer v. Shchegol*,
406 F. Supp. 3d 224 (E.D.N.Y. 2016) .......... 20

*Pedroza v. Ralph Lauren Corp.*,
No. 19-8639, 2020 WL 4273988 (S.D.N.Y. July 24, 2020) .......... 15

*Peters v. Early Healthcare Giver, Inc.*,
439 Md. 646 (2014) .......... 14

*Richbell Info. Servs, Inc. v. Jupiter Partners, LP*,
309 A.D.2d 288 (1st Dept. 2003) .......... 11

*Rodriguez v. KGA Inc.*,
No. 160931/2015, 2016 WL 3632478 (N.Y. Sup. N.Y. Cty. Jul. 5, 2016) .......... 12

*Rosenzweig v. ClaimFox Inc.*,
251 F. Supp. 3d 449 (E.D.N.Y. 2017) .......... 11

*Ryan v. Kellogg Partners Institutional Servs.*,
19 N.Y.3d 1 (2012) .......... 13

*Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*,
549 F. Supp. 2d 549 (S.D.N.Y. 2008) .......... 17

*Smith v. AECOM Tishman*,
No. 21-2915, 2023 WL 2734430 (S.D.N.Y. 2023) .......... 17

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) .......... 6, 18

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446 (N.Y. 2024) .......... 16

*Syeed v. Bloomberg L.P.*,
58 F.4th 64 (2d Cir. 2023) .......... 2, 16, 21

*Thacker v. HSBC Bank*,
No. 22-7120, 2023 WL 3061336 (S.D.N.Y. Apr. 24, 2023) .......... 10

*Warman v. Am. Nat'l Standards Inst.*,
No. 15-5486, 2016 WL 3676681 (S.D.N.Y. July 6, 2016) .......... 12

*Webb-Weber v. Community Action for Human Servs., Inc.*,
23 N.Y.3d 448 (N.Y. 2014) .......... 22

*Wellner v. Montefiore Med. Ctr.*,
No. 17-3479, 2019 WL 4081898 (S.D.N.Y. Aug. 29, 2019) .......... 18

*Yuan v. Johns Hopkins Univ.*,
157 A.3d 254 (Md. 2017) .......... 24

*Zhang v. Centene Mgmt.*,
No. 21-5313, 2023 WL 2969309 (E.D.N.Y. Feb. 2, 2023) .......... 24

**Statutes**

Maryland Fair Employment Practices Act,
Md. Code Ann., State Gov't, §§ 20-601 et seq. .......... 15, 18

Maryland Wage Payment and Collection Law,
Md. Code Ann., Lab. & Empl. §§ 3-501 et seq. .......... passim

Montgomery County Human Rights Act,
Montgomery County Code § 27–19(a)(1) .......... 15, 18

New York Labor Law § 215 .......... 23, 24

New York Labor Law § 740 .......... passim

New York Labor Law §§ 190 et seq. .......... 2

New York City Human Rights Law,
N.Y.C. Admin. Code §§ 8-101 et seq. .......... passim

New York State Human Rights Law,
N.Y. Exec. Law §§ 290 et seq. .......... passim

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. .......... 15, 17, 18

**Other Authorities**

*Eligible*, CAMBRIDGE ENGLISH DICTIONARY .......... 9

*Eligible*, COLLINS DICTIONARY .......... 10

*Eligible*, MERRIAM-WEBSTER DICTIONARY .......... 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... 6, 9, 15

Fed. R. Civ. P. 8(d) .......... 19

**Treatises**

CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
5B FED. PRAC. & PROC. CIV. § 1350 (4th ed.) .......... 7

## TABLE OF ABBREVIATIONS

| Abbreviation | Item |
|---|---|
| Complaint | Plaintiff's First Amended Complaint [Dkt. 25] |
| Def Br. | Defendant's Memorandum of Law in Support of Its Motion to Dismiss [Dkt. 27] |
| Dkt. __ | Docket entries in this action |
| Agreement | Employment Agreement between Plaintiff and Fairstead Management LLC [Dkt 28-1] |
| Title VII | Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. |
| NYSHRL | New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. |
| NYCHRL | New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq*. |
| NYLL | New York Labor Law |
| MWPCL | Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq*. |
| MFEPA | Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't, §§ 20-601 *et seq*. |
| MCHRA | Montgomery County Human Rights Act, Montgomery County Code § 27–19(a)(1) |

## PRELIMINARY STATEMENT

Fairstead Management LLC hired Shah Alam in 2020 to be President of its in-house property management company and dramatically grow that division at an unprecedented rate. He did exactly that. But while Alam was working at Fairstead, its CEO Jeffrey Goldberg repeatedly made discriminatory comments to Alam, undermined him, and disregarded his religious holidays and practices. In early 2023, Alam met with Fairstead owner and primary investor Stuart Feldman at Feldman's request, because Feldman wanted to get Alam's opinion on how he thought Fairstead was doing. Alam told Feldman that Goldberg had terminated Fairstead employees without paying them wages they were entitled to, Fairstead had made misrepresentations to U.S. Department of Housing and Urban Development in connection with properties it owned, and Fairstead's HR and accounting departments were not complying with certain legal and regulatory requirements. Soon after, Goldberg summoned Alam to Fairstead's offices in New York, where Goldberg told him he knew about Alam's comments to Feldman, and told him he was being terminated.

In their motion, Defendants deny various facts alleged in the Complaint, ignore others, and fabricate "numerous performance issues," a "grave breach of loyalty" and alleged "extortionate severance demands." None of those allegations are relevant to this motion to dismiss, but the evidence will show that Defendants' accusations are false and no one should take Defendants at their word.

Defendants offer various reasons to dismiss the Complaint but none have merit. ***First***, Defendants argue that Alam makes "baseless claims to discretionary bonuses" he has no right to under his employment agreement with Fairstead. But the plain language of that contract is clear: Alam is at the very least entitled to minimum guaranteed annual bonuses for 2022 and 2023 that Fairstead refused to pay. ***Second***, Defendants claim these minimum guaranteed annual bonuses

are not "wages" under the New York and Maryland labor laws. Under the law in both states, they are.

The motion does not dispute that Defendants failed to timely pay Alam his guaranteed annual minimum bonus for 2022 when it was due. Instead, it improperly asserts via a self-serving declaration from Goldberg that Defendants supposedly tried to pay Alam his 2022 minimum guaranteed bonus in April 2024. That is more than a year after the deadline in the employment agreement for Defendants to pay it – and after this case had been filed. Defendants' admission that they only even tried to pay Alam a guaranteed bonus after he already sued them for it means Defendants will not be able to show the "good faith" needed to avoid liquidated damages under NYLL §§ 193 and 198, or the "bona fide dispute" required to escape treble damages under the MWPCL.

***Third***, Defendants claim that since Alam is a Maryland resident, he "cannot allege the necessary in-state 'impact' to invoke New York State and City discrimination laws" under Fed. R. Civ. P. 12(b)(1). The Complaint is clear that while Alam resided in Maryland, Fairstead required him to regularly and frequently commute to its offices in New York. Defendants then discriminated against Alam by telling him he was being terminated at an in-person meeting at Fairstead's offices in Manhattan. As the Second Circuit recently summarized, "the impact requirement ... turn[s] primarily on the plaintiff's physical location at the time of the alleged discriminatory acts." *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 69 (2d Cir. 2023). Here, that is Fairstead's offices in New York City. The allegations here satisfy the impact requirement for NYCHRL and NYSHRL claims.

***Fourth***, Defendants argue that Alam's discrimination claims should be dismissed because Defendants are entitled to the "same-actor inference," because Goldberg both hired and

discriminated against Alam. The same-actor inference does not apply because the Complaint alleges that Fairstead hired Alam after more than a dozen interviews with Goldberg, Feldman, and Goldberg's then-partners Will Blodgett and John Tatum. The employment agreement states Alam was hired to report to both Goldberg and Blodgett. In all instances, even if it did apply, the same-actor inference is not grounds for a motion to dismiss discrimination claims. Alam's discrimination claims are otherwise adequately pleaded.

***Finally***, Defendants argue that Plaintiff's whistleblowing claims are "fail to sufficiently allege any protected activity." The Complaint is more than clear about the grounds for Alan's whistleblowing and wrongful termination in violation of Maryland public policy claims.

For the reasons below, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss.

## STATEMENT OF FACTS

Plaintiff Shah Alam is a Muslim man from Pakistan with an extensive, decades-long background in property management. Complaint ¶¶ 32-33. Defendant Fairstead is one of the country's largest apartment landlords, *id.* at ¶ 34, and Alam was President and Managing Director of Fairstead's Property Management division, overseeing the company's national property management team and properties across the country. *Id.* That included New York City, where Fairstead is one of the city's largest residential property owners. *See, e.g.*, FAIRSTEAD: BUILDING COMMUNITIES 2023, at 76, *available at* https://www.fairstead.com/wp-content/uploads/2023/02/Fairstead-Building-Communities-2023.pdf (last accessed July 26, 2024); *see also id.* at 118-119 (describing "The Fairstead Team," including Goldberg and Alam).

Property management involves overseeing all day-to-day operations including maintenance and upkeep; data analytics, financial reporting, and compliance; leasing; safety

training and education programs; and resident relationship and retention management. FAIRSTEAD: BUILDING COMMUNITIES 2023, at 22; *see also* Complaint ¶ 33. The kind of affordable housing properties Fairstead owns have complex regulatory requirements. *Id.* ¶ 40. Affordable housing property owners and managers like Fairstead must comply with the rules and regulations of various state agencies, the IRS and the U.S. Department of Housing and Urban Development ("HUD"). *Id.* ¶¶ 41-42. False statements to HUD carry substantial penalties. *Id.*

In September 2020, after more than a dozen interviews at Fairstead's offices in Manhattan with Defendant Jeffrey Goldberg, Fairstead's controlling shareholder Stuart Feldman and Goldberg's then-partners Will Blodgett and John Tatum, Fairstead hired Alam as President of its in-house property management company. *Id.* ¶ 36. The terms of Alam's employment were governed by an August 2020 Employment Agreement. Dkt 28-1; *see also* Complaint ¶ 5.

Under the Agreement, Alam was entitled to base compensation and annual bonuses, including a minimum guaranteed annual bonus, to be paid in full no later than March 31 of the next year. *Id.* Under the Agreement, if Alam was terminated "without cause," he was still entitled to a pro rata share of his annual bonus. *Id.* In 2021 and 2022, Alam got annual bonuses of $400,000 from Fairstead. *Id.* ¶ 15. He performed similarly for Fairstead in 2022 and 2023 and expected to receive the same bonuses as prior years. *Id.*

Fairstead tasked Alam with growing its property management team. Under Alam, Fairstead went from managing about 3,500 units to more than 16,600 units between 2020 and 2022, and from about 100 employees to more than 500. *Id.* ¶ 43. While Alam often worked from Maryland, Fairstead required him to frequently and regularly commute to Fairstead's offices in New York City every few weeks to work from there. *Id.* ¶¶ 21, 38. He spent multiple days in the office during these trips. *Id.*

In 2021, Alam was made a Managing Partner at Fairstead. He never had a negative performance review while working there. *Id.* ¶ 43-44.

Despite these successes, Goldberg often undermined, yelled at, cut off, and generally disrespected Alam. *Id.* ¶¶ 48-49. He did not act that way towards other executives at Fairstead who were white. *Id.* Goldberg routinely made comments to Alam like, "I thought you were all from same country," referring to people of color. *Id.* ¶ 50. Goldberg said that Alam "had the same culture" as one of his IT employees, who is from India, and said Alam was "from the same place" as a dark-skinned Israeli co-worker. *Id.* ¶¶ 53-54. When Alam took time away from work to celebrate Muslim holidays, Goldberg ignored Alam's religious observances and acted as if he were still on the clock, while other members of the Fairstead team were given time off for Jewish and Christian holidays. *Id.* ¶¶ 51-52. Alam raised concerns about Goldberg's comments and actions with Fairstead's Human Resources department, including Chief People Officer Stephanie Perez, but was told "that's just the way he is." *Id.* ¶ 56.

Defendants discriminated against Alam in violation of federal, state and local statutes by undermining his supervision and management of his team; not making reasonable accommodations for his religious observances; paying him bonus compensation to which he was entitled; and as discussed below, ultimately terminating him – unlike similarly situated white, non-Muslim employees who are not from Pakistan. *E.g.*, *id.* ¶¶ 111, 119, 126, 134, 142.

In the first quarter of 2023, Fairstead's owner Stuart Feldman met with employees to ask how they thought Fairstead was doing. *Id.* ¶ 57. Alam met with Feldman and gave his honest views about issues at Fairstead. Alam told Feldman that Fairstead's Human Resources and accounting departments were not complying with legal and regulatory requirements; that Goldberg violated labor laws by firing Fairstead employees without paying them what they were

owed; and that Fairstead had misrepresented to HUD that it would invest in certain properties that Alam managed but had not done so. *Id.* ¶¶ 59-61.

Soon after, Alam was summoned to a meeting at Fairstead's New York offices with Goldberg and Fairstead's general counsel Seth Hoffman. Goldberg said he knew Alam had talked to Feldman, and because of that conversation it was best for Alam and Fairstead to "go their separate ways." *Id.* ¶ 63. Alam was shocked that Defendants intended to terminate him – he had been candid with Feldman because he thought it would lead to positive change at the company. *Id.* ¶ 66.

Alam received annual bonuses from Fairstead of $400,000 in both 2021 and 2022, and since his performance for those years was the same as it was in 2022 and 2023, he expected to receive the same bonuses for 2022 and 2023. *Id.* ¶ 64. Goldberg suggested Fairstead would pay Alam bonuses for 2022 and 2023 but Defendants never did so. *Id.* ¶ 65. Alam's last day at Fairstead was July 7, 2023. *Id.* ¶ 69.

## LEGAL STANDARD

Defendants ask to dismiss Alam's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Def Br. at 1. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the pleadings must contain 'enough facts to state a claim for relief that is plausible on its face,' *i.e.*, the pleaded facts must 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023). In evaluating a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.*

A plaintiff need not "plead facts establishing a prima facie case." *Id.* at 79 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). This is "because the precise requirements of a prima facie case can vary depending on the context, and before discovery has

unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Buon*, 65 F.4th at 79 (cleaned up).

In assessing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must "accept as true all material allegations of the complaint and … construe the complaint in favor of the complaining party." *Cortlandt St. Recovery Corp. v. Hellas Telecomm'ns I, S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015). Although the Court may in some cases refer to evidence outside the pleadings, where, as here, the defendant has made a facial challenge to the sufficiency of the allegations in Plaintiff's complaint, limiting consideration to the pleadings is appropriate. CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FED. PRAC. & PROC. CIV. § 1350 (4th ed.) (explaining there are two types of 12(b)(1) motions, facial and factual attacks, and that consideration of the pleadings suffices in a facial attack, but affidavits and other evidence may be considered when the attack is factual).

On a factual attack, courts (1) require that the party asserting jurisdiction be permitted discovery of relevant facts, *see Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), and (2) apply "the standard applicable to a motion for summary judgment" to the evidence. *See First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 378 (S.D.N.Y. 2002), *aff'd sub nom., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004). Accordingly, a 12(b)(1) motion must be denied if the party challenging jurisdiction "has failed to demonstrate that there is no genuine dispute as to any material fact." *Dar El-Bina Eng'g & Contracting Co. v. Republic of Iraq*, 79 F. Supp. 2d 374, 385 (S.D.N.Y. 2000).

## ARGUMENT

### I. FAIRSTEAD BREACHED THE EMPLOYMENT AGREEMENT

For all their bluster about "extortionate severance demands," Def. Br. at 1, Defendants' motion admits Fairstead breached the Employment Agreement by failing to timely pay Alam annual guaranteed bonuses. Defendants nonetheless ask the Court to dismiss Alam's breach of contract claim since "the claimed bonuses were discretionary." Def. Br. at 9. The unambiguous contract language shows Defendants' strained interpretation of it is wrong, and Defendants' request to dismiss Alam's breach of contract claim should be denied.

Defendants quote from Subsection 1.D of the Agreement to argue that these bonuses were "discretionary," but that section shows the opposite. It states,

> While you are employed with the Firm, you will receive a minimum annual guaranteed bonus payment of $100,000 ('Annual Guaranteed Bonus'). Such Annual Guaranteed Bonus will be paid to you in full in one lump sum payment **no later than March 31st of the following calendar year**. If you are terminated without Cause during the calendar year, you are eligible for a pro-rata share of the Annual Guaranteed Bonus as further described in Section 3.

Dkt. 28-1 at 2-3 (emphasis added). Section 3 of the Agreement sets out covenants about confidentiality and non-disparagement, breaches of which are grounds for termination other than "without Cause." *See id*. at 4-6.

#### A. Fairstead Breached Its Obligation to Pay Alam His Guaranteed 2022 Bonus

Under the Employment Agreement, Fairstead had to pay Alam a minimum annual guaranteed bonus of $100,000 "no later than March 31st of the following calendar year." Defendants argue that a direct deposit statement attached to Goldberg's declaration means that Alam got all annual guaranteed bonuses "for years in which he was employed the entire year, including for 2022." Def. Br. at 5, 9. But that direct deposit statement is dated April 12, 2024, and states that it is a "YTD Bonus" – for 2024. Dkt. 28-3. Goldberg's self-serving editorializing

about the purpose of this payment (Dkt. 28 ¶ 5) has nothing to do with Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1). It is also not a basis for a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). It is, however, an admission that Defendants breached the Agreement.

There is no question that this direct deposit statement is dated *after* Alam was forced to file wage claims under NYLL and the MWPCL here on February 6, 2024. Dkt. 1; *see also* Goldberg Declr. ¶ 5 ("As indicated by the 'Bonus' notation on the paystub, this payment represented the alleged 2022 annual guaranteed bonus payment that Plaintiff had claimed by his original complaint"). As discussed below, failing to timely pay this bonus was not in good faith under the NYLL and not the result of a "bona fide dispute" under the MWPCL.

### B. Fairstead Breached Its Obligation to Pay Alam His Guaranteed 2023 Bonus

Because Alam was terminated without cause and for no legitimate reason, he is entitled to a pro rata share of his guaranteed bonus for 2023. Defendants nonetheless urge a tortured reading of Subsection 1.D: that Alam "was at best 'eligible' for a pro-rata share" of his annual guaranteed bonus for 2023, but it was "at Fairstead's discretion (which Fairstead was not obligated to pay)." Def. Br. at 9. That ignores the plain language of the Agreement and makes the difference between "Annual Guaranteed Bonus" and "Annual Discretionary Bonus" meaningless. It would also render superfluous Subsection 1.D's reference to Section 3 of the Agreement, which lists grounds for termination other than "without Cause."

The plain language of the Agreement means the opposite of what Defendants claim: being "eligible" for a pro rata share of the guaranteed bonus means that Alam was *entitled* to it *unless* he was terminated for cause (which he was not). *See Eligible*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/eligible (lasted visited July

26, 2024) ("having the necessary qualities or satisfying the necessary conditions"); *Eligible*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/eligible (lasted visited July 26, 2024) ("qualified to participate"); *Eligible*, COLLINS DICTIONARY, https://www.collinsdictionary.com/us/dictionary/english/eligible (lasted visited July 26, 2024) ("Someone who is eligible to do something is qualified or able to do it ..."). Defendant's interpretation – at best – creates an ambiguity,[1] which cannot be resolved on a motion to dismiss. *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012).

### C. Fairstead Breached Its Obligation to Pay Alam Discretionary Bonuses

The Complaint alleges that one way Defendants discriminated against Alam was by failing and refusing to pay him bonuses to which he was entitled based on his performance at Fairstead. A bonus reduction is a "material loss of benefits" that is a quintessential "materially adverse change" that supports a discrimination claim. *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023). "It therefore necessarily satisfies the lower standard applicable to retaliation claims" under NYLL § 740. *Thacker v. HSBC Bank*, No. 22-7120, 2023 WL 3061336, *8 (S.D.N.Y. Apr. 24, 2023); *see also Callahan v. HSBC Sec. (USA) Inc.*, No. 22-8621, 2024 WL 1157075, at *7 (S.D.N.Y. Mar. 18, 2024) (withholding of plaintiff's bonus was retaliation under NYLL, since it was a "materially adverse" action that "might have dissuaded a reasonable worker" from engaging in protected activity).

[1] Under New York law, any ambiguity should be construed against Defendants as the drafters of the Agreement. *See, e.g., White v. Cont. Cas. Co.*, 9 N.Y.3d 264, 267 (2007); *see also Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir. 2008).

## II. FAIRSTEAD BREACHED THE COVENANT OF GOOD FAITH AND FAIR DEALING

Defendants argue Alam's claim for breach of the covenant of good faith and fair dealing "should also be dismissed as duplicative of his non-viable contract claim." Def. Br. at 10. The claim is not duplicative of Alam's contract claim. New York courts have repeatedly affirmed that a party can breach the implied duty of good faith and fair dealing, even if it did not breach express contractual obligations, when it exercises a contractual right as part of a scheme to deprive the other party of the fruit of its bargain. *See, e.g.*, *Dalton v Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

The covenant of good faith and fair dealing means that "Even where one has an apparently unlimited right under a contract, that right may not be exercised solely for personal gain in such a way as to deprive the other party of the fruits of the contract." *Richbell Info. Servs, Inc. v. Jupiter Partners, LP*, 309 A.D.2d 288, 302 (1st Dept. 2003); *see also M'Baye v. World Boxing Ass'n*, No. 05-cv-9581; 2009 WL 2245105, at *7 (S.D.N.Y. July 28, 2009) (same). The covenant applies in the employment context. *See, e.g., Rosenzweig v. ClaimFox Inc.*, 251 F. Supp. 3d 449, 460 (E.D.N.Y. 2017) (allowing at-will employee to assert breach of covenant of good faith and fair dealing claim since, "the Court finds that it is plausible that ClaimFox terminated the Plaintiff to avoid providing her with a reasonable accommodation, pregnancy leave, or disability benefits").

As alleged in the Complaint, Fairstead breached the implied covenant of good faith and fair dealing when it terminated Alam in bad faith to avoid paying him compensation to which he was entitled. Those allegations state each element necessary for this claim.

## III. DEFENDANTS ARE LIABLE FOR UNPAID WAGE CLAIMS

### A. Fairstead Violated NYLL § 193

As alleged in the Complaint, Alam is a resident of Maryland, who "regularly traveled to Fairstead's offices in New York every few weeks to work from there at Goldberg's and Fairstead's request. On these routine trips to work out of Fairstead's offices, Alam typically stayed in New York for multiple days." Complaint ¶ 38. As explained above, Fairstead is one of the country's largest apartment landlords and Alam was President and Managing Director of Fairstead's Property Management division, overseeing the company's national property management team and properties across the country. That included many properties in New York City, where Fairstead is one of the city's largest residential property owners. The Employment Agreement makes clear that Alam reported to multiple Fairstead executives in its New York City offices. Dkt. 28-1 at 1.

So while Defendants argue that the New York Labor Law "does not apply to labor performed outside of New York," Def. Br. at 12, the labor here was "performed in New York" and NYLL provisions governing unpaid wages apply. This is not a case where "The violations alleged by plaintiffs reportedly occurred when they worked as waiters during trips to California,"[2] "Plaintiff never worked in New York,"[3] or a defendant moved for summary judgment on claims "for overtime work performed outside of New York."[4] That the

---

[2] *Rodriguez v. KGA Inc.*, No. 160931/2015, 2016 WL 3632478, at *2 (N.Y. Sup. N.Y. Cty. Jul. 5, 2016).

[3] *Warman v. Am. Nat'l Standards Inst.*, No. 15-5486, 2016 WL 3676681, at *1 (S.D.N.Y. July 6, 2016).

[4] *O'Neill v. Mermaid Touring*, 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013).

Employment Agreement includes a New York choice of law and venue provision highlights the New York-centric nature of Alam's job and work. Dkt. 28-1 at 7.

On the merits, NYLL's provisions on unpaid wages apply. As explained above, Alam was entitled to minimum guaranteed bonuses for 2022 and 2023 under the Employment Agreement. Dkt. 28-1 at 1-2. These are expressly not "discretionary bonuses" and it is puzzling that Defendants nonetheless maintain they were. Def. Br. at 13. Thus, Alam has an "enforceable contractual right to those wages" under NYLL § 193, and this case has is entirely different from those where a plaintiff "failed to plead the existence of an enforceable agreement between Plaintiff and Defendants," *Bartman v. L'Officiel USA*, No. 21-1987, 2022 WL 4085850, at *2 (S.D.N.Y. Sept. 2, 2022), or an employment contract stated that all bonus awards "are subject to the 'sole and absolute discretion'" of the employer. *O'Grady v. BlueCrest Cap. Mgmt.*, 111 F. Supp. 3d 494, 505-06 (S.D.N.Y. 2015).

As a result, the New York Court of Appeals' decision in *Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1 (2012) controls. There, the Court of Appeals held that an employer's failure to pay a "guaranteed" and "nondiscretionary" bonus, which "had been earned and was vested before [plaintiff] left his job" violated NYLL § 193 and entitled Ryan to an award of attorney's fees under Labor Law § 198(1-a). *Id.* at 16.

**B. Fairstead Violated MWPCL**

For similar reasons, Defendants offer no reason why Alam's claim under the Maryland Wage Payment and Collection Law should be dismissed. The MWPCL explicitly defines "wage" to include "a bonus." Md. Code Ann., Lab. & Empl. § 3-501(c)(2)(i); *see also Blanch v. Chubb & Sons, Inc.*, No. CCB-12-1965, 2017 WL 4167383, at *3 (D. Md. Sept. 20, 2017) ("[B]onuses … fall under the definition of 'wage' in the MWPCL. … [O]nce an employee does

everything required to earn the wages, his right to receive the wages vests and cannot be withheld because employment is terminated prior to the date of payment.").

Defendants argue again that Alam was only entitled to "discretionary bonuses," so this claim should be dismissed. Def. Br. at 14. As explained above and as alleged in the Complaint, Alam was at the very least entitled to minimum guaranteed bonuses for 2022 and 2023 under the Employment Agreement, and he did "everything required to earn" those guaranteed bonuses. Dkt. 28-1 at 1-2. Defendants failed and refused to pay those bonuses and violated MWPCL.

### C. Alam Is Entitled to Liquidated Damages and Treble Damages

Violations of NYLL § 193 have a presumption of liquidated damages up to 100% of the claim under NYLL § 198(1-a), *unless* the employer proves its good faith. Similarly, the MWPCL § 3-507 provides for treble damages if a court finds that an employer "withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute." Maryland courts have held that a bona fide dispute is "'a legitimate dispute over the validity of a claim or the amount that is owing []' where the employer has a good faith basis for refusing an employee's claim for unpaid wages." *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 657 (2014). The employer has the burden of proving the absence of a bona fide dispute. *Id.* An employer cannot use the bona fide dispute defense if it did not make reasonable efforts to determine its legal obligations. *Pinnacle Grp., LLC v. Kelly*, 235 Md. App. 436, 467 (2018), *cert. denied*, 459 Md. 188 (2018).

Defendants' motion admits they will not be able to prove "good faith" in not paying Alam the guaranteed minimum bonuses for 2022 and 2023 or show their refusal to promptly pay these bonuses was "a result of a bona fide dispute." The motion does not dispute that Defendants failed to timely pay Alam his guaranteed annual minimum bonus for 2022 when it was due.

Instead, it improperly asserts via a self-serving declaration from Goldberg that Defendants allegedly attempted to belatedly paid Alam his 2022 bonus after this action had been filed and Alam had asserted NYLL § 193 and MWPCL claims. *See* Dkt. 1 ¶¶ 83-96; Dkt. 28 ¶ 5. Waiting until an employee files a claim for unpaid wages before trying to pay those wages violates NYLL § 193 and MWPCL.

## IV. THE COMPLAINT PROPERLY ALLEGES DISCRIMINATION CLAIMS UNDER STATE AND FEDERAL LAW

Defendants wrongly argue that Alam (i) fails to state discrimination claims under the NYSHRL and NYCHRL under Fed. R. Civ. P. 12(b)(1) and (ii) fails to state discrimination claims under Title VII, the NYSHRL, the NYCHRL, MFEPA and MCHRA under Fed. R. Civ. P. 12(b)(6). The discrimination alleged in the Complaint had its impact in New York City and state and Defendants' motion to dismiss those claims under Fed. R. Civ. P. 12(b)(1) should be denied. The misconduct alleged in the Complaint adequately alleges religion and national origin discrimination under Title VII, the NYSHRL, the NYCHRL, MFEPA and MCHRA.

### A. The Discrimination Had An Impact in New York City

The NYCHRL's protections extend "to non-residents who work in [New York] city." *Pedroza v. Ralph Lauren Corp*., No. 19-8639, 2020 WL 4273988, at *2 (S.D.N.Y. July 24, 2020). To state a claim under the NYCHRL, a "non-resident plaintiff must allege that the discriminatory conduct had an impact in New York City." *Id.; accord Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 291 (2010) (plaintiff must "plead and prove that the alleged discriminatory conduct had an impact in New York"). "To succeed on a motion to dismiss, a defendant must show that there is no possibility that there was an impact in New York. [Defendants] have not." *Chen-Oster v. Goldman, Sachs & Co*., 251 F. Supp. 3d 579, 594 (S.D.N.Y. 2017).

As the Second Circuit recently summarized, "the impact requirement ... turn[s] primarily on the plaintiff's physical location at the time of the alleged discriminatory acts." *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 69 (2d Cir. 2023). And as alleged in the Complaint, Alam frequently and regularly commuted to Fairstead's offices in Manhattan, and Defendants' discrimination culminated in an in-person meeting in Manhattan, where Defendants told him he was being terminated. Complaint ¶¶ 12, 63, 119, 126. Defendants' argument that, nonetheless, "Plaintiff fails to allege that any discriminatory acts occurred in New York" is simply wrong. Def. Br. at 15. Defendants' statement that "the locale of the termination meeting is not sufficient to fulfill the impact test and confer jurisdiction" ignores the other allegations in the Complaint about impact and the Second Circuit's decision in *Syeed*.[5]

The Second Circuit in *Syeed* certified to the New York Court of Appeals whether a nonresident plaintiff could satisfy the impact requirement when the only geographical connection to New York was that the plaintiff had been denied a New York City-based position. *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 452 (N.Y. 2024). The question resolved by the Court of Appeals in *Syeed* is of no moment here, in light of the Complaint's repeated factual allegations of discrimination by Defendants against Alam in New York City, including an in-person meeting at which he was wrongly terminated. *See, e.g., Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 557 (S.D.N.Y. 2023) (finding sufficient nexus with New York for NYCHRL claims "involving face-to-face harassment in New York City between the alleged harasser and a

[5] Defendants cite two pre-*Syeed* cases for this claim but neither supports it. Def. Br. at 16, citing *Meilus v. Rest. Opportunities Ctr. United*, No. 21-02554, 2021 WL 4868557, at *3 (S.D.N.Y. Oct. 15, 2021) (plaintiff did not allege any discrimination occurred in New York and defendants "fired Meilus without notice, via email"); *Fried v. LVI Servs*., 500 Fed. Appx. 39, 42 (2d Cir. 2012) (on summary judgment, plaintiff's frequent communications with defendant's New York headquarters and occasional meetings in New York City "regarding local projects" were insufficient "impact" under *Hoffman*, since plaintiff worked "exclusively" from Connecticut).

plaintiff who had ongoing part-time work responsibilities in the City"); *see also Kraiem v. JonesTrading Institutional Servs. LLC*, 492 F. Supp. 3d 184, 199-200 (S.D.N.Y. 2020) (sustaining NYCHRL claims by a non-New York resident who lived in London based on conduct during business trip to New York City); *cf. Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 549 F. Supp. 2d 549, 554 (S.D.N.Y. 2008) ("Common sense suggests that if an employer discharges an employee while both the employer and employee are in New York, the unlawful practice has occurred in New York. … in this case, what occurred in New York was not just the decision to terminate but also the actual act of termination.").

This case – in which Alam frequently and regularly commuted to Fairstead's offices in New York "every few weeks" and stayed in New York for "multiple days," Complaint ¶ 38, and the final act of discrimination was Defendants terminating Alam at an in-person meeting called expressly for that purpose by Goldberg, Complaint ¶ 63 – is a very far cry from the cases Defendants cite where out-of-state plaintiffs remotely interacted with third parties or defendants based in New York City. *Smith v. AECOM Tishman*, No. 21-2915, 2023 WL 2734430, *9 (S.D.N.Y. 2023) (dismissing claims under NYCHRL and NYSHRL "because at all relevant times Plaintiff was working in Cuba, and in any event, resides in Virginia"); *Kingston v. IBM*, 187 A.D.3d 578 (1st Dept. 2020) (dismissing NYSHRL and NYCHRL where plaintiff alleged merely that he "reported to managers based in New York, served clients mostly based in New York, and travelled to New York State and City two to three times a year"). Defendants' Fed. R. Civ. P. 12(b)(1) motion to dismiss the NYSHRL and NYCHRL claims should be denied.

### B. The Discrimination Claims Are Properly Pleaded

To properly allege discrimination against an employer under Title VII, a plaintiff must "allege two elements: (1) the employer discriminated against [him] (2) because of [his] race,

color, religion, sex, or national origin." *Buon v. Spindler*, 65 F.4th 64, 78 (2d Cir. 2023). MFEPA and MCHRA are analogous to Title VII and their analysis is guided by cases interpreting Title VII. *E.g., Finkle v. Howard Cnty*, 12 F. Supp. 3d 780, 784 (D. Md. 2014). Under NYCHRL's "more lenient standard," to state a claim for discrimination, "a plaintiff need only show differential treatment of any degree based on a discriminatory motive." *Lebowitz v. New York City Dep't of Educ*., 407 F. Supp. 3d 158, 173 (E.D.N.Y. 2017). The standard for claims brought under the NYSHRL is similar to the NYCHRL. *Wellner v. Montefiore Med. Ctr*., No. 17-3479, 2019 WL 4081898, *5 n.4 (S.D.N.Y. Aug. 29, 2019).

At the motion to dismiss stage, "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case," *Buon*, 65 F.4th at 79, because "the precise requirements of a prima facie case can vary depending on the context," and "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* (citing *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512 (2002)).

Thus, for a Title VII discrimination claim to survive a motion to dismiss, it must plausibly allege "that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79. As far as discriminatory intent, "An inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).

Here. the Complaint alleges that Alam is a member of a protected class; was highly-qualified and performed well in his position; suffered an adverse employment action; and that Defendants were motivated by discriminatory intent.

A jury could reach the plausible inference that Defendants' discrimination towards Alam – including undermining his supervision and management of his team, *e.g.*, Complaint ¶ 111 – was because of his religion and national origin. Biased comments from a decision-maker like Goldberg that show stereotyping "can create an inference of discriminatory motive." *Banks v. General Motors, LLC*, 81 F.4th 242, 271-72 (2d Cir. 2023); *see also Colbert v. FSA Store, Inc.*, No. 19-cv-9828, 2020 WL 1989404, at *10-11 (S.D.N.Y. Apr. 27, 2020) (inference of discrimination based on race exists where African-American plaintiff asserted that his supervisor "made a number of comments that can be plausibly be construed to reflect racial stereotyping or constitute coded racial comments"); *Levy v. Legal Aid Soc.*, 408 F. Supp. 3d 209, 214 (E.D.N.Y. 2019) ("Direct evidence of discrimination may exist ... in the form of disparaging comments regarding a plaintiff's protected class."); *cf. Howe v. Town of Hampstead*, No. 04-0656, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006) (a sufficient nexus exists if the comments were made, as here, by the decision-maker).

Finally, the Complaint simply does not "admit" that Defendants termination of Alam was "solely in retaliation" and not discriminatory. Def. Br. at 19-20. As alleged in the Complaint, Defendants' discrimination against Alam went beyond simply terminating him, and Alam was a victim of both discrimination and retaliation. Raising both claims here is not grounds to dismiss either. *See, e.g.*, Fed. R. Civ. P. 8(d) (expressly permitting parties to plead claims in the alternative, regardless of consistency); *Kraus USA, Inc. v. Magarik*, No. 17-6541, 2020 WL

2415670, at *11 (S.D.N.Y. May 12, 2020) ("[A]lternative pleading is expressly authorized by Rule 8(d)(2) of the Federal Rules of Civil Procedure.").

### C. The Same-Actor Inference Is No Basis to Dismiss These Claims

The Complaint alleges that Fairstead hired Alam after more than a dozen interviews with Goldberg, Feldman, Blodgett and Tatum, and the employment agreement states Alam was hired to report to Goldberg and Blodgett. Complaint ¶ 36; Dkt. 28-1 at 1. Defendants nonetheless claim that Alam's discrimination claims should be dismissed because Defendants are entitled to the "same-actor inference," because Goldberg both hired and discriminated against Alam. Def. Br. at 21.

The Second Circuit has made clear that the same-actor inference does not foreclose discrimination claims at the motion to dismiss stage. *E.g.*, *Buon v. Spindler*, 65 F.4th 64, 85 (2d Cir. 2023). The same actor inference is "typically applied at summary judgment," *Palmer v. Shchegol*, 406 F. Supp. 3d 224, 233 (E.D.N.Y. 2016), and "[e]ven then, its application is not mandatory." *Id.*; *see also Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 319 (E.D.N.Y. 2014) ("Even at the summary judgment stage of litigation, the same-actor inference is permissive, not mandatory.").

The "same actor inference" does not apply, but even if it did, "the fact that a company hires an employee knowing he is [Muslim and Pakistani] does not foreclose the plausible inference that the same company has fired him because he is [Muslim and Pakistani]." *Colbert v. FSA Store, Inc.*, No. 19-cv-9828, 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27, 2020).

## V. THE COMPLAINT PROPERLY ALLEGES WHISTLEBLOWER RETALIATION

Defendants argue that Alam's whistleblower retaliation claims under NYLL § 740 should be dismissed for two reasons but neither has merit.

Defendants argue that the claim should be dismissed for the same jurisdictional reasons as his discrimination claims under NYCHRL and NYSHRL. Def. Br. at 21. As explained above, Alam's discrimination claims under NYCHRL and NYSHRL adequately allege the required impact in New York under *Syeed v. Bloomberg L.P.*, 58 F.4th 64, 69 (2d Cir. 2023). For multiple similar reasons, his whistleblower retaliation claims under NYLL § 740 allege sufficient nexus with New York State, and do not require the Court to "extended its reach beyond New York State." Def. Br. at 21.

First, Alam's employment at Fairstead required him to frequently and regularly commute to work from Fairstead's offices in New York "every few weeks," and he then stayed in New York for "multiple days." Complaint ¶ 38. Second, Alam disclosed to Fairstead controlling shareholder Stuart Feldman at an in-person meeting "activities, policies or practices" of Fairstead he reasonably believed were in violation of a "law, rule or regulation." *Id.* ¶¶ 59-61. Third, Defendants retaliated by terminating Alam at an in-person meeting at Fairstead's offices in New York City called expressly for that purpose by Goldberg. *Id.* ¶ 63. Finally, at that meeting Goldberg told Alam he knew he had talked to Feldman, and because of that conversation it was best for Alam and Fairstead to "go their separate ways." *Id.* This sequence of events is more than connected enough to New York for NYLL § 740 to apply.

Defendants next argue that Alam's NYLL § 740 claim should be dismissed for failure to state a claim.[6] A claim under NYLL § 740 requires pleading: (1) an activity protected by the statute; (2) retaliatory action; and (3) "some causal connection" between the protected activity and the adverse

---

[6] The law prohibits an employer from "tak[ing] any retaliatory action against an employee ... because such employee ... discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." NYLL § 740(2)(a).

action. *Callahan v. HSBC Sec. (USA) Inc.*, No. 22-8621, 2024 WL 1157075, at *6 (S.D.N.Y. Mar. 18, 2024).

There is no question that Alam suffered retaliatory action by being terminated, as alleged in the Complaint ¶¶ 63, 150. A causal connection between the protected activity and the adverse action can be established in a number of ways, *see Callahan*, 2024 WL 1157075, at *5. Here, the causal connection is clear because Goldberg admitted it. Complaint ¶ 63.

Defendants nonetheless argue that this claim should be dismissed because Alam "fails to allege a protected activity," and instead makes "generic allegations" with "no specifics" as to what "legal and regulatory requirements" Defendants violated. Def. Br. at 22-23. Defendants admit, as they must, that NYLL § 740 does not require an employee to "specify the actual law, rule or regulation violated" when making a complaint to a supervisor. Def. Br. at 22; *see also Webb-Weber v. Community Action for Human Servs., Inc.*, 23 N.Y.3d 448, 451 (N.Y. 2014) (applying narrower prior version of the law and holding that a plaintiff is "not required to identify the law, rule or regulation violated" to survive a motion to dismiss). The Complaint more than meets the relevant standard.

It explains at length that " the kind of affordable housing properties that Fairstead owns have complex regulatory requirements," "Fairstead must comply with the rules and regulations of state agencies, the IRS and the U.S. Department of Housing and Urban Development ("HUD"), as spelled out in publications like HUD Handbook 4350.3, related notices and other policy directives," "Where HUD regulations apply, owners and managers of affordable housing properties must certify that they will comply with HUD requirements and contractual obligations; maintain the project's accounts, books and records according to regulatory requirements and generally accepted accounting principles; and not discriminate against

employees or contractors," and "False statements in these certifications can carry criminal and civil penalties" under federal law. Complaint ¶¶ 40-42.

Against that backdrop, the Complaint alleges (i) Alam told Feldman that Fairstead's Human Resources and accounting departments were not complying with these legal and regulatory requirements, *id.* ¶ 59; (ii) Goldberg violated labor laws by firing Fairstead employees without paying them the wages they were owed, *id.* ¶ 60; and Fairstead had misrepresented to HUD that it would invest in certain properties that Alam managed but had not done so. *Id.* ¶ 61. That provides more than enough notice of the alleged complained-of conduct, and Defendants motion to dismiss Alam's NYLL § 740 claim on these grounds should be denied.

Similarly, the Complaint adequately alleges whistleblower claims under NYLL § 215, which bars retaliation against employees who complain to their employers about conduct they "reasonably and in good faith, believe[] violates any provision" of New York Labor Law. That statute expressly states, "An employee complaint or other communication need not make explicit reference to any section or provision of this chapter to trigger the protections of this section." NYLL § 215(1)(a).

The Complaint alleges Alam reported to Feldman that Goldberg had fired Fairstead employees without paying them the wages they were owed. Complaint ¶ 60. Unless an employer's policy provides otherwise, Article 6 of the New York Labor Law requires employers to pay terminated employees for their accrued, unused vacation and sick time upon the termination of employment. *E.g.*, *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F.Supp.2d 98, 120 (S.D.N.Y. 2009). This case bears no resemblance to the ones cited by Defendants where

NYLL § 215 claims were dismissed because a plaintiff complained about something that did not violate the New York Labor Law at all.[7]

Alam has been clear enough about the violations of New York Labor Law at issue on this NYLL § 215 claim and Defendants' motion to dismiss it should be denied.

## VI. THE COMPLAINT PROPERLY PLEADS TERMINATION IN VIOLATION OF MARYLAND PUBLIC POLICY

Under Maryland law, there is a public policy exception to at-will employment for wrongful termination "when the motivation for the discharge contravenes some clear mandate of public policy[.]" *Yuan v. Johns Hopkins Univ*., 157 A.3d 254, 262 (Md. 2017) (citing *Adler v. Am. Standard Corp*., 432 A.2d 464, 473 (Md. 1981)). Sources for public policy include Constitutions, legislative enactments, judicial decisions or regulations. *Adler*, 432 A.2d at 472.

A claim for wrongful discharge in violation of Maryland public policy does not require calling the police or otherwise contacting law enforcement before being terminated, as Defendants claim, and requires only that the motivation for the discharge contravenes some clear mandate of public policy. Def. Br. at 25. *See, e.g., Kessler v. Equity Mgmt., Inc*., 572 A.2d 1144, 1150 (Md. Ct. Spec. App. 1990) (firing property manager because she refused to make surreptitious entries into tenants' apartments was wrongful discharge); *see also Magee v. DanSources Tech. Services, Inc*., 769 A.2d 231 (Md. Ct. Spec. App. 2001) (termination in

---

[7] *E.g*., *Zhang v. Centene Mgmt*., No. 21-5313, 2023 WL 2969309, *12 (E.D.N.Y. Feb. 2, 2023) ("[P]laintiff alleges that defendant's conduct was in violation of two NYCRR sections dealing with the provision of health services, these provisions are not a part of the Labor Law"); *Flanagan v. Girl Scouts of Suffolk Cty*., No. 21-7153, 2023 WL 6594885, *7-8 (E.D.N.Y. Aug. 25, 2023) (complaint related to "inequitable treatment" and "misapplication of Girl Scout finances and goodwill"); *Biberaj v. Pritchard Indus*., No. 08-07993, 2009 WL 10738222, at *12 (S.D.N.Y. Sept. 28, 2009) ("Biberaj alleges that Pritchard retaliated against her because of her complaints and grievances about Pritchard's alleged CBA violations").

retaliation for refusal to participate in health care fraud was wrongful discharge). For the reasons explained above, the complaint adequately alleges termination in violation of Maryland public policy. Defendants' motion to dismiss this claim should be denied.

## VII. THE COURT SHOULD GRANT LEAVE TO AMEND

If the Court were to dismiss any portion of the Complaint it should grant leave to amend. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("When a party requests leave to amend his complaint, permission generally should be freely granted."). If the Court decides that Plaintiff's allegations require additional specificity, any deficiencies could be corrected through amendment and would not make amendment "futile." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (granting "leave to amend so as to set forth the representations at issue with greater particularity" where doing so would not be "futile").

## CONCLUSION

For these reasons, Plaintiff respectfully requests that Defendants' motion be denied.

**Dated**: New York, New York
July 26, 2024

Rishi Bhandari
Donald Conklin
MANDEL BHANDARI LLP
80 Pine St., 33rd Floor
New York, NY 10005
(212) 269-5600
rb@mandelbhandari.com
dc@mandelbhandari.com

*Attorneys for Plaintiff Shah Alam*