MB

MANDEL BHANDARI LLP

80 Pine St | Fl 33 | New York, NY | 10005 | T. (212) 269-5600 | F. (646) 964-6667 | www.mandelbhandari.com

July 26, 2024

**BY ECF**

Hon. Naomi Reice Buchwald
United States District Court,
Southern District of New York
500 Pearl Street,
New York, New York 10007

**Re: Alam v. Fairstead Mgmt LLC, et al., No. 1:24-cv-00849-NRB**

Dear Judge Buchwald,

We represent Plaintiff Shah Alam and submit this letter under the Court's Individual Practice 2(E)(1) in connection with Plaintiff's opposition to the June 28 Motion to Dismiss from Defendants Fairstead Management LLC and Jeffrey Goldberg (Dkt. 26-29). We also request oral argument on Defendants' motion to dismiss.

In the motion, Defendants deny and ignore the allegations here, cite inapposite legal standards, and fabricate a variety of *ad hominem*, *ex post facto* "performance issues," a "grave breach of loyalty" and "extortionate severance demands." None of those claims are relevant and discovery will show they are false.

***Breach of Contract/Unpaid Wage Claims***: Fairstead hired Alam, a highly-experienced property manager of affordable housing, in 2020 (not 2022 as Defendants claim). (Dkt. 27-1 at 1.) His employment at Fairstead was governed by an Employment Agreement that included a guaranteed minimum annual bonus to be paid by March of the following year. The agreement stated, "If you are terminated without cause, you are eligible for a pro rata share of the Annual Guaranteed Bonus as further described in section 3." Section 3 sets out grounds for termination other than "without Cause." The Agreement then has provisions about "Discretionary Bonuses," to be paid "if targets are met." Alam received discretionary bonuses for his work in 2020 and 2021.

Defendants' motion admits that they did not timely pay Alam the minimum annual bonus for 2022. It claims, via self-serving affidavit from Goldberg, that Defendants nonetheless have paid Alam that bonus. But the documents attached to Goldberg's affidavit show that Defendants only even tried to pay this bonus to Alam *after* he had already filed unpaid wage claims against them for it here. As for Alam's pro rata share of the minimum annual bonus for 2023, Defendants' tortured reading of the Agreement contradicts its plain language, which shows Fairstead employees are entitled to a pro rata share of that bonus so long as they are not terminated for cause. Despite Defendants' rhetoric and revisionist history – which absurdly claims that Alam "refused to go away" after he was terminated, while admitting they forced him to sue for required minimum bonuses – Plaintiff was not fired for cause. He was thus entitled to these minimum bonuses. Defendants' insistence that the bonuses were nonetheless "discretionary" makes no sense.

In any event, Defendants' motion to dismiss these claims has no merit. In fact, Defendants' motion strongly suggests they will be unable to avoid liquidated damages under New York Labor Law, which employers must prove their good faith to avoid. It also shows Defendants will be unable to avoid treble damages under the relevant Maryland Unpaid Wage law, which requires employers to show a "bona fide dispute" to escape. An employer cannot use the bona fide dispute defense if it did not make reasonable efforts to figure out its legal obligations to page the wages in question. Plaintiff's breach of the covenant of good faith and fair dealing claim is adequately pleaded and non-duplicative.

***Discrimination Claims***: Defendants move to dismiss Alam's NYCHRL and NYSHRL claims of discrimination based on Alam's Muslim religion and his Pakistani national origin under Fed. R. Civ. P. 12(b)(1), on grounds that they lack the necessary "in-state impact" in New York. The Complaint alleges more than sufficient impact in New York under controlling Second Circuit precedent. *Syeed v. Bloomberg L.P.*, 58 F.4th 64 (2d Cir. 2023), not even acknowledged by Defendants in their motion, makes clear "the impact requirement ... turn[s] primarily on the plaintiff's physical location at the time of the alleged discriminatory acts." *Id.* at 69. Here, that is New York City. Defendants made Alam frequently and regularly commute to work in their offices in Manhattan every few weeks, while working in Manhattan he stayed for multiple days, and he was terminated at an in-person meeting with Goldberg and others at Fairstead's offices in Manhattan. Defendants' argument that the Complaint does not allege sufficient "impact" in New York misstates and then misapplies the law. Defendants' fanciful claim that the in-person termination was merely retaliation and not discrimination ignores the allegations in the Complaint and Fed. R. Civ. P. 8(d).

Defendants separately move to dismiss the discrimination claims under Title VII and New York and Maryland state and local law under Fed. R. Civ. P. 12(b)(6). The Complaint is sufficiently detailed and specific about these discrimination claims to defeat a 12(b)(6) motion under *Buon v. Spindler*, 65 F.4th 64 (2d Cir. 2023). Finally, the same-actor inference raised by Defendants (i) does not apply and (ii) would not be grounds to dismiss these claims here. "[T]he fact that a company hires an employee knowing he is [Muslim and Pakistani] does not foreclose the plausible inference that the same company has fired him because he is [Muslim and Pakistani]." *Colbert v. FSA Store, Inc.*, No. 19-cv-9828, 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27, 2020).

***Whistleblower Retaliation/Wrongful Termination Claims***: Defendants argue that Alam's claim under New York Labor Law § 740 should be dismissed for the same reason as NYCHRL and NYSHRL claims, a lack of connection to New York State. But the NYLL § 740 claim is validly brought under New York law for the same reasons as the state and city discrimination claims discussed above. First, Alam's employment at Fairstead required him to frequently and regularly commute to work from Fairstead's offices in New York "every few weeks," and he then stayed in New York for "multiple days." Second, Alam disclosed to Fairstead controlling shareholder Stuart Feldman at an in-person meeting "activities, policies or practices" of Fairstead he reasonably believed were in violation of a "law, rule or regulation." Third, Defendants retaliated by terminating Alam at an in-person meeting at Fairstead's offices in New York City called expressly for that purpose by Goldberg. Finally, at that meeting Goldberg told Alam he knew he had talked to Feldman, and because of that it was best for Alam and Fairstead to "go their separate ways." That sequence of events is more than connected enough to New York for NYLL § 740 to apply.

Defendants then argue this claim should be dismissed because it makes "generic allegations" with "no specifics" as to what "legal and regulatory requirements" Defendants violated. NYLL § 740 does not require an employee to "specify the actual law, rule or regulation violated" when making a complaint, but the Complaint here is very specific about the rules and regulations that apply to affordable housing properties, and how false statements in required certifications can carry criminal and civil penalties. It is highly detailed that Alam reported (i) Fairstead's HR and accounting departments were not complying with these legal and regulatory requirements; (ii) Goldberg violated labor laws by firing Fairstead employees without paying them the wages they were owed; and (iii) Fairstead had misrepresented to HUD that it would invest in certain properties that Alam managed but had not done so. That is more than sufficient for a NYLL § 740 claim at the motion to dismiss stage. Defendants seek dismissal of Alan's NYLL § 215 claim on similar grounds, that the Complaint is insufficiently specific about what New York Labor Laws were allegedly violated. That statute expressly states a plaintiff "need not make explicit reference to any section or provision of this chapter to trigger the protections of this section," NYLL § 215(1)(a), but Plaintiff has been more than clear enough about the violations of New York Labor Law Article 6 at issue on this NYLL § 215 claim. The Complaint is similarly sufficiently specific about the wrongful termination in violation of Maryland public policy claim.

Defendants offer no grounds to dismiss any of these claims here, but if the Court determines that any of Plaintiff's allegations require additional specificity, any deficiencies could be corrected through amendment and would not make amendment "futile."

Respectfully submitted,

Rishi Bhandari