UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
SHAH ALAM,

           Plaintiff,

     - against –

FAIRSTEAD MANAGEMENT LLC and
JEFFREY GOLDBERG,

         Defendants.

------------------------------X

**MEMORANDUM AND ORDER**
24 Civ. 849 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Shah Alam brings this action against his former employers, defendants Fairstead Management LLC ("Fairstead") and Jeffrey Goldberg ("Goldberg"), for allegedly discriminating against him, terminating him in retaliation for whistleblowing, and improperly withholding his bonuses.  ECF No. 25 ("FAC").  Defendants move to dismiss plaintiff's first amended complaint.  ECF No. 26.  For the following reasons, defendants' motion is granted in part and denied in part.

**BACKGROUND**

## I.  Factual Background

This case follows plaintiff's employment at Fairstead, which lasted from August 2020 to July 2023.  FAC ¶¶ 3, 69.  Fairstead is a New-York based real estate company, and Jeffrey Goldberg is Fairstead's CEO.  Id. ¶¶ 1, 2, 34, 35.  In August 2020, Goldberg

hired plaintiff Shah Alam to serve as President of Fairstead's in-house property management company. Id. ¶¶ 3. Plaintiff asserts that he worked from Maryland but regularly traveled to New York and "stayed in New York for multiple days" to "work out of Fairstead's offices" there. Id. ¶¶ 37-38.

During Alam's time at Fairstead, Goldberg allegedly discriminated against plaintiff for being a dark-skinned Muslim man from Pakistan. Id. ¶¶ 7, 32, 46, 49, 111. Goldberg, for example, purportedly made comments like "I thought you were all from the same country" when referring to people of color. Id. ¶ 50. Plaintiff asserts that Goldberg refused to acknowledge plaintiff's celebration of Muslim holidays, id. ¶¶ 51, 52, and "undermin[ed] Plaintiff's supervision and management of his team," id. ¶ 111. Although plaintiff raised his concerns about Goldberg's actions with HR, he was allegedly told "that's just the way he is." Id. ¶ 56.

In the beginning of 2023, Alam met with Fairstead's owner and told him that the company's HR and accounting departments were "not complying with legal and regulatory requirements," in part because "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed." Id. ¶¶ 59, 60. Alam also told the owner that "Fairstead had misrepresented to [the U.S. Department of Housing and Urban Development ("HUD")]

that it would invest in certain properties that Shah managed but had not done so." Id. ¶ 61. Following Alam's conversation with the owner, Goldberg told Alam that "it was best for Alam and Fairstead to 'go their separate ways.'" Id. ¶ 63.

The terms of Alam's at-will employment are governed by an employment agreement dated August 5, 2020 (the "Employment Agreement"). Id. ¶¶ 4, 73; ECF No. 28-1 (Employment Agreement) § 2.[1]

The Employment Agreement's bonus compensation provision states in full:

> D. **Bonus Compensation.** While you are employed with the Firm, you will receive a minimum annual guaranteed bonus payment of $100,000 ("Annual Guaranteed Bonus"). Such Annual Guaranteed Bonus will be paid to you in full in one lump sum payment no later than March 31st of the following calendar year. If you are terminated without Cause during the calendar year, you are eligible for a pro-rata share of the Annual Guaranteed Bonus as further described in Section 3. You are also eligible to be considered for an annual discretionary bonus targeted at $200,000 (or 50% of base compensation) if targets are met ("Annual Discretionary Bonus"). This bonus shall be prorated for the period of time of employment in year one of employment, and you will be eligible for the full amount in subsequent years. In order to receive an Annual Discretionary Bonus, you must be in "Active Working Status" as the time of the bonus payment. For purposes of this Agreement, Active Working Status means that you have not resigned (or given notice of your intention to resign) and have not been terminated for any reason (or been given notice of your termination). The fact that you are in Active Working Status on the date discretionary bonuses are paid does not mean that you

---

[1]    The Employment Agreement is integral to plaintiff's amended complaint and may be considered on a motion to dismiss. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

are entitled to a bonus and your bonus may be zero except as otherwise provided herein.    Further, pro-rated bonuses will not be given to employees who resign or are terminated during the year.    You acknowledge and agree that in entering into this Agreement you have not relied upon any oral or written promises of any kind that you will receive a bonus or other compensation of any kind that is not set forth in this Agreement.    No oral promises prior to or subsequent to entering into this Agreement that you may or will receive a bonus or other compensation are enforceable or valid.

Employment Agreement § 1.D (emphasis in the original).

Alam's final day at Fairstead was on July 7, 2023.  FAC ¶ 69. While plaintiff claims he never received his promised bonuses for 2022 and 2023, id. ¶ 65, he acknowledges that Fairstead deposited $61,400 in plaintiff's account via direct deposit in April 2024, id. ¶ 71.

## II.  Procedural History

Plaintiff filed his initial complaint on February 6, 2024. ECF No. 1.  Following the parties' pre-motion letters regarding defendants' anticipated motion to dismiss, ECF Nos. 12, 14, the Court held a conference on May 9, 2024 and allowed the plaintiff to file an amended complaint before defendants brought a motion to dismiss.  Plaintiff did so and filed his amended complaint on June 7, 2024.  ECF No. 25.

On June 28, 2024, defendants submitted their motion to dismiss, ECF No. 26, and memorandum of law, ECF No. 27 ("Def. Br.").  Plaintiff opposed this motion, ECF No. 30 ("Opp."), and

defendants replied, ECF No. 31 ("Reply").

## LEGAL STANDARD

Defendants move to dismiss plaintiff's amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Under Rule 12(b)(1), a "case is properly dismissed for lack of subject matter . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). To defeat a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). Where the defendant places jurisdictional facts in dispute, the court may properly consider "evidence relevant to the jurisdictional question [that] is before the court." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). However, if "the defendant challenges only the legal sufficiency of the jurisdictional allegations, the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Id. (internal citation omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. See Acticon AG v. China N.E. Petrol. Holdings Ltd., 692 F.3d 34, 37 (2d Cir. 2012). In evaluating the sufficiency of a complaint, a district court may consider documents that are attached to the complaint, incorporated by reference in the complaint, or otherwise integral to the complaint. See DiFolco, 622 F.3d at 111.

## DISCUSSION

Plaintiff's amended complaint asserts twelve causes of action pursuant to the laws of multiple jurisdictions. Plaintiffs' claims generally fall into four categories: (1) breach claims; (2) wage claims; (3) discrimination claims; and (4) whistleblower retaliation/ wrongful termination claims. Defendants move to dismiss all of plaintiff's claims. We address each category in turn.

### I.   Breach Claims (Counts One and Two)

Plaintiff brings two breach claims: one for breach of contract (Count One) and a second for breach of a covenant of good faith and fair dealing (Count Two). FAC ¶¶ 72-94.

-6-

**a. Breach of Contract Claim (Count One)**

In plaintiff's breach of contract claim, he alleges that, under the terms of his Employment Agreement, he is owed both an "Annual Discretionary Bonus" and an "Annual Guaranteed Bonus" for 2022, when he worked the full year, as well as a pro-rated share of each bonus for 2023, when he worked until July 7.  FAC ¶¶ 65, 69, 76-80.

Whether a breach of contract claim can be resolved on a motion to dismiss depends on whether the contractual language is clear or ambiguous.  See, e.g., Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 300 Fed. App'x 48, 49 (2d Cir. 2008); Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000).  Ambiguous language is language which is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of customs, practices, usages and terminology as generally understood in the particular trade or business." Walk-In Medical Centers, Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987) (quoting Eskimo Pie Corp. v. Whitelawn Dairies, Inc., 284 F. Supp. 987, 994 (S.D.N.Y. 1968)) (internal quotation marks omitted).  Conversely, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations," or "where one party's view 'strain[s] the

contract language beyond its reasonable and ordinary meaning.'" Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (quoting Bethlehem Steel Co. v. Turner Construction Co., 2 N.Y.2d 456, 459 (N.Y. 1957)).

### i. 2022 and 2023 Annual Discretionary Bonuses

With respect to the 2022 and 2023 Annual Discretionary Bonuses, the Employment Agreement states in relevant part: "[t]he fact that you are in Active Working Status on the date discretionary bonuses are paid does not mean that you are entitled to a bonus and your bonus may be zero except as otherwise provided herein." Employment Agreement § 1.D.  This language is clear. The Employment Agreement unambiguously rests discretion in the employers' hands as to whether plaintiff is paid a discretionary bonus.

"Under New York law, an employee cannot recover for an employer's failure to pay a bonus where the employer has absolute discretion over the bonus decision." Longhi v. Lombard Risk Sys., Inc., No. 18 Civ. 8077 (VSB), 2019 WL 4805735, at *5 (S.D.N.Y. Sept. 30, 2019) (citations omitted).  The "employer's absolute discretion must be stated unambiguously in the contractual documents to justify dismissal of a bonus claim." Barker v. Bancorp, Inc., No. 21 Civ. 869 (KPF), 2022 WL 595954, at *7 (S.D.N.Y. Feb. 25, 2022) (citation and quotation marks omitted).

Due to the unambiguous language in the Employment Agreement, plaintiff's breach of contract claim is dismissed as it relates to the 2022 and 2023 Annual Discretionary Bonuses.  See, e.g., Fetet v. Altice USA, Inc., No. 21 Civ. 1512 (DLC), 2021 WL 2941917, at *7 (S.D.N.Y. July 12, 2021) (dismissing contract claim for discretionary bonus).

### ii. 2022 Annual Guaranteed Bonus

For the 2022 Annual Guaranteed Bonus, the Employment Agreement states in relevant part: "[w]hile you are employed with the Firm, you will receive a minimum annual guaranteed bonus payment of $100,000 . . .  Such Annual Guaranteed Bonus will be paid to you in full in one lump sum payment no later than March 31st of the following calendar year."  Employment Agreement § 1.D.

The parties do not dispute the meaning of the Employment Agreement.  Indeed, this language clearly required the payment of plaintiff's 2022 Annual Guaranteed Bonus by March 31, 2023.  Instead, the parties contest whether defendants' payment to plaintiff in April 2024, a year after the 2022 Annual Guaranteed Bonus was due, mooted plaintiff's breach of contract claim.  FAC ¶ 71; Def. Br. 4-5, 9; Opp. 8-9; Reply 1.

Plaintiff's breach of contract claim is based on defendants' "fail[ure] to timely pay Plaintiff the annual bonuses he is entitled to for 2022."  FAC ¶ 80 (emphasis added).  According to

-9-

plaintiff's first amended complaint, "[i]n April 2024 – after this action was filed – Fairstead deposited $61,400 in Plaintiff's bank account via direct deposit." Id. ¶ 71.  Damages attributable to plaintiff's asserted breach thus include two components: (1) payment for the "annual bonus[] he is entitled to for 2022" and (2) the loss of interest attributable to defendants' failure to "timely pay" this annual bonus.  Id. ¶ 80.

Defendants' April 2024 payment does not entirely moot plaintiff's breach of contract claim.[2]  Def. Br. 4-5, 9; ECF No. 28-3.  While this payment arguably satisfies the damages owed for the "annual bonus[]" to which plaintiff was entitled, it does not account for the loss of interest attributable to defendants' failure to "timely pay" this annual bonus.  FAC ¶ 80.  See Ace Am. Ins. Co. v. Bank of the Ozarks, No. 09 Civ. 8938 (LAK), 2010 WL 1257327, at *2 (S.D.N.Y. Mar. 18, 2010) ("As neither party has addressed the question whether [plaintiff] would be entitled to recover that interest if it ultimately were determined that the [defendant's] failure to pay earlier were a breach of its contract,

---

[2]    Defendants submitted a copy of the April 2024 paystub as an exhibit.  ECF No. 28-3.  This paystub indicates that Fairstead paid plaintiff $100,000 in April 2024, but only $61,400 was deposited in plaintiff's account due to the withholding of $38,600 for Maryland state taxes and federal taxes.  Id.  This is consistent with plaintiff's first amended complaint, which states, "[i]n April 2024 – after this action was filed – Fairstead deposited $61,400 in Plaintiff's bank account via direct deposit."  FAC ¶ 71.  We can reference and rely on the April 2024 paystub as it is integral to plaintiff's claim that defendants breached by failing to timely pay the bonus.  See DiFolco, 622 F.3d at 111.

this portion of the first claim for relief remains alive."); cf. Wiener v. Unumprovident Corp., 202 F. Supp. 2d 116, 125 (S.D.N.Y. 2002) (finding "plaintiff's cause of action for breach of contract is not entirely moot" because "standard recovery in such insurance coverage cases includes past due benefits plus interest" and "defendants never paid interest on the withheld payments").

This claim would become moot if defendants paid plaintiff the appropriate interest on the delayed payment. Since this issue has not been remedied yet, the Court declines to dismiss plaintiff's breach of contract claim as it pertains to the 2022 Annual Guaranteed Bonus.

### iii. 2023 Annual Guaranteed Bonus

As for the 2023 Annual Guaranteed Bonus, the Employment Agreement states in relevant part: "[i]f you are terminated without Cause during the calendar year, you are eligible for a pro-rata share of the Annual Guaranteed Bonus as further described in Section 3." Employment Agreement § 1.D.[3] Alam's last day at Fairstead was on July 7, 2023. FAC ¶ 69.

The parties dispute whether the term "eligible" in this provision of the Employment Agreement means Fairstead retained discretion to pay this bonus or plaintiff was "entitled" to the

---

[3] Section 3 of the Employment Agreement discusses covenants of confidentiality, non-disparagement, and non-solicitation. Id. § 3.

-11-

bonus.  Def. Br. 8-10; Opp. 9-10; Reply 1-2.  The term "eligible" means "qualified" or "[f]it and proper to be selected or to receive a benefit."  Eligible, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/eligible (last visited February 14, 2025) ("qualified to participate or be chosen"); Eligible, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Fit and proper to be selected or to receive a benefit").  Applying this definition to the Employment Agreement here, plaintiff is merely "qualified" to receive a bonus if he is terminated without cause, and thus, this pro-rata bonus is dependent on Fairstead's discretion.

In arguing otherwise, plaintiff cites the definition of "eligible" in the Cambridge English Dictionary, among other dictionaries, to assert that "Alam was entitled to [the bonus] unless he was terminated for cause." Opp. 9-10 (citations omitted; emphasis in original).  The Cambridge English Dictionary defines eligible to mean "having the necessary qualities or satisfying the necessary conditions."  Eligible, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/eligible (last visited February 14, 2025).

Plaintiff stretches the meaning of "eligible" too far and attempts to rewrite the Employment Agreement.  Specifically, plaintiff confuses a necessary condition, which must be present for a particular outcome to occur, for a sufficient condition,

which guarantees a particular outcome to occur. Compare Necessary Condition, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/necessary%20condition (last visited February 14, 2025) ("a proposition whose falsity assures the falsity of another") with Sufficient Condition, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/sufficient%20condition (last visited February 14, 2025) ("a proposition whose truth assures the truth of another proposition"). In short, plaintiff is not entitled to the bonus merely because he has allegedly satisfied the necessary conditions outlined in the Employment Agreement.

Because the language of the Employment Agreement clearly rests discretion in Fairstead's domain, plaintiff's breach of contract claim is dismissed as it relates to the 2023 Annual Guaranteed Bonus.

### b. Breach of Covenant of Good Faith and Fair Dealing (Count Two)

Plaintiff asserts that defendants breached an implied covenant of good faith and fair dealing by terminating plaintiff in bad faith to "avoid paying him compensation to which he is entitled." FAC ¶¶ 85-94.

This claim is duplicative of plaintiff's breach of contract claim. A "party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from

-13-

the allegations underlying the accompanying breach of contract claim." Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008) (citation omitted). The implied covenant claim here is premised on the same allegations as plaintiff's breach of contract claim -- namely, that defendants have not paid plaintiff the annual bonuses he is due. FAC ¶¶ 80, 85-94. Thus, the implied covenant claim is dismissed as duplicative. See, e.g., Polcom USA, LLC v. Affiliated FM Ins. Co., 551 F. Supp. 3d 290, 298 (S.D.N.Y. 2021).

To the extent plaintiff's claim is focused on defendants' bad faith termination, FAC ¶¶ 85-94, plaintiff's allegations fail as a matter of law. Under "[t]he duty of good faith and fair dealing . . . no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" LoanStreet, Inc. v. Troia, No. 21 Civ. 6166 (NRB), 2023 WL 5836237, at *7 (S.D.N.Y. Sept. 8, 2023) (citations omitted). Implying a good faith requirement in Alam's Employment Agreement would be inconsistent with the provision specifying that Alam is an at-will employee. See Employment Agreement § 2.

## II.  Wage Claims (Counts Three and Four)

Plaintiff alleges violations of the Maryland Wage Payment and Collection Law ("MWPCL") (Count Three) and New York Labor Law ("NYLL") (Count Four). FAC ¶¶ 95-109. Specifically, plaintiff

-14-

alleges that defendants violated the MWPCL and NYLL § 193(1) by failing to "pay Alam the annual bonuses he fully earned from 2022 and 2023, including minimum annual guaranteed bonuses."  FAC ¶¶ 96-101, 103-109.

It is undisputed that discretionary bonuses are not "wages" recoverable under MWPCL and NYLL.  Def. Br. 13-14; Opp. 13-14; Reply 3; See, e.g., Fetet, 2021 WL 2941917, at *6 ("Obtaining an enforceable right to a discretionary bonus did not convert that bonus to a wage governed by . . . the NYLL."); Blanch v. Chubb & Sons, Inc., No. CCB-12-1965, 2017 WL 4167383, at *3 (D. Md. Sept. 20, 2017) (finding MWPCL claims apply to bonuses only after the employee "does everything required to earn" them (citation and quotation marks omitted)).  As discussed above, only the 2022 Guaranteed Bonus was non-discretionary, and plaintiff can recover for the loss of interest attributable to defendants' failure to pay this bonus in a timely manner.  Supra pp. 8-13.  Plaintiff's wage claims are thus dismissed to the extent that they relate to the 2022 and 2023 Annual Discretionary Bonuses and the 2023 Annual Guaranteed Bonus.

Defendants contend that the New York Labor Law does not apply at all since Alam resided in Maryland.  Def. Br. at 12-13.  However, a plaintiff's domicile is not dispositive when determining whether the NYLL applies.  Instead, "[t]he crucial issue is where the

employee is 'laboring,' not where he or she is domiciled." O'Neill
v. Mermaid Touring Inc., 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013).
Here, while Maryland taxes were clearly withheld from plaintiff's
wages, ECF No. 28-3, and plaintiff "generally worked from Maryland
during his time at Fairstead," FAC ¶ 37, plaintiff has sufficiently
pled that he labored at Fairstead's New York offices for a period
of time, id. ¶¶ 21, 38.  Moreover, it is unclear whether plaintiff
can recover under both state laws for the same injury.  Cf. Rana
v. Islam, 887 F.3d 118, 123 (2d Cir. 2018) (preventing double
recovery under the NYLL and Fair Labor Standards Act because "if
the New York State Legislature intended to provide multiple
recoveries, it would have done so expressly" "[g]iven the
background assumption disfavoring double recovery").  Thus, it is
too early in this litigation to resolve the issue of which state
law applies and, accordingly, defendants' motion to dismiss the
wage claims is denied at this stage.

## III. Discrimination Claims (Counts Five through Nine)

Plaintiff brings discrimination claims under five different
statutes: Title VII of the Civil Rights Act of 1964 ("Title VII")
(Count Five), New York State Human Rights Law ("NYSHRL") (Count
Six), New York City Human Rights Law ("NYCHRL") (Count Seven),
Maryland Fair Employment Practices Act ("MFEPA") (Count Eight),
and Montgomery County Human Rights Act ("MCHRA") (Count Nine).

FAC ¶¶ 110-146.  Each cause of action is predicated on allegations that defendants: (i) "undermin[ed] Plaintiff's supervision and management of his team," (ii) did "[n]ot mak[e] reasonable accommodations for Plaintiff's religious observances," (iii) did "[n]ot pay[] Plaintiff bonus compensation to which he was entitled," and (iv) "[t]erminat[ed] Plaintiff."  FAC ¶¶ 111, 119, 126, 134, 142.  In short, plaintiff alleges he was treated differently than "similarly situated white, non-Muslim employees who are not from Pakistan."  Id.

### a. Legal Principles

These five discrimination claims are all evaluated under the same framework.  For a "discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  Buon v. Spindler, 65 F.4th 64, 79 (2d Cir. 2023) (citation omitted); see also Dyer v. Oracle Corp., No. PWG-16-521, 2016 WL 7048943, at *2, *2 n.5 (D. Md. Dec. 5, 2016) (applying same to MFEPA and MCHRA); Owens v. City of New York Dep't of Educ., No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022) ("We also analyze [plaintiff's] Title

-17-

VII, . . . NYSHRL, and NYCHRL religious discrimination claims using the McDonnell Douglas burden-shifting test.").

However, depending on the specific cause of action asserted, different liability standards are applied to the elements of this framework.  The federal, Maryland, and Montgomery discrimination claims are evaluated in accordance with the federal standard.  See Hollis v. Morgan State Univ., No. 19 Civ. 3555 (LKG), 2024 WL 2113631, at *12 n.6 (D. Md. May 10, 2024) (noting that the "MFEPA 'is the state law analogue of Title VII'" and "the Court may apply the same standards to the analysis of the state and federal discrimination claims." (citations omitted)); Whittaker v. David's Beautiful People, Inc., No. DKC-14-2483, 2016 WL 429963, at *2 n.2 (D. Md. Feb. 4, 2016) ("Maryland courts construe such claims [under MCHRA] similarly to those made under Title VII." (citations omitted)).  Under the federal standard, a "plaintiff sustains an adverse employment action if she endures a 'materially adverse change' in the terms and conditions of employment."  Malcolm v. Honeoye Falls Lima Cent. Sch. Dist., 483 F. App'x 660, 662 (2d Cir. 2012) (citation omitted).

The liability standards for NYCHRL and NYSHRL are more lenient.  Claims brought under the NYCHRL must be reviewed "independently from and 'more liberally' than their federal and state counterparts."  Livingston v. City of New York, 563 F. Supp.

3d 201, 233 (S.D.N.Y. 2021) (citation omitted).  A recent amendment to the NYSHRL, effective October 11, 2019, "has put in place a more lenient standard of liability that has been likened to that of the NYCHRL." Yost v. Everyrealm, Inc., 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023) (collecting cases).[4]

"To survive a motion to dismiss a claim for discrimination under the NYCHRL," a plaintiff does not need to plead a materially adverse action, but "must only plead that she was 'treated less well at least in part because of her [membership in a protected class].'" Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (citations omitted); see also Livingston, 563 F. Supp. 3d at 234 ("[A] plaintiff is not required to show an adverse employment action and need only 'show differential treatment — that [he] was treated 'less well' — because of a discriminatory intent.'" (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)). At the same time, "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory

---

[4]    Case law has not "definitively resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard identical to that of the NYCHRL—or merely closer to it." Yost, 657 F. Supp. 3d at 578 (citations omitted; emphasis in original); see also Baldwin v. TMPL Lexington LLC, No. 23 Civ. 9899 (PAE), 2024 WL 3862150, at *6 n.4 (S.D.N.Y. Aug. 19, 2024) ("It is as yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims.").  For purposes of our analysis, the Court assumes, without deciding, that the NYSHRL and NYCHRL standards are co-extensive.

motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" Kops v. PPM Am., Inc., No. 15 Civ. 1584 (GBD), 2016 WL 7188793, at *5 n.9 (S.D.N.Y. Dec. 5, 2016) (citation omitted).

**b. Application**

We start our analysis of plaintiff's discrimination claims with a general observation.  Under either the federal or the more liberal New York standard, a plaintiff cannot rely on "the familiar faulty syllogism: something bad happened to me at work; I am (fill in the blank with one or more protected categories); therefore it must have happened because I am (fill in the blank with the applicable protected category/ies)."  House v. Wackenhut Servs., Inc., No. 10 Civ. 9476 (CM)(FM), 2012 WL 4017334, at *1 (S.D.N.Y. Aug. 20, 2012); see also Diaz v. Poly Prep Day Sch., No. 21 Civ. 06611 (BMC), 2022 WL 2803259, at *1 (E.D.N.Y. July 18, 2022) (dismissing NYCHRL claim, among others, due to plaintiff's reliance on this faulty syllogism); DeLeon v. Teamsters Loc. 802, LLC, No. 20 Civ. 24 (RRM) (PK), 2021 WL 1193191, at *11, *13 (E.D.N.Y. Mar. 29, 2021) (denying plaintiff leave to amend NYCHRL claim among others due to plaintiff's reliance on this faulty syllogism).  With these legal principles in mind, we examine each asserted discriminatory act in turn.

### i. Undermining Supervision and Management

First, plaintiff alleges that defendants "[u]ndermin[ed] Plaintiff's supervision and management of his team." FAC ¶¶ 111, 119, 126, 134, 142. This vague allegation is not a materially adverse employment action under the federal standard. See Jaeger v. N. Babylon Union Free Sch. Dist., 191 F. Supp. 3d 215, 227 (E.D.N.Y. 2016) ("[E]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII."). This allegation also falls short "even under the minimal NYCHRL pleading standard," as plaintiff's allegations "are either too conclusory . . . or they do not sufficiently connect the alleged disparate treatment to Plaintiff's membership in a protected class." Lee v. Riverbay Corp., No. 22 Civ. 7504 (LTS), 2024 WL 4312166, at *8 (S.D.N.Y. Sept. 27, 2024); Brown v. Montefiore Med. Ctr., No. 19 Civ. 11474 (ALC), 2021 WL 1163797, at *7 (S.D.N.Y. Mar. 25, 2021) (dismissing plaintiff's NYCHRL claim where plaintiff "failed to allege any adverse employment actions that are connected to racial discrimination or any similarly situated employees.").

### ii. Failure to Accommodate

Next, plaintiff asserts the defendants did "[n]ot mak[e] reasonable accommodations for Plaintiff's religious observances." FAC ¶¶ 111, 119, 126, 134, 142. To state a claim for religious

-21-

discrimination based on a failure to accommodate, a plaintiff must allege that "(1) [he] held a bona fide religious belief conflicting with an employment requirement; (2) [he] informed [his] employer[ ] of this belief; and (3) [he was] disciplined for failure to comply with the conflicting employment requirement." Baker v. The Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (citation and quotation marks omitted). Here, the complaint is devoid of any allegation that Alam informed the defendants of his religious beliefs or that he was disciplined due to his beliefs. See Thomas v. Amazon.com Servs. LLC, No. 23 Civ. 1271 (HG) (JAM), 2025 WL 253276, at *8 (E.D.N.Y. Jan. 21, 2025) (dismissing NYCHRL and NYSHRL claims where plaintiff "has not adequately alleged that he was disciplined or 'treated less well' for failure to comply with the requirement" (citation omitted)); cf. Eng v. City of New York, No. 15 Civ. 1282 (DAB), 2017 WL 1287569, at *4 (S.D.N.Y. Mar. 29, 2017) ("Still, a Plaintiff claiming a violation of the NYCHRL must plead facts giving rise to an inference that she suffered unequal treatment 'because of' her protected characteristics." (citation omitted)), aff'd, 715 F. App'x 49 (2d Cir. 2017). Plaintiff's religious accommodation allegations thus fail to state a claim under either the federal or New York standard.

### iii. Failure to Pay Bonus Compensation & Subsequent Termination

Plaintiff also alleges the defendants did "[n]ot pay[] Plaintiff bonus compensation to which he was entitled," and "[t]erminat[ed] Plaintiff." FAC ¶¶ 111, 119, 126, 134, 142. In contrast to the previous allegations, withholding compensation to which plaintiff is entitled and termination can constitute adverse employment actions. However, plaintiff's allegations are specifically tied to Fairstead's alleged intent to retaliate against him for whistleblowing and to pay him less than what he was entitled to. For instance, plaintiff alleges that "Goldberg stated that because of Alam's comments to [the owner], Alam and Fairstead were going to 'go their separate ways'" and that "Goldberg fired Alam to retaliate for Alam's warnings to Fairstead management that the company – and Goldberg – were violating legal and regulatory requirements." FAC ¶¶ 13, 14. Further, plaintiff alleges that he was terminated because defendants wanted "to avoid paying him compensation to which he is entitled[,]" including his bonus. Id. ¶¶ 90, 92.[5]

---

[5]    As set forth above, the Court grants defendants' motion to dismiss plaintiff's breach of contract claim as it pertains to plaintiff's 2022 and 2023 Annual Discretionary Bonuses and 2023 Annual Guaranteed Bonus. Supra pp. 8-9, 11-13. However, the Court declines to dismiss plaintiff's wage claims and breach of contract claim as they relate to the loss of interest attributable to defendants' failure to pay plaintiff's 2022 Annual Guaranteed Bonus in a timely manner. Supra pp. 9-11, 14-16.

Plaintiff's allegations concerning his bonus and termination fail to state a claim because they are not tied to allegations of discriminatory intent by his employer. See, e.g., Johnson v. Andy Frain Servs., Inc., 638 F. App'x 68, 71 (2d Cir. 2016) (affirming dismissal of NYCHRL claim where plaintiff "failed to allege that she was fired or harassed 'because of' her protected characteristics, and she did not plausibly allege any facts that would give rise to such a connection"); Desrosiers v. Summit Sec. Servs., No. 21 Civ. 10941 (JPO), 2022 WL 13808524, at *7 (S.D.N.Y. Oct. 21, 2022) (citation omitted) (holding that the "deficiencies in [Plaintiff's] allegations—the failure to identify with any specificity that comparator employees were similarly situated, the absence of allegations that any potentially discriminatory comments were uttered by a decisionmaker or had any connection to [Plaintiff's] termination"—were fatal to federal and NYCHRL discrimination claims).[6]

---

[6]    Plaintiff has not pled a discrimination claim in the alternative, either. Plaintiff argues that his termination was caused by both discrimination and retaliation. While plaintiff can make a discrimination claim in the alternative under Fed. R. Civ. P. 8(d), Opp. 19, "each alternative theory must itself be sufficient to state a claim, and '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Pecorino v. Vutec Corp., 934 F. Supp. 2d 422, 451 (E.D.N.Y. 2012) (citations omitted). Plaintiff's allegations are not sufficient here.

Plaintiff's failure to state a discrimination claim is buttressed by the same-actor inference. The same-actor inference is a "'highly relevant factor'" standing for the common-sense proposition that "'[w]hen the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire.'" Buon, 65 F.4th at 84 (citations omitted; alterations in original). While this "inference should not be used to

### iv. Allegations that Plaintiff was Treated Differently Than Other Employees

Having failed to articulate an adverse employment action, plaintiff turns to assertions that he was treated differently than "similarly situated white, non-Muslim employees who are not from Pakistan." FAC ¶¶ 111, 119, 126, 134, 142; see also id. ¶ 49 ("Goldberg did not act this way towards other executives at Fairstead who were white, and Alam eventually realized that Goldberg acted differently towards him because he was a dark-skinned Muslim man from Pakistan.").

Plaintiff's attempts to salvage his discrimination claims through "bald allegations regarding disparately treated [employees]" are unsuccessful because these allegations "are 'entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiff['s] or how they were treated differently by defendants.'" Van Soeren v. Disney Streaming Serv., No. 19 Civ. 10196 (NRB), 2020 WL 6131255, at *3 (S.D.N.Y. Oct. 16, 2020) (citations omitted; emphasis added; alteration in original); see also Cooper v. Franklin Templeton Invs., No. 22-2763-CV, 2023 WL

---

foreclose [a] Title VII . . . claim[] at the motion-to-dismiss stage if the plaintiff has otherwise set forth allegations that support a plausible inference of discrimination," id. at 85 (citation omitted), the Court need not rely on this inference here because plaintiff has failed to plausibly allege discrimination in the first instance.

3882977, at *3 (2d Cir. June 8, 2023) (affirming district court's dismissal where comparators were not alleged to be "subject to the same performance evaluation" standards and "engaged in comparable conduct" (citation and quotation marks omitted)).  Thus, under either standard, plaintiff has failed to plead a discrimination claim and we dismiss all discrimination claims pursuant to Rule 12(b)(6).[7]

## IV.  Whistleblower Retaliation/Wrongful Termination Claims (Counts Ten through Twelve)

Plaintiff alleges violations of New York Labor Law § 740 (Count Ten) and New York Labor Law § 215 (Count Eleven), as well as wrongful termination in violation of Maryland public policy (Count Twelve).  FAC ¶¶ 147-164.  Specifically, plaintiff claims that he was terminated following his warnings to the owner of Fairstead that (i) "Fairstead's Human Resources and accounting departments were not complying with legal and regulatory requirements;" (ii) "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed;" and (iii) "Fairstead had misrepresented to HUD that it would invest in certain properties that Shah managed but had not done so."  Id. ¶¶ 59, 60, 61.

---

[7]    Defendants also moved to dismiss certain discrimination claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  We need not resolve this issue, given our dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants maintain that NYLL does not apply at all because Alam worked in Maryland. <u>See</u> Def. Br. 21, 23. This argument fails for the same reasons that it failed for Alam's wage claim under the NYLL (Count Four), namely that the record is undeveloped as to where the relevant conduct occurred. <u>Supra</u> pp. 14-16.

We address each statute in turn.

### a. NYLL § 740 (Count Ten)

NYLL § 740 prohibits an employer from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety." NYLL § 740(2)(a).[8]

To state a claim under Section 740, a plaintiff must plead: (1) she "disclosed or threatened to disclose an activity, policy, or practice of the employer that the employee at least reasonably believed was illegal;" (2) an employer's retaliatory action; and

---

[8] This statute was recently amended. Prior to its recent amendment, NYLL § 740 required a plaintiff to "(1) specify that an actual violation occurred, and (2) describe how the defendant's activities endangered the health and safety of the public." <u>Zhang v. Centene Mgmt. Co., LLC</u>, No. 21 Civ. 5313 (DG) (CLP), 2023 WL 2969309, at *13 (E.D.N.Y. Feb. 2, 2023) (citations and quotation marks omitted). To the extent that defendants argue plaintiff's claim fails because he has not pled "any dangers to 'public health or safety,'" Def. Br. 22, this argument fails since this is no longer a requirement of NYLL § 740.

(3) "some causal connection" between the employee's action and the employer's retaliatory action.  Thacker v. HSBC Bank USA, N.A., No. 1:22-CV-7120-GHW, 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023) (citations and quotation marks omitted); see also Callahan v. HSBC Sec. (USA) Inc., 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024) (similar).  For this first requirement, "while an employee 'need not specify the actual law, rule or regulation violated' when making a complaint to a supervisor, '[she] must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct.'"  Thacker, 2023 WL 3061336, at *6 (citations omitted; alterations in original).

First, plaintiff allegedly told the owner of Fairstead that "Fairstead's Human Resources and accounting departments were not complying with legal and regulatory requirements."  FAC ¶ 59.  This vague allegation does not identify a particular "activity, policy, or practice of the employer that the employee at least reasonably believed was illegal."  Thacker, 2023 WL 3061336, at *6.  Thus, it cannot serve as the basis for a NYLL § 740 claim.

Similarly, plaintiff asserts that he informed Fairstead's owner that "Fairstead had misrepresented to HUD that it would invest in certain properties that Shah managed but had not done so."  FAC ¶ 61.  Again, plaintiff's complaint is devoid of any

specifics about these properties or the alleged misrepresentations. Nor does the amended complaint indicate why plaintiff believed this practice was illegal. Plaintiff cites to HUD regulations that have nothing to do with purported misrepresentations concerning investments. FAC ¶¶ 40-42; Opp. 22-23. Accordingly, this vague allegation cannot provide the basis for a NYLL § 740 claim.

Lastly, plaintiff allegedly warned Fairstead's owner that "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed." FAC ¶ 60. Plaintiff asserts he reasonably believed this practice was illegal. See, e.g., Goldberg v. Bespoke Real Est. LLC, No. 23 Civ. 5614 (JPO), 2024 WL 1256006, at *11 (S.D.N.Y. Mar. 25, 2024) (denying motion to dismiss plaintiff's NYLL § 740 claim where plaintiffs alleged, among other activities, the employer failed to pay their full due compensation). Due to this warning, plaintiff was allegedly terminated, FAC ¶ 63, indicating a causal connection between plaintiff's termination and his warning, see Esmilla v. Cosmopolitan Club, 936 F. Supp. 2d 229, 245 (S.D.N.Y. 2013) ("In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." (internal quotation marks and

citations omitted)).  Plaintiff can maintain his NYLL § 740 claim as it pertains to this allegation if it is determined on a developed record that New York law applies.

**b. NYLL § 215 (Count Eleven)**

NYLL § 215 provides in relevant part: "No employer or his or her agent . . . shall discharge, . . . or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."  NYLL § 215(1)(a).

To state a claim under NYLL § 215, the "allegations must be sufficiently specific to indicate that the plaintiff was complaining about Labor Law violations," but the employee does not need to cite a specific statute.  Reyes v. Seaqua Delicatessen, Inc., No. 2023-05910, 2024 WL 4758523, at *4 (N.Y. App. Div. Nov. 13, 2024) (citation omitted); see also Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 473 (S.D.N.Y. 2013) (similar).  Plaintiff's allegations concerning Fairstead's Human Resources and accounting departments and alleged misrepresentations to HUD do not pertain to labor law violations.  However, plaintiff's allegation that "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed" does provide a basis for

plaintiff's NYLL § 215 claim.  FAC ¶ 60.  "Construed in the light most favorable to h[im], [plaintiff's] requests appear to constitute an informal complaint that [the employees] w[ere] not being paid as required by law," Stevens & Co., LLC v. Tang, No. 23 Civ. 1835 (JPO), 2024 WL 1157344, at *3 (S.D.N.Y. Mar. 18, 2024) (citations omitted), which is sufficient to state a NYLL § 215 claim.  Plaintiff's NYLL § 215 claim thus survives defendants' motion to dismiss, again assuming that a developed record establishes that New York law applies to plaintiff.

### c. Maryland Public Policy (Count Twelve)

Plaintiff has failed to state a claim for a violation of Maryland public policy.  To state such a claim, a plaintiff must "plead with particularity the source of the public policy" allegedly violated by her termination.  Terry v. Legato Sys., Inc., 241 F. Supp. 2d 566, 569-70 (D. Md. 2003) (citation and quotation marks omitted).  Plaintiff has not done so here.  See FAC ¶¶ 158-164.  Indeed, even in his opposition, plaintiff cannot point to a single source of this public policy, citing generally "Constitutions, legislative enactments, judicial decisions or regulations."  Opp. 24 (citation omitted).  This does not suffice.

## V.  Plaintiff's Request for Leave to Amend

On the last page of plaintiff's opposition brief, plaintiff requests leave to amend his complaint if "the Court decides that

Plaintiff's allegations require additional specificity." Opp. 25. Defendants oppose this request, writing that plaintiff should not get another bite at the apple. Reply 10.

The Court agrees with the defendants. A plaintiff is precluded from amending his complaint when he was aware of deficiencies in his complaint and had the opportunity to amend his complaint but failed to cure the complaint's defects. See, e.g., Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n, 898 F.3d 243, 257 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first." (citations, quotations and alterations omitted)); Twohig v. Shop-Rite Supermarkets, Inc., 519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021) (denying leave to amend where "[p]lainitffs have already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which they would move to dismiss").

Defendants' pre-motion letter clearly put plaintiff on notice of the deficiencies in his complaint. ECF No. 12. Moreover, at the conference concerning defendants' initial pre-motion letter, the Court explicitly provided plaintiff with the opportunity to amend his complaint when he knew the grounds on which defendants

-32-

would move to dismiss. Plaintiff took advantage of that opportunity and provides no reason why this Court should grant plaintiff leave to amend his complaint yet again.

Accordingly, denial of plaintiff's request is appropriate here. See NRW, Inc. v. Bindra, No. 12 Civ. 8555 (RJS), 2015 WL 3763852, at *1 (S.D.N.Y. June 16, 2015) ("To grant leave to amend after a plaintiff has had ample opportunity to amend would be condoning a strategy whereby plaintiffs hedge their bets ... in the hopes of having another bite at the proverbial apple." (citation and quotation marks omitted)); Food Holdings Ltd. v. Bank of Am. Corp., 423 Fed. App'x 73, 76 (2d Cir. 2011) (summary order) (affirming district court's denial of leave to amend where plaintiff requested leave to amend "on the final page of their brief . . . in boilerplate language and without any explanation as to why leave to amend was warranted").

## CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. To summarize, the Court dismisses the following claims: Breach of Covenant of Good Faith and Fair Dealing (Count Two); violation of Title VII (Count Five); violation of NYSHRL (Count Six); violation of NYCHRL (Count Seven); violation of MFEPA (Count Eight); violation of MCHRA (Count Nine); and violation of Maryland public policy (Count Twelve). As discussed

above, we grant in part and deny in part defendants' motion to dismiss the following claims: Breach of Contract (Count One); violation of NYLL § 740 (Count Ten); and violation of NYLL § 215 (Count Eleven).  We deny defendants' motion to dismiss the following claims: violation of MWPCL (Count Three) and violation of NYLL § 193 (Count Four).  We also deny plaintiff's request for leave to amend his complaint.  Finally, we note that the issue of which jurisdiction's laws applies to certain of plaintiff's claims cannot be resolved based on the undeveloped record before us.

The parties are directed to confer and present a discovery schedule to the Court.  The focus at the outset of discovery should be on the ascertainment of facts which will be relevant to the issues of jurisdiction.  The Clerk of the Court is directed to terminate the motion pending at ECF No. 26.

Dated:    February 26, 2025
          New York, New York

_____
       NAOMI REICE BUCHWALD
   UNITED STATES DISTRICT JUDGE

-34-