UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
SHAH ALAM,
Plaintiff,

- against -

FAIRSTEAD MANAGEMENT LLC and JEFFREY GOLDBERG,
Defendants.
--------------------------------------X

**MEMORANDUM AND ORDER**

24 Civ. 00849 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is defendants Fairstead Management LLC's ("Fairstead") and Jeffrey Goldberg's ("Goldberg," and together with Fairstead, "defendants") motion for partial summary judgment seeking to dismiss Counts Four, Ten, and Eleven of the First Amended Complaint. Defendants' motion raises the issue of whether the protections of the New York Labor Law ("NYLL") apply to plaintiff Shah Alam ("Alam" or "plaintiff"), a Maryland resident who worked primarily from Fairstead's Maryland office. For the reasons stated herein, the Court finds that dismissal of Count Four is warranted, but dismissal of Counts Ten and Eleven is not. As such, defendants' motion is granted in part and denied in part.

**BACKGROUND**[1]

The pertinent facts of this case are undisputed. Plaintiff Shah Alam was the President of Fairstead's in-house property

[1] The Court's recitation of the facts is derived primarily from the parties' Rule 56.1 Statements and admissible materials submitted in connection with the instant motion. Defendants submitted a Rule 56.1 Statement in support of their motion, and plaintiff filed a responsive Rule 56.1 Statement. See Defs.'

management company from September 28, 2020, through July 7, 2023. Defs. 56.1 ¶ 1; Pl. 56.1 ¶ 1; see also ECF No. 62 ("Mot.") at 7; ECF No. 72 ("Opp.") at 1. During his tenure at Fairstead, plaintiff was a resident of Maryland, and he worked from Maryland most days. Defs. 56.1 ¶ 5; Pl. 56.1 ¶ 5.

Plaintiff's employment at Fairstead was governed by an August 5, 2020 employment agreement. Defs. 56.1 ¶ 3; Pl. 56.1 ¶ 3; ECF No. 28-1 (the "Agreement"). The Agreement stated that it "shall be governed by and construed solely in accordance with the laws of the State of New York applicable to agreements made and/or performed in that State, without regard to any conflict of law or choice of law provisions thereof." Pl. 56.1 ¶ 21; ECF No. 78 ("Reply") at 1 n.1; Agreement § 4(c).[2]

The Agreement also set forth that plaintiff was to be paid an annual base compensation of $400,000 per year and was entitled to a "minimum annual guaranteed bonus payment of $100,000 ("Annual Guaranteed Bonus")." Pl. 56.1 ¶ 23; Agreement § 1(C)-(D). That

Statement of Material Facts, ECF No. 63 ("Defs. 56.1"); Pl.'s Rule 56.1 Counterstatement, ECF No. 73 ("Pl. 56.1"). Where the Court relies on facts drawn from either of the 56.1 Statements, it has done so because the record evidence duly supports the statements, no rule of evidence bars admission, and the opposing party has not disputed the facts or has not done so with citations to admissible evidence.

[2] Defendants did not submit a counterstatement to the "additional statements of material fact" contained in plaintiff's 56.1 Statement. Instead, they "respectfully refer to the Agreement" itself in response to plaintiff's purported facts relating to the Agreement. Reply at 1 n.1. Accordingly, the Court considers quotes taken directly from the Agreement itself to be undisputed facts.

bonus was to "be paid to [plaintiff] in full . . . no later than March 31st of the following calendar year." Pl. 56.1 ¶ 23; Agreement § 1(D).

It is undisputed that between January 2022 and May 2023, "[s]ecurity keycard swipe records reflect that Plaintiff entered Fairstead's New York City office building on 14 days." Def. 56.1 ¶ 14; Pl. 56.1 ¶ 14. It is also undisputed that during the same period, business expense records reflect that plaintiff was present "in New York on up to 21 [additional] days." Def. 56.1 ¶ 15; Pl. 56.1 ¶ 15.[3] In other words, in the 17 months between January 2022 and May 2023, records reflect that plaintiff was present in New York for at least part of the day on 35 days.

Notably, during plaintiff's term of employment at Fairstead, the company withheld only Maryland taxes from plaintiff's pay. Defs. 56.1 ¶ 8; Pl. 56.1 ¶ 8. Further, in connection with his 2020 income tax return, plaintiff stated, under penalty of perjury, to the New York State Department of Taxation and Finance that he "lives and works in Maryland," and that his wages are "reported in Maryland." Defs. 56.1 ¶ 9; Pl. 56.1 ¶ 9. As a result, plaintiff claimed "[a] refund of NY withholding of $417." ECF No. 64

[3] While these facts are undisputed, plaintiff argues that the January 2022 to May 2023 period to which these numbers relate is "artificially narrowed" and "omits the first 15 months of Plaintiff's employment at Fairstead." Pl. 56.1 ¶ 14-15. As a result, by plaintiff's count, plaintiff was present in New York on "at least 88 days . . . over 30 months." Opp. at 25. The Court discusses this issue further below. See infra p. 14.

("Goldberg Decl."), Ex. 25 at FAIRSTEAD_00001907. Plaintiff did not file a New York tax return in 2021, 2022, or 2023. Defs. 56.1 ¶¶ 10-11; Pl. 56.1 ¶¶ 10-11. Indeed, there is no indication that plaintiff ever paid any New York taxes in connection with his work for Fairstead.

On May 11, 2023, plaintiff was notified of his termination[4] by Goldberg, Fairstead's CEO, during a meeting in New York, at which point plaintiff ceased performing work for Fairstead. Defs. 56.1 ¶ 6; Pl. 56.1 ¶ 6. Despite his termination, plaintiff remained on Fairstead's payroll through July 7, 2023, while separation terms were negotiated. Defs. 56.1 ¶ 7; Pl. 56.1 ¶ 7.

## I. Procedural History

Plaintiff commenced this action on February 6, 2024, and filed a First Amended Complaint on June 7, 2024. ECF Nos. 1, 25 ("AC"). Defendants subsequently filed a motion to dismiss, ECF No. 26, which was granted in part and denied in part on February 26, 2025. ECF No. 32 (the "MTD Order").

The MTD Order dismissed a substantial portion of plaintiff's claims. Specifically, the Court dismissed Count Two (breach of the covenant of good faith and fair dealing), Counts Five through Nine (discrimination claims asserted under Title VII of the Civil

---

[4] The parties quibble about the semantics of whether Goldberg "notified Plaintiff of his employment termination[,]" Defs. 56.1 ¶ 6, or if he "fired Plaintiff[,]" Pl. 56.1 ¶ 6. That distinction is irrelevant to the Court's consideration of this motion and needs not be resolved.

Rights Act of 1964, the New York State Human Rights Law, the New York City Human Rights Law, the Maryland Fair Employment Practices Act, and the Montgomery County Human Rights Act), and Count Twelve (wrongful termination in violation of Maryland Public Policy). MTD Order at 13–14, 16-26, 31.

The MTD Order also limited the scope of plaintiff's remaining claims. As to Count One, which related to various bonuses plaintiff claimed to be owed under a breach of contract theory, we allowed plaintiff's claim to proceed only as to a "2022 Annual Guaranteed Bonus" in the amount of $100,000.00. Id. at 9-11. However, Fairstead made payment of that bonus in April 2024 (prior to filing defendants' motion to dismiss), so we acknowledged that "[t]his claim would become moot if defendants paid plaintiff the appropriate interest on the delayed payment." Id. at 11. Fairstead subsequently made payment of the interest. Defs. 56.1 ¶ 13; Pl. 56.1 ¶ 13.

Counts Three and Four allege violations of the Maryland Wage Payment and Collection Law and New York Labor Law seeking damages for defendants' alleged failure to pay various bonuses. We sustained those claims only with respect to plaintiff's 2022 annual guaranteed bonus, noting again that plaintiff could "recover for the loss of interest attributable to defendants' failure to pay this bonus in a timely manner." MTD Order at 14–16.

Counts Ten and Eleven allege claims under New York Labor Law Sections 740 and 215 respectively, both of which prohibit employers from retaliating against employees for reporting actual or potential violations of law. The MTD Order dismissed these claims except to the extent that plaintiff alleged he was terminated because of a "report" he made to Fairstead's owner in 2023 that "Goldberg violated labor laws by firing Fairstead employees without paying them what they were owed." Id. at 30-31.

Defendants argued at the motion to dismiss stage, as they do now, that plaintiff was not protected by the NYLL. However, we found that "it [was] too early in this litigation to resolve the issue of which state law applies," id. at 16, given that "plaintiff's domicile is not dispositive when determining whether the NYLL applies" and "the crucial issue is where the employee is 'laboring,' not where he or she is domiciled," id. at 15-16 (citing O'Neill v. Mermaid Touring Inc., 968 F. Supp. 2d 572, 579 (S.D.N.Y. 2013)) (alteration adopted). We thus directed that "[t]he focus at the outset of discovery should be on the ascertainment of facts which will be relevant to the issues of jurisdiction." Id. at 34.

On January 5, 2026, defendants requested permission to move for partial summary judgment on plaintiff's claims asserting violations of New York Labor Law. ECF No. 57. Following a conference on January 20, 2026, defendants filed their motion for partial summary judgment on February 6, 2026. ECF No. 61.

Plaintiff filed his opposition to the motion on March 13, 2026, and the motion was fully briefed as of April 3, 2026. ECF Nos. 72, 78.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 113-14 (2d Cir. 2017) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Factual disputes that are irrelevant or unnecessary are disregarded. Anderson, 477 U.S. at 248.

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). When moving against a party who bears the ultimate burden of proof at trial, the movant meets this burden by pointing to an "absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). In assessing the record, courts must "resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford, 391 F.3d at 83.

Once the moving party has satisfied its burden, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). Conclusory allegations are insufficient to create a genuine issue. Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). The opposing party "may not merely rest on the allegations or denials of his pleading." Wright, 554 F.3d at 266.

## DISCUSSION

### I. The Parties' Arguments

At the outset, it should be noted that defendants' motion does not address the merits of plaintiff's NYLL claims. Instead, defendants seek to dismiss Counts Four, Ten, and Eleven on the basis that plaintiff is a Maryland resident and that a Maryland employee cannot invoke the protection of the NYLL.

In their papers, both sides rely heavily on certain arguments that, in the Court's view, do not resolve this motion. As such, we will briefly address those arguments before analyzing the legal issues.

**A. Plaintiff's "Faithless Activities"**

Defendants devote much of their brief to arguments detailing what they allege were "faithless activities" by plaintiff during his term of employment at Fairstead. See Mot. at 10-13. These activities, as defendants describe them, amount to disloyal business practices because plaintiff competed with Fairstead to secure business for his own companies during his term of employment and recruited Fairstead employees to join his own venture after his termination. Id. Defendants assert that "[w]hile Plaintiff's NYLL claims may now be dismissed on jurisdictional grounds, these faithless activities are described here to further demonstrate Plaintiff was never a New York employee in any respect," as plaintiff's competing business activities were centered in Maryland. Id. at 12.

As defendants acknowledge, plaintiff's purported "faithless activities" are not dispositive of this motion. Plaintiff's challenge to these facts, see Pl. 56.1 ¶¶ 16-19, prevents us from resolving the "faithless activities" issue at the summary judgment stage. Nonetheless, we note that if plaintiff is shown to have been a faithless employee, he may well lose the protections of the NYLL. And if plaintiff engaged in faithless activities in Maryland throughout the relevant period, that would be further support for a finding that plaintiff was a Maryland employee to whom the NYLL does not apply.

**B. Tax Estoppel**

Defendants also argue that plaintiff is precluded from arguing that he labored in New York because he "conceded in his tax returns that he labored in Maryland not New York." Mot. at 15. While it is undisputed that plaintiff reported to the New York State Department of Taxation and Finance that he "lives and works in Maryland," that fact is not dispositive of the specific argument defendants present on this motion.

In their 56.1 Statement, defendants limited their review of plaintiff's presence in New York to the period from January 2022 to May 2023. Defs. 56.1 ¶¶ 14-15. Defendants clarify that "2022—2023 is the relevant period" because Counts Four, Ten and Eleven relate to work performed in 2022 and conduct that occurred in 2023. Reply at 5. However, plaintiff's tax return that included his statement to the New York State Department of Taxation and Finance was dated May 10, 2021. See Goldberg Decl., Ex. 25 at FAIRSTEAD_00001828 (noting the date as 5/10/2021). If the relevant time period is 2022-2023, then a statement from May 2021 is not dispositive.

It is, however, relevant that plaintiff informed taxing authorities that he "lives and works in Maryland," and that plaintiff never paid New York taxes during the time of his employment with Fairstead. While plaintiff is not estopped from arguing that he is protected by the NYLL, his sworn statement to

New York's taxing authority to obtain a refund of withheld New York taxes is supportive of defendants' position.

**C. The Agreement's Choice-of-Law Provision**

Plaintiff makes much of the fact that the Agreement contains a New York choice-of-law provision stating that it "shall be governed by and construed solely in accordance with the laws of the State of New York applicable to agreements made and/or to be performed in that State, without regard to any conflict of law or choice of law provisions thereof." Opp. at 14. Thus, plaintiff argues that the NYLL must apply to his claims.

Plaintiff's argument ignores that "a choice-of-law provision indicating only that an agreement will be governed by New York law will not bind the parties for non-contractual causes of action." Warman v. Am. Nat'l Standards Inst., 2016 WL 3676681, at *3 (S.D.N.Y. July 6, 2016) (collecting cases) (emphasis added). Indeed, "[g]eneral choice-of-law provisions do not provide for non-contractual causes of action, including NYLL claims." Meka v. Deloitte LLP, 2025 WL 3761874, at *6 (S.D.N.Y. Dec. 30, 2025).

Further, the fact that the Agreement contained a New York choice of law provision does not mean that every provision of the NYLL applies to plaintiff's employment nor does it substantively change New York law. The New York Labor Law regulates only New York conduct. A choice of law provision cannot extend its protections to non-New York work. Cf. Parisi v. Wipro Ltd., 2016

WL 6905987, at *6 (S.D.N.Y. Nov. 23, 2016) (rejecting "the notion that 'a contractually agreed-upon choice of law provision' in [an] employment contract, stating that Delaware law would govern the Agreement, should 'operate as a waiver of any requirement that the employee actually be employed in Delaware'" for Delaware's whistleblower statute to apply). Accordingly, the Court cannot rely on the Agreement's choice-of-law provision to determine that plaintiff's claims under the NYLL may proceed.[5]

Having determined that plaintiff's statement in his tax return and purported "faithless activities" do not mandate dismissal and that the Agreement's choice-of-law provision does not resolve the substantive issues, we turn to consideration of the issues presented by this motion.

**II. Extraterritorial Application of the NYLL**

In New York, it is a "settled rule of statutory interpretation that unless expressly stated otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of the state . . . enacting it." O'Neill v. Mermaid Touring, Inc., 968 F. Supp. 2d 572, 578 (S.D.N.Y. 2013) (alterations adopted)

[5] It is of no moment that, as plaintiff points out, defendants "asserted a counterclaim against Plaintiff for prevailing party attorneys' fees under New York law pursuant to the agreement." Opp. at 2. Notably, plaintiff also asserts claims under Maryland law while arguing that the NYLL applies. Thus, to find that a party could not argue that the laws of one state govern if they assert a separate claim under the laws of another state would seemingly require the Court to disregard plaintiff's opposition. See also Fed. R. Civ. P. 8(d)(3) (specifically sanctioning inconsistent pleadings).

(internal quotation marks omitted). As a result, courts in this district have held that the NYLL "does not apply extraterritorially to work performed outside of New York." Magner v. Alvanon, Inc., 2026 WL 550017, at *4 (S.D.N.Y. Feb. 26, 2026) (internal quotation and citation omitted). Thus, "NYLL claims are routinely dismissed when they are premised almost exclusively on work performed outside of New York." Id. (internal citations and quotations omitted).

However, the case law shows that "New York courts have never adopted a brightline rule barring extraterritorial application" of the NYLL, and in some cases New York courts have conducted a choice-of-law analysis to determine whether the NYLL applies. Id. In those cases, "New York courts apply the greater interest test to determine whether the NYLL or a competing state's law applies." Griebel v. Beyond Air, Inc., 2026 WL 1948137, at *6 (E.D.N.Y. July 2, 2026) (cleaned up).

**III. Count Four**

NYLL Section 193(1) prohibits employers from making "any deduction from the wages of an employee, except" in accordance with a limited number of exceptions, none of which either party contends apply here. Count Four of plaintiff's Amended Complaint alleges defendants violated NYLL Section 193(1) by withholding plaintiff's bonus payment. As discussed above, supra p. 5, Count Four has been significantly narrowed by the MTD Order. Indeed, because Count Four proceeded only as to plaintiff's 2022 Annual

Guaranteed Bonus, and because that bonus had been paid before the MTD order, we noted that "plaintiff can recover for the loss of interest attributable to defendants' failure to pay this bonus in a timely manner." MTD Order at 15. Since that time, defendants have made payment of that interest. Defs. 56.1 ¶ 13; Pl. 56.1 ¶ 13. Thus, Count Four appears to be moot, except to the extent that plaintiff is entitled to liquidated damages under NYLL Section 198(1-a), which provides for "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due" "[i]n any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails."

The undisputed facts of this case make clear that for the period of 17 months between January 2022 and May 2023, plaintiff (i) swiped his keycard to enter Fairstead's New York office on 14 days and (ii) was physically present in New York on at least part of 21 additional days. Defs. 56.1 ¶¶ 14-15; Pl. 56.1 ¶¶ 14-15. Assuming, for ease of calculation, that there are roughly 30 days each month, that would mean that during that 17-month period, plaintiff was in New York for at least part of the day on 35 out of 510 days, or less than 7%. Even including the additional period of plaintiff's employment prior to January 2022, "Alam documented . . . 88 days physically present in New York over 30 months," Opp. at 25, still less than 10% of plaintiff's employment. Under those

circumstances, it is clear that Count Four is "premised almost exclusively on work performed outside of New York" and thus must be dismissed. Magner, 2026 WL 550017, at *4.

This conclusion is reinforced by the fact that some of the days that plaintiff was in New York appear to be "travel days during which [plaintiff] departed Maryland in the afternoon to arrive in New York in the evening, or departed New York in the morning (even as early as 8:00 or 9:00 am)." Mot. at 10. The Court does not find it necessary to do an hour-by-hour examination of plaintiff's presence in New York, but nonetheless it is evident that a day on which plaintiff arrived in New York after working hours or departed New York before working hours reflects a lesser presence in New York than if plaintiff were present for the entire day.

Further, the fact that plaintiff did not have New York taxes withheld from his paychecks at any point during his employment supports the Court's conclusion. While the New York State tax laws and regulations are nuanced, generally, non-New York residents must file New York taxes if they "have income from a New York State source[,]" which is defined to include "income, gains, loss, and deduction from . . . services performed in New York State." Department of Taxation and Finance, Instructions for Form IT-203 (last accessed Sep. 21, 2026), https://www.tax.ny.gov/forms/current-forms/it/it203i.htm#nonres-

ny-income. Thus, in the absence of a compelling reason that plaintiff would not pay New York taxes -- and plaintiff has offered no such reason -- the fact that plaintiff did not pay New York taxes suggests that plaintiff did not labor in New York.

Nor is our analysis changed by the fact that Fairstead is headquartered in New York and plaintiff's supervisors were New York employees. When considering whether the NYLL applies to a plaintiff's claim, "it is of no moment that Defendants maintained their business in New York[.]" Magner, 2026 WL 550017, at *5 (collecting cases); Warman, 2016 WL 3676681, at *4 ("If maintaining a New York headquarters constituted consent to the application of New York statutory law to all its employees-no matter their state of employment-it would swallow the presumption against extraterritoriality."). Indeed, NYLL claims have been dismissed on the basis that the work was performed outside of New York even when a plaintiff "reported to managers based in New York, served clients mostly based in New York, and travelled to New York State and City two to three times a year, for two to three days each visit, in order to meet with supervisors and service clients." Kingston v. Int'l Bus. Machines Corp., 187 A.D. 3d 578, 579 (N.Y. App. Div. 2020). Accordingly, Count Four cannot proceed.

### IV. Counts Ten and Eleven

In Counts Ten and Eleven, plaintiff asserts two claims of retaliation under NYLL Sections 740 and 215 respectively. Section

740 of the New York Labor Law prohibits employers from taking "any retaliatory action against an employee . . . because such employee . . . (a) discloses . . . to a supervisor . . . an activity, policy or practice of the employer that the employee reasonably believes is in violation of law." N.Y. Lab. Law § 740(2)(a) (emphasis added). Section 215 of the New York Labor Law prohibits an employer from "retaliat[ing] against any employee (i) because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the Labor Law]." N.Y. Lab. Law § 215(1)(a)-(1)(a)(i) (emphasis added).

While both statutes prohibit retaliatory action, they appear in different sections of the Labor Law, as their numerical designations obviously suggest, and they regulate different, though related, conduct. Specifically, Section 215 prohibits only retaliation based on an employee's complaint about a violation of the New York Labor Law, while Section 740 prohibits retaliation based on an employee's complaint about violation of any law. In this case, that is a difference without distinction because the report upon which plaintiff's claims are based is the same for both claims.

Counts Ten and Eleven, as cabined by our MTD Order, allege that plaintiff "warned Fairstead's owner that 'Goldberg violated labor laws by firing Fairstead employees without paying them what

they were owed.'" MTD Order at 29 (citing FAC ¶ 60). "Due to this warning, plaintiff was allegedly terminated[.]" Id. (citing FAC ¶ 63). In this regard, it must be recalled that Goldberg, about whom plaintiff complained, was a New York employee, Opp. at 7; (2) plaintiff made his complaint about Goldberg at a meeting in New York, Opp. at 9, 21-22; and (3) plaintiff was formally terminated at a meeting in New York, Defs. 56.1 ¶ 6; Pl. 56.1 ¶ 6.

There is limited case law on the factual predicates necessary for a plaintiff who is not a New York resident to invoke the protections of either NYLL Section 215 or 740. The most recent and extended discussion can be found in a case in the Eastern District of New York, Griebel v. Beyond Air, Inc., 2026 WL 1948137, at *6-7 (E.D.N.Y. July 2, 2026). In Griebel, the court considered a motion to dismiss claims brought under Sections 740 and 741 of the NYLL. Id. at *3, *6-7. The defendants in Griebel argued that the NYLL did not apply because the plaintiff was an "out-of-state remote worker" who "lived in Colorado while he worked for the defendant, which was headquartered in New York" Id. at *1, *4. There, the court applied "the greater interest test to determine whether the NYLL or a competing state's law applies" and ultimately allowed the NYLL claims to proceed. Id. at *6 (alterations adopted).

In so doing, the Griebel court specifically distinguished between "wage-related claims under Article 19 of the NYLL" and

those brought under "the whistleblower provisions in Article 20-c," including NYLL Section 740. Id. The Griebel court explained that "Article 19 of the NYLL begins with a Statement of Public Policy section stating that it was enacted to address the fact that '[t]here are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves,'" while the whistleblower protections in Section 740 "do not have similar policy statements, and . . . courts must 'apply New York choice of law rules to determine whether the NYLL should apply.'" Id. at *7 (alterations adopted).

In this Court's view, the considerations applying to statutes that govern payment of New York employees are distinct from those that apply to whistleblower and retaliation claims and therefore Counts Ten and Eleven will not necessarily rise and fall with Count Four. While Griebel applied these considerations only to claims arising under Section 740, the Court sees no reason why plaintiff's claim under Section 215 should be treated differently considering both claims allege retaliatory action for the same report. Accordingly, with respect to Counts Ten and Eleven in the absence of any suggested alternative, the Court will apply the greater interest test to determine whether plaintiff's claims may proceed.[6]

---

[6] Defendants argue that the Court should rely on the location of plaintiff's labor as the determinative factor with respect to plaintiff's claim under Section 740 and that to do otherwise would be inconsistent with the MTD order where we emphasized that "the crucial issue" with respect to plaintiff's NYLL claims was "where the employee is 'laboring.'" MTD Order at 15-16 (cleaned

The greater interest test requires courts to "examine whether New York, or another state, has the greatest interest with the specific issue raised in the litigation." Hobbs v. Knight-Swift Transp. Holdings, Inc., 2025 WL 1577271, at *16 (S.D.N.Y. June 4, 2025). "To do so, the Court considers the relationship or contact of each state to the parties and to the underlying occurrence." Pierre v. Gts Holdings, Inc., 2015 WL 7736552, at *2 (S.D.N.Y. Nov. 30, 2015) (internal quotation marks omitted).

Here, there is a respectable argument that plaintiff's retaliation claims are premised on conduct and events that took place in New York despite the fact that plaintiff worked primarily in Maryland. However, on the record before us, the Court lacks sufficient information to determine whether the conduct charged comes within the scope of the retaliation statutes. The record is not yet established as to whether the terminated employees that were the subject of plaintiff's report were employed in New York, Maryland, or another state. If these employees were New York employees, then New York may well have a significant interest in this dispute, whereas if the employees were based in Maryland or another state, New York may have no interest in a report about the

up). Not so. Our statements in the MTD Order conveyed that at the motion to dismiss stage, on the record before us, plaintiff's domicile was not a sufficient basis to dismiss plaintiff's claims, not that greater interest test principles would never apply to a NYLL claim. Further, Griebel, which the Court finds instructive on this very issue, was not decided when the Court considered the motion to dismiss.

underpayment of those employees who may not be protected by New York law. Accordingly, at this stage, the Court is unable to conclude that the New York Labor Law does or does not apply to Counts Ten and Eleven and thus those claims can proceed and be the subject of discovery.

**CONCLUSION**

For the foregoing reasons, defendants' motion is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 61.

Dated: September 23, 2026
New York, New York

Naomi Reice Buchwald
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE