HERRICK

**John H. Chun**
**Partner**
Phone: 212.592.1546
Fax: 212.545.2394
jchun@herrick.com

November 4, 2026

VIA ECF
Hon. Naomi Reice Buchwald
United States District Court
500 Pearl St.
New York, NY 10007-1312

Re: *Alam v. Fairstead Management LLC et al.*, Case No. 1:24-cv-00849-NRB

Dear Judge Buchwald:

Defendants respectfully request leave to file a renewed motion for summary judgment to provide the employment locations of the terminated Fairstead employees relevant to Alam's New York Labor Law ("NYLL") retaliation claims (Counts 10 & 11)—an issue referenced in the Court's September 23 ruling and which supports dismissal (ECF No. 79) ("Decision"). Additionally, Defendants seek to dismiss Plaintiff's Maryland wage claim ("MWPCL") (Count 3).

Alam's retaliation claims allege that, on an unidentified date in the "first quarter" of 2023, he complained that "Defendant Goldberg had fired Fairstead employees without paying them wages they were entitled to, a violation of relevant employment laws including the New York Labor Law." ECF No. 25 ¶¶ 57, 60, 154. Alam, in discovery, identified Devin Tucker, Toni Harris, Jon Barrett, Tyler McIntyre, William Blodgett and John Tatum as the terminated employees at issue.

In its Decision, although the Court dismissed Count 4 the Court declined to dismiss the NYLL retaliation claims. ECF No. 79. The Court applied a "greater interest" analysis and raised an issue that none of the parties had focused on: the employment location of employees "fired" with unpaid wages. *Id*. at 20 ("[O]n the record before [it], the Court lacks sufficient information…as to whether the terminated employees … were employed in New York, Maryland, or another state").

We respectfully advise the Court that three of the six terminated employees— Harris, Barrett, and Tucker— did not work for Fairstead in New York. Instead, they worked in Maryland, Ohio, and Maryland, respectively. Harris and Barrett, moreover, were not "fired" without being paid their wages. In fact, each signed a severance agreement under which they disclaimed knowledge of any Fairstead wrongdoing and released all workplace claims, including for unpaid wages. (*See* Exs. A-B, Harris and Barrett Severance Agreements, at Section (B)(1)(b); Section C(1). Further, Barrett left Fairstead on May 24, 2023— Alam simply could not have blown the whistle about an event that took place after his claimed whistleblowing.

To the extent that the other three employees—McIntyre, Blodgett and Tatum—worked for Fairstead in New York, they are also irrelevant. For example, McIntyre was not terminated by Fairstead but left ***afterwards*** on April 19, 2023 with a generous severance agreement that contained nearly identical disclaimers and releases as Harris's and Barrett's agreements. *See* Ex. C, McIntyre Severance Agreement at Section C(1)(ii); Section F(1). Moreover, since McIntyre, like Barrett, left Fairstead ***after*** Alam's alleged whistleblowing in the "first quarter" of 2023, he too is entirely irrelevant to the issues at hand.

Blodgett and Tatum are irrelevant as well. Although each brought suit against Fairstead in 2022 regarding disputes that arose in 2021, it was found that Blodgett was properly terminated for cause and Tatum had engaged in the same bad acts as Blodgett, including taking Fairstead documents.[1] Further, their claims were largely litigated in Delaware, and none asserted claims for unpaid "wages," as Alam alleged. Rather both Blodgett and Tatum were former senior Fairstead executives who asserted that they had been deprived of various forms of equity. Blodgett Arbitration Award at 25; Tatum Decision at 45, 56, 58. But equity does not constitute "wages" under New York Labor Law. *See Guiry v. Goldman, Sachs & Co*., 31 A.D.3d 70, 73 (1st Dep't 2006) (finding that equity-based compensation "bears the hallmark of incentive compensation—its value to the recipient depends on the firm's "overall financial success," not simply on the employee's "personal productivity" and thus is not wages).

In light of these facts, any interest that New York may have in Alam's retaliation claims is not greater than Maryland's. *Griebel v. Beyond Air, Inc*., No. 25-CV-2969 (AMD) (ST), 2026 WL 1948137, at *6 (E.D.N.Y. July 2, 2026) ("Under the greater interest test, courts must examine whether New York, or another state, has the greatest interest with the specific issue raised in the litigation… To do so, the Court considers the relationship or contact of each state to the parties and to the underlying occurrence."). As the Court has already held, Alam was a Maryland employee at all relevant times. He worked for Fairstead from offices in Maryland, and continues to live and work in Maryland. And of the six employees relevant to Alam's whistleblowing, only one—Devin Tucker, a ***Maryland*** resident—fits the description of an employee "fired" with unpaid wages (in Tucker's case, unreimbursed paid-time-off), which Tucker reported and resolved through the ***Maryland*** Department of Labor. While Alam has argued that he was terminated in a meeting in New York after complaining about Fairstead in an earlier New York meeting, such incidental New York contacts do not warrant the extension of the NYLL to an out-of-state employee. *See Magner v. Alvanon, Inc*., 24-cv-09190, 2026 WL 550017, *4-5 (S.D.N.Y. Feb. 26, 2026) (dismissing NYLL retaliation claims although ***plaintiff was terminated at a meeting in New York***); *Dittes v. ChargeAfter USA, Inc.*, No. 24-CV-746 (RA), 2025 WL 1984273, at *4 (S.D.N.Y. July 17, 2025) (dismissing plaintiff's NYLL claims where those claims were premised "almost exclusively" on work performed outside of New York State).

The Court should also dispose of the MWPCL claim (Count 3). Subject to reservation of all rights, in April 2024, Fairstead paid the guaranteed bonus at issue, and later paid interest. ECF No. 63 ¶¶12-13. To the extent that Plaintiff continues to pursue damages for an alleged payment delay, such claim should be dismissed due to Alam's disloyalty which began as soon as Alam started working for Fairstead in 2020, including inducing Fairstead employees to breach their employment duties and covertly work for Alam's competing business (Full Circle Real Estate Partners);

---

[1] *John C. Tatum III et al v. Fairstead Affordable LLC et al*, C.A. No. 2022-0970-JTL (Del. Ch. Oct. 27, 2025) (hereinafter "Tatum Decision); *Fairstead Capital Management LLC v. Blodgett,* C.A. No. 2022-0673-JTL (Del. Ch. 2026) (Part of the Blodgett matter relating to employment-agreement claims was referred to arbitration.); *see In the Matter of the Arbitration between William Blodgett and Fairstead Capital Management LLC* (JAMS New York Reference No. 5425000366), dated April 2, 2025 (hereinafter "Blodgett Arbitration Award").

HERRICK



usurping a Fairstead corporate opportunity (the purchase of Maryland-based Edgewood Management); and misappropriating Fairstead information and property for the benefit of Alam's competing businesses. *See generally* ECF 62 at 10-13, and exhibits cited therein. Given such disloyalty, Alam never earned the bonus at issue and it is forfeited. *Brightview Group, LP v. Teeters*, CV SAG-19-2774, 2021 WL 1238501, at *19 (D. Md. Mar. 29, 2021) ("Maryland law recognizes the 'general principle that an agent who is guilty of fraud upon his principal, particularly where there is a conflicting interest, concealment, or a willful and deliberate breach of his contract, may be denied compensation for his services.'"); *Lerner Corp. v. Three Winthrop Props., Inc.*, 124 Md. App. 679, 694, 723 A.2d 560, 567–68 (1999) (holding that "[b]y appellant's wil[l]ful and material breach of its duties to recognize the termination of the relationship and to refrain from using its former powers and confidences to the detriment of its former principal, it forfeited any prospective payments that it otherwise might have claimed.").

These facts confirm another reason for dismissal: the existence of a bona fide dispute. *Foster v. Microstar Co., Inc.*, 2001 WL 35928793, at *1 (Md. Cir. Ct. Aug. 2, 2001) (finding a bona fide dispute and denying plaintiff treble damages and attorney fees pursuant to the MWPCL). As the above makes clear, Alam was planning his exit from Fairstead months before his bonus allegedly became due in March 2023. Alam's faithless activities contributed to his poor performance, including his failure, as a senior Fairstead executive, to timely set appropriate bonus allocations for his department, resulting in the very delays of which Alam now complains. As a result of that poor performance, Fairstead terminated Alam for cause and shut off his computer access in May 2023. ECF No. 63 ¶6; ECF No. 64 ¶5. Alam responded by requesting to remain on payroll indefinitely while the parties negotiated a severance, to which Fairstead agreed, and which resulted in over $60,000 in post-termination payments to Alam. ECF No. 63 ¶ 7; ECF 64 ¶5. Fairstead made these payments because Alam led it to believe he was negotiating in good faith, which was completely untrue—Alam was stringing Fairstead along while he closed his purchase of Edgewood, at which time he ordered Fairstead to take him off its payroll and announced the purchase of Edgewood a few days later. ECF No. 64, ¶5 and Ex 6.

Even then, Fairstead continued to negotiate a severance with Alam's lawyers, during which the issue in dispute was not Alam's guaranteed bonus, which Fairstead was prepared to pay. It was a variety of other extortionate demands, which precluded settlement and ultimately resulted in a Complaint filled with claims for discretionary payments which this Court rightly dismissed. In other words, any delay about which Alam now complains is squarely attributable to his own misconduct and manipulations of Fairstead's desire to settle on reasonable terms. Moreover the delay is clearly due to legitimate and bona fide reasons, which preclude the Maryland wage claim. Accordingly, we respectfully request to renew our motion to summarily dismiss the NYLL retaliation claims (Counts 10 & 11) and dismiss the Maryland wage claim (Count 3).

Respectfully submitted,

John H. Chun

cc: Counsel of Record (via ECF)