# EXHIBIT A

**PERSONAL & CONFIDENTIAL**
**NOT VALID UNLESS EXECUTED BY BOTH PARTIES**

February 15, 2023

Toni Harris

[redacted]

Re: Severance Agreement and General Release

Dear Toni:

This confirms the termination of your employment with FSC Realty Management LLC ("Fairstead" or the "Company"), effective on Wednesday, February 15, 2023, last day worked, February 16, 2023 as described below. By signing this letter (the "Agreement"), you agree to the following:

A. The Separation Package. Your Separation Date will be February 15, 2023. During the period between the date first written above and the Separation Date, the following will apply:

1. You ceased to function as Vice President of Operations as of February 15, 2023 and thereafter your responsibilities have been and will continue to be limited to assisting in transitioning your responsibilities to others as directed by Jeffrey Goldberg and other members of senior management.

   Without limitation of the non-disparagement provisions set forth in Section B below, and your obligations under your employment agreement and the policies of the Company and it's affiliates, to the extent permitted by law, YOU SHALL REFRAIN FROM COMMUNICATING WITH ANY CURRENT OR PAST EMPLOYEES OF THE COMPANY AND ITS AFFILIATES, AND ANY PAST, CURRENT AND POTENTIAL SERVICE PROVIDERS TO THE COMPANY.

2. The Company shall continue to pay the current semi-monthly base salary to me in the amount of [redacted] less city, state and federal payroll taxes ("Severance Payment") through March 15,2023. I understand that receipt of the Severance Payment is dependent upon whether I sign this Agreement. I understand that if I do not sign this Agreement then I will not receive the Severance Payment. I further understand that receipt of the Severance Payment is dependent upon my compliance with this agreement. The Severance Payment shall be made on my next available payroll date, provided that I have complied with this agreement and the Company has received the signed Agreement.

3. I will have the option of accepting the Company paid medical benefits for: March. I will have the option to continue, at my own expense, any Company health plan benefits to which I was entitled, as required by COBRA.

All payments and benefits provided in this Section A are collective referred to herein as the "Separation Package".

B. Your Obligations. In exchange for the Company's providing you with the payments and benefits described above, to which you are not otherwise entitled, you voluntarily agree to the following:

1. Your signature in the spaces below indicates that you are providing the following general release (the "Release"):

(a) You are waiving and releasing forever whatever claims liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities, and obligations you have against the Company, FSC Realty Management, each of their affiliates and all of their respective offices, branches, parents, subsidiaries and affiliates, and any of their present and former directors, officers, partners, agents, representatives or employees, including, without limitation, Jeffrey Goldberg and Stuart Feldman (collectively, the "Releasees"), based on any matter, cause or thing relating to your employment by the Company, or to the cessation of such employment, other than claims you may have based on your rights under this Agreement.

(b) This release includes a complete waiver of all rights and claims that may have arisen, whether known or unknown, in the course of your employment, including but not limited to, rights and claims based on (i) claims and demands arising out of or in any way connected with your employment with the Company, or the termination of that employment; (ii) claims or demands related to your compensation or benefits with the Company, including but not limited to, wages, salary, bonuses, commissions, vacation pay, sick pay, fringe benefits, expense reimbursements, incentive pay, severance pay, or any other form of compensation; (iii) all tort claims, including without limitation, claims for fraud, defamation, emotional distress, and discharge in violation of public policy; (iv) all claims for breach of contract, wrongful termination, and breach of the implied covenant of good faith and fair dealing, including claims arising out of an employment agreement, sales commission plan or incentive compensation plan applicable to your employment with the Company, based upon any conduct occurring from the beginning of the world to the date of this Agreement; (v) Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967 (including the Older Workers Benefit Protection Act), the Americans with Disabilities Act, the Family and Medical Leave Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, the New York State and New York City Human Rights Laws, the New York Labor Laws (if and to the extent applicable and as any of the foregoing may be amended from time to time); and/or (vi) any common law, public policy, contract (whether oral or written, expressed or implied) and tort law, and any other local, state or federal law, regulation or ordinance having any bearing whatsoever on the terms and conditions of your employment and the cessation thereof up to the date you sign this Agreement in the first space provided below, and covering the period between such date and the date you reaffirm your signature in the second space provided, as described in Section E below.

(c) You acknowledge that you may hereafter discover claims or facts in addition to or different from those which you now know or believe to exist with respect to the subject matter of this Agreement, which, if known or suspected at the time you execute this Agreement, may have materially affected this Agreement and your decision to enter into it. Nevertheless, you hereby waive any right, claim or cause of action that might arise as a result of such different or additional claims or facts.

(d) As a part of this Release, you agree and acknowledge that you are not entitled to any further payments or benefits other than as set forth in this Agreement, including without limitation any notice payments, or severance or termination payments.

2. You represent that you have the full power, capacity and authority to enter into this Agreement and that no portion of any claim, right or cause of action that you may have with respect to the subject matter of this Agreement has been assigned, transferred or conveyed to any person not a party to this Agreement.

3. You acknowledge and agree that during the course of your employment with the Company, you have had access to confidential information of the Company and the other Releasees and that you will continue to remain subject to the Employee Confidentiality Agreement that you have previously entered into with the Company. To protect the interests of the Company and the other Releasees, you agree to the following:

(a) All confidential information is considered and is kept as the private and privileged records of the Company and the other Releasees. At all times during your employment, you acknowledge that:

(i) you used confidential information only in the performance of your duties for the Company, and you held it in confidence and used all reasonable precautions to assure that it was not disclosed to unauthorized persons or used in an unauthorized manner; and

(ii) except in the performance of your duties, you did not use, disclose, publish, divulge or otherwise disseminate any confidential information to any person, firm, corporation or other entity or contribute to the disclosure, publication or dissemination of such confidential information.

(b) Your obligation not to disclose or use confidential information continues after 2/15/2023.

(c) You will not acquire on behalf of yourself or any other person, or advise any other person to acquire, or provide any non-public information to any third party regarding, any investment which the Company has made or, to your knowledge, has considered making or which, to your knowledge, any affiliate has made or has considered making during your employment with the Company.

(d) You will not disclose the contents or substance of this Agreement to anyone except your immediate family and any tax or legal counsel you have

consulted regarding the meaning or effect hereof, and you will instruct each of the foregoing not to disclose the same.

4. You will not make any statement to any person, or induce any third party to make any such statement, whether written or oral, and whether expressed as a fact, opinion or otherwise, that disparages, maligns, defames, libels or slanders the Company or any of the other Releasees or in any way adversely affects any of them.

**FURTHER, IN CONSIDERATION OF THE COMPANY'S UNDERTAKINGS CONTAINED IN THIS AGREEMENT, YOU AGREE THAT YOU AND YOUR AGENTS, FAMILY AND/OR REPRESENTATIVES SHALL REFRAIN FROM: (1) ALL CONDUCT, VERBAL OR OTHERWISE, WHICH WOULD MATERIALLY DAMAGE THE REPUTATION, GOODWILL OR STANDING OF THE RELEASEES IN THE COMMUNITIES OF THE RELEASEES, AND (2) REFERRING TO OR IN ANY WAY COMMENTING ON ANY OF THE RELEASEES IN OR THROUGH THE GENERAL MEDIA OR ANY PUBLIC DOMAIN (INCLUDING WITHOUT LIMITATION, INTERNET WEBSITES, BLOGS, CHAT ROOMS, SOCIAL MEDIA AND THE LIKE), IN A WAY THAT WOULD MATERIALLY DAMAGE THE REPUTATION, GOODWILL OR STANDING OF THE RELEASEES IN THE COMMUNITIES OF THE RELEASEES. ANY BREACH OF THIS PARAGRAPH SHALL BE A MATERIAL BREACH OF THIS AGREEMENT, AND SHALL NOT RELIEVE YOU OF ANY OBLIGATIONS UNDER THIS AGREEMENT.**

**TONI HARRIS**

The foregoing will not preclude you from making truthful statements as required by lawfully compelled testimony. You agree to notify the Company in advance of any such testimony and cooperate with the Company's reasonable efforts with respect to such testimony, to the fullest extent permitted by applicable law.

5. During the Severance Period and for a reasonable period thereafter, you agree to provide assistance to the Company and any of the other Releasees by making yourself available by telephone and/or email at reasonable times to provide information to, and to consult with, the Company or any of the other Releasees on matters about which you have knowledge as a result of your relationship with any of them, including but not limited to all matters (formal or informal) in connection with any investigations, litigation (potential or ongoing) and administrative, regulatory or other proceedings which currently exist or which may arise following the signing of this Agreement. Such cooperation will include, but not be limited to, your willingness to be interviewed by representatives of the Company and to participate in any such proceedings by deposition or testimony. The Company will exercise reasonable efforts to schedule and limit the need for your cooperation so as not to unduly interfere with any other obligations you may have.

6. In the event that you are subpoenaed or otherwise required by order of a court of competent jurisdiction or other legal process to appear in connection with any matter or proceeding involving the Company, you will notify the undersigned in writing at least ten (10) days in advance of such appearance, unless to do so would place you in violation of the subpoena, court order, other legal process or law, in which case you shall give as much notice as possible without placing yourself in violation of the subpoena, court order, other legal process or law.

C. Mutual Agreements and Understandings. Both you and the Company mutually agree to the following terms and conditions:

1. No Admissions. This Agreement shall not be construed as or be deemed to constitute an admission on your part or the part of the Company or any of the other Releasees, and you and each Releasee specifically denies any liability, wrongdoing or violation of any law, statute, regulation or policy. Moreover, by signing this Agreement you acknowledge that you are not aware of any wrongdoing on the part of the Company or the other Releasees. Neither this Agreement nor any of its terms may be used as an admission or introduced as evidence as to any issue of law or fact in any proceeding, suit or action, other than an action to enforce this Agreement.

2. Resolution of Disputes.

(a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of conflict of laws.

(b) Any action to enforce this Agreement or address any action to enforce this Agreement or address any dispute under this Agreement, shall be commenced in a court of competent jurisdiction within the City and State of New York.

(c) This Agreement shall be deemed jointly drafted and shall not be construed against any Party on the ground that the Party was the drafter of the Agreement.

(d) EACH PARTY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, SUIT, CLAIM OR PROCEEDING BASED ON YOUR EMPLOYMENT OR WORK FOR ANY OF THE RELEASEES OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY IT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION WITH YOUR EMPLOYMENT, THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO WAIVES TO THE EXTENT PERMITTED BY LAW ANY RIGHTS TO SEEK OR RECOVER PUNITIVE DAMAGES AGAINST THE OTHER PARTY.

____________________
TONI HARRIS

3. Legally Protected Communications. Nothing in this Agreement is intended to prohibit you or the Company from disclosing confidential information to any governmental agency or regulatory body, when such disclosure is permitted or protected by applicable law.

4. Confirmation of Employment. You agree to direct all requests for confirmation of your employment with the Company in writing to the attention of the Senior People Partner at the following address:

   250 W. 55th Street, 35th Floor
   New York, NY 10019

   The Senior People Partner will respond in writing to such written requests by: (a) providing your dates of employment, and (b) stating that you worked as Vice President of Operations. The Senior People Partner will also advise the person making the inquiry that it is the Company's policy not to provide information regarding the reasons for any employee's departure, and no inferences of any sort can be drawn from such policy.

5. Severability. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, scope, activity or subject, such provisions will be construed by limiting and reducing any such provision so as to be enforceable to the maximum extent compatible with applicable law and the parties' original intent.

6. Assignees. The terms of this Agreement shall be binding on the parties hereto and their respective successors and assigns, provided that you may not assign any of your rights hereunder without the written approval of the Company.

7. Third Party Beneficiaries. Each of the Releasees, other than the Company, is a third party beneficiary of this Agreement and may enforce the provisions hereof applicable to them.

8. Entire Agreement. This Agreement, together with any attachments, constitutes the entire agreement between you and any of the Releasees with respect to the subject matter hereof and supersedes all prior negotiations, representations or agreements relating thereto, whether written or oral, with the exception of any agreements expressly described herein as having continuing rights and obligations, except for the Employee Confidentiality Agreement that you have previously entered into with the Company which remains in full force and effect; and in the event of any conflict between this Agreement and the Employee Confidentiality Agreement, this Agreement shall control. You represent that in executing this Agreement, you have not relied on any representation or statement not set forth herein. No amendment or modification of this Agreement shall be valid or binding on the parties unless in writing and signed by both parties.

9. Governing Law. This Agreement will be governed by and construed in accordance with the laws of the State of New York, without regard to any conflict of law principles thereof that would give rise to the application of the laws of any other jurisdiction.

10. ADEA Waiver. You hereby acknowledge that you are knowingly and voluntarily waiving and releasing any rights you may have under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq., and that the consideration given for

We thank you for your service to the Company.

Sincerely yours,

**[FSC REALTY MANAGEMENT LLC]**

By: Tisha Payne
Title: Senior People Partner

---

**BY SIGNING THIS AGREEMENT, I STATE THAT:** I have been provided with forty-five (45) days to consider and review this Agreement (although I may choose voluntarily to sign this Agreement sooner); and I have seven (7) days following the date I sign this Agreement to revoke this Agreement in writing, by certified mail, return receipt requested, to Stephanie Perez, Chief People Officer, 250 West 55th Street, 35th Floor, New York, NY, 10019. I acknowledge that any modification, material or otherwise, to this Agreement, does not affect in any manner or restart the Consideration Period. I acknowledge that I have carefully read and understand the terms of the Agreement, fully understand it and am signing it knowingly and voluntarily. I understand I have been advised to consult with an attorney before signing this Agreement, that I am giving up important rights by signing, and that I am giving up any such rights or claims in exchange for payments to which I am not already entitled.

TONI HARRIS

Date: 28 Feb 2023

the waiver and release is in addition to anything of value to which you already entitled. You further acknowledge that: (a) your waiver and release does not apply to any rights or claims that may arise after the date you sign this Agreement; (b) You have the right to and are hereby advised to consult with an attorney of your choice at your expense prior to signing it; (c) you have torty-five (45) days to consider this Agreement (although I may choose voluntarily to sign this Agreement sooner); and (d) You have seven (7) days following the date you sign this Agreement to revoke this Agreement in writing, by certified mail, return receipt requested, to Stephanie Perez, Chief People Officer, 250 West 55th Street, 35th Floor, New York, NY 10019.

D. Obligations Unrelated to This Agreement. Regardless of whether you decide to enter into this Agreement, the following rights and obligations will not be affected:

1. No later than 3/1/2023, you are required to return all property of the Company that you have in your possession or control, including, without limitation, your computer, monitors, computer chargers, security cards and/or building identification card.

2. You must continue to maintain as confidential any and all confidential information you acquired in the course of your employment with the Company.

3. Your participation in the Company's group health and dental plans will terminate as of 2/28/2023. You will be given separate information regarding your right to continue coverage under the Company's group health and dental plans following February 28,2023 when coverage would otherwise cease, as required by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Included in this information package will be election forms that must be completed and timely returned in order for you to continue your coverage and to receive the benefit described in Section A.

4. Your participation in all other Company benefit plans will terminate as of the last day of the month, 2/28/2023. Information about these benefits will be provided to you by Paylocity, our COBRA benefits provider.

5. Claims for unemployment benefits can be filed online in New York State at www.labor.ny.gov/ui/how_to_file_claim.shtm. You may also file a claim by calling the Telephone Claims Center at 1-888-209-8124 for New York State residents (or 1-877-358-5306 for out of state residents) between 8:00 am and 5:00 pm, Monday through Friday. Please note that the New York Unemployment Insurance Division, not the Company, determines eligibility for benefits.

E. Consideration Period. By signing this Agreement in the spaces provided below, you are confirming your acceptance of the terms and conditions set forth herein, and you are acknowledging the following:

1. The obligations as set out in this Agreement represent a complete waiver and release of all rights and claims that you have against the Releasees. Accordingly, you should review it carefully before signing it in the first space below.

Unless you direct otherwise, in writing, all payments made pursuant to this Agreement will be made in accordance with your direct deposit arrangements on file with Payroll.