# EXHIBIT C

**PERSONAL & CONFIDENTIAL**
**NOT VALID UNLESS EXECUTED BY BOTH PARTIES**

April 19, 2023

Tyler McIntyre

Re: Separation Agreement and General Release

Dear Tyler:

This confirms the termination of your employment with Fairstead Capital Management LLC and its affiliates (collectively, the "Company"), effective immediately, as described below. By signing this letter (together with the Assignment and Release Agreement attached as Exhibit A, the "Agreement"), you and the Company (each, a "Party" and collectively, the "Parties") agree as follows:

A. The Separation Package. Your Separation Date will be April 19, 2023. During the period between the date first written above and the Separation Date, the following will apply:

1. You ceased to function as Managing Partner, Design & Construction as of April 19, 2023 and thereafter your responsibilities have been and will continue to be limited to assisting in transitioning your responsibilities to others as directed by Jeffrey Goldberg. If you are an officer or a member of the board of managers/directors (or any governing body) of any Company entity (each, a "Board"), you hereby voluntarily resign from any such officer position(s) and from any such Board, effective as of the Separation Date, with no further action to effectuate the same being required of the Company.

2. The Company (or its affiliates. successors or assigns, including the Releasees) shall continue to pay you the semi-monthly salary in the amount of [redacted] less city, state and federal payroll taxes ("Severance Payment") through April 18, 2024. I understand that receipt of the Severance Payment is dependent upon whether I sign this Agreement. I understand that if I do not sign this Agreement then I will not receive the Severance Payment. I further understand that receipt of the Severance Payment is dependent upon my compliance with this agreement. The Severance Payment shall be made on my next available payroll date (and every regular payment date thereafter), provided that I have complied with this agreement and the Company has received the signed Agreement.

3. I will have the option of accepting the Company paid medical benefits for through March 31, 2024. I will have the option to continue, at my own expense, any Company health plan benefits to which I was entitled, as required by COBRA.

All payments and benefits provided in this Section A are collective referred to herein as the "Separation Package".

B. Consideration Payment Conditions. In exchange for the Company providing you with the Separation Package, which you acknowledge and agree comprises payments to which you otherwise are not entitled, you voluntarily agree to comply fully with each of the provisions contained in this Agreement and any other agreements and obligations that you may remain obligated under where the Company or Releasee is a party.

C. General Release of Claims.

1. You knowingly and voluntarily waive, release and forever discharge the Company, FA DC LLC, Fairstead ESC LLC, FSC D&C LLC, Fairstead Holdings LLC, JD2 Realty Management LLC, Fairstead Capital Management, LLC, Fairstead Management LLC, Fairstead Affordable FL LLC, Fairstead Affordable LLC, each of their affiliates, and their respective offices, branches, parents, subsidiaries and affiliates, and any of their present and former directors, officers, shareholders, members, directors, managers, officers, partners, agents, representatives, employee benefit plans, and employees, including, without limitation, Jeffrey Goldberg and Stuart Feldman (collectively, the "Releasees"), of and from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, and obligations, known or unknown, asserted or unasserted, which you have or may have against the Releasees (or any of them) as of the date of execution of this Agreement, including, but not limited to, any alleged violation of any of the following: (i) claims and demands arising out of or in any way connected with your employment with the Company, or the termination of that employment or claimed ownership interest or other entitlement from or in any Releasee; (ii) claims or demands related to your compensation or benefits with the Company, including but not limited to, wages, salary, bonuses, commissions, vacation pay, sick pay, fringe benefits, expense reimbursements, incentive pay, severance pay, carried interest or any other economic interest any Releasee or any other form of compensation; (iii) all tort claims, including without limitation, claims for fraud, defamation, emotional distress, and discharge in violation of public policy; (iv) all claims for breach of contract, wrongful termination, and breach of the implied covenant of good faith and fair dealing, including claims arising out of an employment agreement, sales commission plan or incentive compensation plan applicable to your employment with the Company, based upon any conduct occurring from the beginning of the world to the date of this Agreement; (v) claims under each of the following laws, rules or regulations, each as amended (if applicable): Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Civil Rights Act of 1866; the Civil Rights Act of 1991; the Americans with Disabilities Act; the Family and Medical Leave Act of 1990; the Fair Labor Standards Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; the Internal Revenue Code of 1986; the Immigration Reform and Control Act; the Worker Adjustment and Retraining Notification Act; the Fair Credit Reporting Act; the Genetic Information Nondiscrimination Act of 2008; the New York State and New York City Human Rights Laws; the New York Labor Laws, including wage and hour laws; the New York Corrections Law, including Sections 750 – 755 thereof; any other federal, state or local law, rule, regulation, or ordinance; and/or (vi) any common law, public policy, contract (whether oral or written, expressed or implied) and tort law, and any other local, state or federal law, regulation or ordinance having any bearing whatsoever on the terms and conditions of your employment and the cessation thereof up to the date you sign this Agreement. The waiver and release set forth above does not apply to any claims to enforce this Agreement.

Notwithstanding the foregoing and for the avoidance of doubt you shall retain all rights to any 401k retirement account that you may have in accordance with the terms of said plan. Notwithstanding the foregoing, this Agreement shall not constitute a waiver of any rights to defense or indemnification that you may have, including under the Company's or any affiliate's charter, bylaws, governing documents or under any applicable insurance policy or any claims that cannot be waived by law, subject to the limitations set forth in such applicable agreements or documents.

2. You acknowledge that you may hereafter discover claims or facts, in existence as of the Separation Date, in addition to or different from those which you now know or believe to exist with respect to the subject matter of this Agreement, which, if known or suspected at the time you execute this

Agreement, may have materially affected this Agreement and your decision to enter into it. Nevertheless, you hereby waive any right, claim or cause of action that might arise as a result of such different or additional claims or facts.

3. If any claim is not subject to release, to the maximum extent permitted by law, you waive any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which any Releasee identified in this Agreement is a party.

D. Confidentiality. You acknowledge and agree that during the course of your employment with the Company, you have had access to confidential information of the Company and the other Releasees and that you will continue to remain subject to all restrictive covenants and other such agreements that you have previously entered into with the Company. To protect the interests of the Company and the other Releasees, you agree to the following:

1. All confidential information is considered and is kept as the private and privileged records of the Company and the other Releasees. At all times during your employment, you acknowledge that:

(a) you used confidential information only in the performance of your duties for the Company, and you held it in confidence and used all reasonable precautions to assure that it was not disclosed to unauthorized persons or used in an unauthorized manner; and

(b) except in the performance of your duties, you did not use, disclose, publish, divulge or otherwise disseminate any confidential information to any person, firm, corporation or other entity or contribute to the disclosure, publication or dissemination of such confidential information.

2. Your obligation not to disclose or use confidential information continues indefinitely after the Separation Date (except as required by law, to respond to requests for information from governmental agencies, to enforce this Agreement and any tax, financial or legal counsel you consult on a confidential basis).

3. You will not acquire on behalf of yourself or any other person, or advise any other person to acquire, or provide any non-public information to any third party regarding, any investment which the Company has made or, to your knowledge, has considered making or which, to your knowledge, any affiliate has made or has considered making during your employment with the Company.

4. You will not disclose the contents or substance of this Agreement to anyone except your immediate family. to the extent required by law or to respond to requests for information from governmental agencies, to enforce this Agreement and any tax, financial or legal counsel you have consulted regarding the meaning or effect hereof, and you will instruct each of the foregoing not to disclose the same.

E. Restrictive and Affirmative Covenants.

1. Without limitation your obligations under your employment agreement dated May 12, 2016, during the Restricted Period, you shall not (i) call upon or solicit the business of customers, vendors, suppliers or consultants of the Company (including any and all investors in deals, funds, accounts

or investment vehicles sponsored by the Company or any member thereof) in connection with such customers, vendors, suppliers or consultants investing or seeking to invest in any other or different fund, account, investment opportunity or other investment vehicle or attempt to influence, encourage, persuade or induce any customers, vendors, suppliers or consultants to cease doing business with and/or investing with or in, or reduce the extent of its business dealings and/or investments with or in the Company (or any member thereof); or (ii) solicit or attempt to influence, encourage, persuade or induce, or assist any employee or other service provider of or to the Company (or any member thereof), or any customers, vendors, suppliers or consultants investing or seeking to invest in the Company, to give up, or not to commence, employment, service or a material or exclusive business relationship with the Company (or any member thereof). For purposes of this Agreement, "Restricted Period" means the 12-consecutive-month period commencing immediately following the Separation Date.

2. You will not make any statement to any person, or induce any third party to make any such statement, whether written or oral, and whether expressed as a fact, opinion or otherwise, that disparages, maligns, defames, libels or slanders the Company or any of the other Releasees or in any way adversely affects any of them.

**FURTHER, IN CONSIDERATION OF THE COMPANY'S UNDERTAKINGS CONTAINED IN THIS AGREEMENT, YOU AGREE THAT YOU SHALL AND USING YOUR REASONABLE EFFORTS YOU SHALL HAVE YOUR AGENTS, FAMILY AND/OR REPRESENTATIVES REFRAIN FROM: (1) ALL CONDUCT, VERBAL OR OTHERWISE, WHICH WOULD MATERIALLY DAMAGE THE REPUTATION, GOODWILL OR STANDING OF THE RELEASEES IN THE COMMUNITIES OF THE RELEASEES, AND (2) REFERRING TO OR IN ANY WAY COMMENTING ON ANY OF THE RELEASEES IN OR THROUGH THE GENERAL MEDIA OR ANY PUBLIC DOMAIN (INCLUDING WITHOUT LIMITATION, INTERNET WEBSITES, BLOGS, CHAT ROOMS, SOCIAL MEDIA AND THE LIKE), IN A WAY THAT WOULD MATERIALLY DAMAGE THE REPUTATION, GOODWILL OR STANDING OF THE RELEASEES IN THE COMMUNITIES OF THE RELEASEES. ANY BREACH OF THIS PARAGRAPH SHALL BE A MATERIAL BREACH OF THIS AGREEMENT, AND SHALL NOT RELIEVE YOU OF ANY OBLIGATIONS UNDER THIS AGREEMENT.**

______________________
**Tyler McIntyre**

The foregoing will not preclude you from making truthful statements as required by lawfully compelled testimony or to enforce this Agreement. You agree to notify the Company in advance of any such testimony and cooperate with the Company's reasonable efforts with respect to such testimony, to the fullest extent permitted by applicable law.

During the Restricted Period, you and the Company, shall agree on the text of any public announcement about a new employment or business opportunity that you publicly announce that includes Fairstead, including, without limitation, the description of your time at Fairstead, which consent shall not be unreasonably withheld, conditioned or delayed; and the foregoing does not limit your obligations regarding confidential information of the Company, including Company's track record. Notwithstanding the foregoing, nothing herein shall limit you from stating publicly that you served as Managing Partner, Design and Construction at Fairstead for 7 years (for the avoidance of doubt with no required consent from the Company).

3. The Company and its affiliates (including the Releasees) will not or induce any third party to make or publish any statement, whether written or oral, and whether expressed as a fact, opinion or otherwise, that disparages, maligns, defames, libels or slanders you or in any way adversely affects you.

**FURTHER, IN CONSIDERATION OF YOUR UNDERTAKINGS CONTAINED IN THIS AGREEMENT, THE COMPANY AND THE RELEASEES AGREE THAT THEY SHALL USE THEIR COMMERICALLY REASONABLE EFFORTS TO HAVE THEIR AGENTS, FAMILY AND/OR REPRESENTATIVES REFRAIN FROM: (1) ALL CONDUCT, VERBAL OR OTHERWISE, WHICH WOULD MATERIALLY DAMAGE YOUR REPUTATION, GOODWILL OR STANDINGIN YOUR COMMUNITIES, AND (2) REFERRING TO OR IN ANY WAY COMMENTING ON YOU IN OR THROUGH THE GENERAL MEDIA OR ANY PUBLIC DOMAIN (INCLUDING WITHOUT LIMITATION, INTERNET WEBSITES, BLOGS, CHAT ROOMS, SOCIAL MEDIA AND THE LIKE), IN A WAY THAT WOULD MATERIALLY DAMAGE YOUR REPUTATION, GOODWILL OR STANDING IN YOUR COMMUNITIES. ANY BREACH OF THIS PARAGRAPH SHALL BE A MATERIAL BREACH OF THIS AGREEMENT, AND SHALL NOT RELIEVE THE COMPANY OR THE RELEASEES OF ANY OBLIGATIONS UNDER THIS AGREEMENT.**

The foregoing will not preclude the Company, Releasees, their affiliates and other such parties identified in the preceding paragraph from making truthful statements as required by lawfully compelled testimony or to enforce this Agreement. The Company, Releasees, their affiliates or other such parties agree to notify the Company of any such testimony.

4. You agree to return all Company property, documents and information, whether tangible or intangible, including, without limitation, your computer, monitors, computer chargers, security cards and/or building identification card, in your possession or control or to which you have access of any nature as of the Separation Date (the "Property") within two business days following the Separation Date; provided, however, that at the sole discretion of the Company, you shall comply with any Company directives to destroy the Property through any such means that the Company reasonably requests that you use, and provide proof to the Company of such destruction. .

5. You agree to provide assistance to the Company and any of the other Releasees by making yourself available by telephone and/or email at reasonable times to provide information to, and to consult with, the Company and/or any of the other Releasees, and/or respective legal counsel of same on matters about which you have knowledge as a result of your relationship with any of them, including but not limited to all matters (formal or informal) in connection with any investigations, litigation (potential or ongoing) and administrative, regulatory or other proceedings which currently exist or which may arise following the signing of this Agreement. Such cooperation will include, but not be limited to, your willingness to be interviewed by representatives of the Company and to participate in any such proceedings by deposition or testimony. The Company will exercise reasonable efforts to schedule and limit the need for your cooperation so as not to unduly interfere with any other obligations you may have. The Company will reimburse reasonable out-of-pocket expenses that you incur in complying with requests by the Company hereunder, provided the expenses are authorized by the Company in advance. However,

you will not be entitled to compensation for expenses arising from any proceeding brought by you or in any circumstance in which compensation is prohibited by law.

**Tyler McIntyre**

6. In the event that you are subpoenaed or otherwise required by order of a court of competent jurisdiction or other legal process to appear in connection with any matter or proceeding involving the Company, you will notify the undersigned in writing at least ten (10) days in advance of such appearance, unless to do so would place you in violation of the subpoena, court order, other legal process or law, in which case you shall give as much notice as possible without placing yourself in violation of the subpoena, court order, other legal process or law.

F. Mutual Agreements and Understandings. Both you and the Company mutually agree to the following terms and conditions:

1. No Admissions. This Agreement shall not be construed as or be deemed to constitute an admission on your part or the part of the Company or any of the other Releasees, and you and each Releasee specifically denies any liability, wrongdoing or violation of any law, statute, regulation or policy. Moreover, by signing this Agreement you acknowledge that you are not aware of any wrongdoing on the part of the Company or the other Releasees. Neither this Agreement nor any of its terms may be used as an admission or introduced as evidence as to any issue of law or fact in any proceeding, suit or action, other than an action to enforce this Agreement.

2. Resolution of Disputes.

(a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of conflict or choice of laws.

(b) Any action to enforce this Agreement or address any action to enforce this Agreement or address any dispute under this Agreement, shall be commenced in a court of competent jurisdiction within the City and State of New York. Each Party hereby irrevocably submits to the exclusive jurisdiction of any such court and waives any claim that such forum is inconvenient or similar claim.

(c) This Agreement shall be deemed jointly drafted and shall not be construed against any Party on the ground that the Party was the drafter of the Agreement.

(d) **EACH PARTY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, SUIT, CLAIM OR PROCEEDING BASED ON YOUR EMPLOYMENT OR WORK FOR ANY OF THE RELEASEES OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY IT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION WITH YOUR EMPLOYMENT, THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO**

**WAIVES TO THE EXTENT PERMITTED BY LAW ANY RIGHTS TO SEEK OR RECOVER PUNITIVE DAMAGES AGAINST THE OTHER PARTY.**

**Tyler McIntyre**

3. Legally Protected Communications. Nothing in this Agreement is intended to prohibit you or the Company from disclosing confidential information to any governmental agency or regulatory body, when such disclosure is permitted or protected by applicable law.

4. Confirmation of Employment. You agree to direct all requests for confirmation of your employment with the Company in writing to the attention of the Chief People Officer at the following address:

250 W. 55th Street, 35th Floor
New York, NY 10019

The Chief People Officer will respond promptly in writing to such written requests by: (i) providing your dates of employment through the Separation Date, and (ii) stating that you worked as Managing Partner, Design & Construction. The Chief People Officer will also advise the person making the inquiry that it is the Company's policy not to provide information regarding the reasons for any employee's departure, and no inferences of any sort can be drawn from such policy.

5. Severability. In the event that any one or more of the provisions of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement is held to be excessively broad as to duration, scope, activity or subject, such provisions will be construed by limiting and reducing any such provision so as to be enforceable to the maximum extent compatible with applicable law and the parties' original intent.

6. Assignees. The terms of this Agreement shall be binding on the Parties hereto and their respective successors and assigns; provided that you may not assign any of your rights hereunder without the written approval of the Company.

7. Third Party Beneficiaries. Each of the Releasees, other than the Company, is a third-party beneficiary of this Agreement and may enforce the provisions hereof applicable to them.

8. Entire Agreement. This Agreement and the Assignment and Release, dated as of the date hereof and attached as Exhibit A, together with any attachments, constitutes the entire agreement between you and any of the Releasees with respect to the subject matter hereof and supersedes all prior negotiations, representations or agreements relating thereto, whether written or oral, and with the exception of any agreements expressly described herein as having continuing rights and obligations, and except for restrictive covenants and other such agreements, if any, that you have previously entered into with the Company, which remain in full force and effect; and in the event of any conflict between this Agreement and any such restrictive covenants agreements, this Agreement shall control. You represent that in executing this Agreement, you have not relied on any representation or statement not set forth herein. No amendment or modification of this Agreement shall be valid or binding on the parties unless in writing and signed by both parties.

G. Obligations Unrelated to This Agreement. Regardless of whether you decide to enter into this Agreement, the following rights and obligations will not be affected:

1. Your participation in the Company's group health and dental plans will terminate as of March 31, 2024. You will be given separate information regarding your right to continue coverage under the Company's group health and dental plans following the date your coverage would otherwise cease, as required by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Included in this information package will be election forms that must be completed and timely returned in order for you to continue your coverage under COBRA.

2. Claims for unemployment benefits can be filed online in New York State at www.labor.ny.gov/ui/how_to_file_claim.shtm. You may also file a claim by calling the Telephone Claims Center at 1-888-209-8124 for New York State residents (or 1-877-358-5306 for out of state residents) between 8:00 am and 5:00 pm, Monday through Friday. Please note that the New York Unemployment Insurance Division, not the Company, determines eligibility for benefits.

H. Your Representations, Warranties and Acknowledgments.

1. You understand, acknowledge and agree that you are not entitled to any further payments or benefits from or ownership interest in any Releasee other than as set forth in this Agreement, including without limitation any notice payments, distributions or severance or termination payments.

2. You understand, acknowledge and agree that you do not hold any ownership interest in, and are not entitled to any payments or consideration from Fairstead Holdings LLC, Fairstead Participation LLC, Fairstead Investment Participation LLC, Fairstead Affordable LLC, Fairstead Affordable FL LLC, any Releasee or any of their respective affiliates.

3. You represent that you have the full power, capacity and authority to enter into this Agreement and that no portion of any claim, right or cause of action that you may have with respect to the subject matter of this Agreement has been assigned, transferred or conveyed to any person not a party to this Agreement.

4. You affirm that you have not filed, caused to be filed, or presently are a party to any claim heretofore described in this Agreement.

5. You affirm that you have been granted any leave to which you were entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

6. You affirm that you have not divulged any proprietary or confidential information of the Company and agree that you will maintain the confidentiality of such information following the Separation Date.

7. You understand, acknowledge and agree that if, at any time following the Separation Date, you materially violate this Agreement, you shall (i) forfeit all unpaid Consideration and (ii) repay immediately the full amount of any Consideration previously paid to you.

8. From time to time, you shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other

actions as reasonably necessary or desirable to consummate the agreements contemplated by this Agreement.

9. In the event that either Party brings a legal proceeding to enforce or effect its rights under this Agreement, the prevailing Party shall be entitled to recover its costs and expenses, including reasonable attorneys' fees, incurred in connection with such legal proceeding.

10. You hereby acknowledge and agrees that you have had an adequate opportunity to consult with qualified legal counsel regarding the terms and conditions hereof.

(*Signatures appear on the following page*)

**YOU FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL RELEASABLE CLAIMS YOU HAVE OR MIGHT HAVE AGAINST RELEASEES TO THE EXTENT DESCRIBED IN THIS AGREEMENT.**

T. McIntyre

**Tyler McIntyre**

We thank you for your service to the Company.

Sincerely yours,

**FAIRSTEAD CAPITAL MANAGEMENT LLC**

By: Jeffrey Goldberg
Title: Authorized Signatory

T. McIntyre

**Tyler McIntyre**

Date: 4/19/23

# EXHIBIT A

[redacted]

[redacted]

[redacted]